# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAYSON SERVICE, INC., | Case No.  1:14-cv-01125-SAB |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND DISMISSING THIS ACTION FOR FAILURE TO STATE A CLAIM |
| v. | |
| CRIMSON RESOURCE MANAGEMENT CORP. et al., | |
| Defendants. | (ECF Nos. 31, 32, 33) |

Currently before the Court is Defendant Crimson Resource Management ("Crimson") and Cal Royalty LLC's ("Cal Royalty") motion to dismiss the second amended complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure.

The Court, having reviewed the record, finds this matter suitable for decision without oral argument.  See Local Rule 230(g).  Accordingly, the previously scheduled hearing set on March 25, 2015 will be vacated and the parties will not be required to appear at that time.

## I.

## PROCEDURAL BACKGROUND

Plaintiff Grayson Service, Inc. filed this action on July 17, 2014, against Defendants Crimson and Cal Royalty.[1]  On July 29, 2014, Plaintiff filed a first amended complaint alleging

---

[1] The parties have consented to the jurisdiction of the magistrate judge.  (ECF Nos. 5, 16.)

1  breach of contract, breach of the covenant and right to quiet enjoyment and possession, and

2  seeking declaratory relief.  On October 31, 2014, Defendants filed a motion to dismiss the first

3  amended complaint which was granted on December 24, 2014.  Plaintiffs filed a second

4  amended complaint on January 23, 2015.  On February 20, 2015, Defendants filed a motion to

5  dismiss the second amended complaint.  Plaintiff filed an opposition on March 11, 2015.  (ECF

6  No. 32.)  On March 18, 2015, Defendant filed a reply.  (ECF No. 33.)

7                                                    **II.**

8                          **SECOND AMENDED COMPLAINT ALLEGATIONS**

9          Plaintiff alleges that Defendant Crimson is the successor in interest to Kern County Land

10 Company ("KCLC") as lessor of the August 7, 1936 Ohio lease.  (Second Am. Compl. ¶ 3,[2] ECF

11 No. 29.)  Defendant Cal Royalty is an affiliate of Defendant Crimson established to manage or

12 own certain of Defendant Crimson's assets.  (Id. at ¶ 4.)  Defendant Cal Royalty owns the

13 mineral rights adjacent to the zones that Plaintiff produces from and manages the Ohio lease on

14 behalf of Defendant Crimson.  (Id.)  In a prior court action, the person most knowledgeable for

15 Defendants testified that as to the GSI lease, Defendants Cal Royalty and Crimson are the same.

16 (Id. at ¶¶ 4, 5.)

17         After acquiring the fee simple interest in lands in Kern County, Kern County Land

18 Company ("lessor") entered into a lease with the Ohio Oil Company ("lessee") on August 7,

19 1936 (hereafter "Ohio lease").  (Id. ¶ 7.)  The portion of the Ohio lease at issue in this action is

20 approximately two hundred and fifty acres.  (Id.)  On September 21, 1984, Marathon Oil

21 Company (previously Ohio Oil Company) assigned all of its right, title, and interest in the Ohio

22 lease to Plaintiff.  (Id. at ¶ 8.)

23         Immediately after acquiring rights under the Ohio lease, Plaintiff occupied the surface of

24 the lease by occupying multiple buildings and using a water well which were transferred under

25 the lease.  (Id. at ¶ 9.)  These buildings and the water well have been used exclusively by

26 Plaintiff as expressly allowed under the Ohio lease.  (Id.)  Plaintiff has produced oil from the

27 _____

28 [2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

2

1  zones under the parcel and occupied buildings on the property continuously since being assigned

2  rights under the Ohio lease.  (Id. at ¶¶ 11, 12.)

3       In the 1970s, KCLC was purchased by Tenneco, Inc. and KCLC's name was changed to

4  Tenneco West, Inc. ("TWI").  (Id. at ¶ 13.)  On June 30, 1988, TWI assigned their fee interest in

5  the minerals underlying the Ohio lease and all surface rights related to the Ohio lease to Tenneco

6  Oil Company ("TOC").  (Id. at ¶ 15.)  All obligations and responsibilities to perform the duties

7  of the Ohio lease were expressly assumed by TOC.  (Id.)  There was no severance of any surface

8  estate due to this assignment of the Ohio lease.  (Id. at ¶ 17.)  Simultaneously TOC executed an

9  identical assignment to TOC-Pacific Coast Inc.  (Id. at ¶ 18.)

10      On December 15, 1988, Atlantic Richfield Company ("ARCO") merged with TOC-

11 Pacific Coast Inc. and acquired rights under the Ohio lease.  (Id. at ¶ 21.)  On January 1, 1995,

12 ARCO conveyed and assigned all oil, gas, and mineral fee estates and associated surface rights

13 under the Ohio lease to Defendant Crimson.  (Id. at ¶ 22.)  Defendant Crimson conveyed a

14 portion of the minerals underlying Plaintiff's production zone to Defendant Cal Royalty on

15 January 1, 1995.  (Id. at ¶ 23.)

16      Defendant Crimson operates a well on the parcel.  (Id. at ¶ 24.)  The well produces

17 hydrocarbons from the fee mineral estate that Defendant Crimson purchased from ARCO.  (Id.)

18 Defendant Crimson maintains related tanks and equipment on the parcel.  (Id.)  Defendant

19 Crimson and Plaintiff share the entire surface of the parcel under the Ohio lease which provides

20 that the Lessor and Lessee may use the surface and buildings as long as neither interferes with

21 the other's operations.  (Id. at ¶ 25.)  Defendant Crimson delegated the duty to manage the Ohio

22 lease as it pertains to Plaintiff's rights and obligations to Defendant Cal Royalty.  (Id. at ¶ 26.)

23      The term of the lease provide that it would be for twenty years and so long after as oil,

24 gas, or other hydrocarbon substances were produced from the property in amounts deemed to be

25 paying quantities by the lessee, unless the lease in whole or part was terminated sooner.  (Id. at ¶

26 27.)  The lease further provided that the property was to be in the sole and exclusive possession

27 of the lessee, except that the lessor reserved the right to use or lease the land for agricultural

28 purposes that did not unnecessarily interfere with the operation of the land.  (Id. at ¶ 27.)  The

1  lease provided that the lessee could develop water on the parcel and the lessor reserved the right

2  to any unused water on the parcel as long as it did not interfere with the lease unnecessarily.  (Id.

3  at ¶ 29.)  The Ohio lease is still in effect today.  (Id. at ¶ 30.)

4       Plaintiff's right to explore, drill, operate, and have exclusive access to the surface of the

5  parcel is subject only to non-interfering use by Defendant Crimson.  (Id. at ¶ 31.)  Plaintiff has

6  unlimited access to the minerals on the property that it leases and produces from under the Ohio

7  lease.  (Id. at ¶ 33.)  Plaintiff maintains a water well and pressure tank on the parcel that are

8  essential to its oil operations.  (Id. at ¶ 34.)

9       In or about 2012, Kern County Water Bank Authority ("KWBA") began to interfere with

10 Plaintiff's use and occupancy of the parcel.  (Id. at ¶ 35.)  KWBA's conduct was premised on a

11 claim of paramount title to which Defendant Crimson expressly consented.  (Id.)  KWBA

12 demanded that Plaintiff vacate the parcel, remove all buildings, and cease all oil production, and

13 quitclaim all rights to use the surface to KWBA.  (Id. at ¶ 36.)  Plaintiff disputed the demand and

14 maintained that it had rights under the Ohio lease that allowed Plaintiff full access to the surface

15 of the parcel, rights to occupy the buildings on the parcel, and rights to continue accessing and

16 using the well on the parcel.  (Id. at ¶ 37.)

17      In 2012, KWBA filed an action in state court regarding possession of the property.  (Id. at

18 ¶ 38.)  KWBA claimed that it owned the surface rights to the parcel by tracing a chain of title

19 back to the State of California.  (Id. at ¶ 39.)  Plaintiff notified Defendant Crimson in writing of

20 the judicial proceedings.  (Id. at ¶ 40.)  Plaintiff informed Defendants on multiple occasions that

21 they were required to participate in defending the title to the property based on KWBA's claim

22 of paramount title.  (Id. at ¶ 41.)

23      Defendant Crimson agreed to assist Plaintiff by providing records establishing their chain

24 of title to the property and providing an agent to appear and testify at the trial.  (Id. at ¶ 43.)

25 Defendant Crimson's agent testified that Plaintiff had the right to full possession of the surface

26 rights of the property, subject only to Defendant Crimson's use of the same surface rights for

27 their own operations; Plaintiff had rights to the property subject only to restrictions in the Ohio

28 lease for future development; the Ohio lease reserved to Plaintiff all rights arising out of the Ohio

1 lease, including surface access to every portion of the parcel as well as the balance of the 250

2 acres as necessary and reasonable to produce minerals under the Ohio lease. (Id. at ¶¶ 44-46.)

3 Defendant Crimson's agent also testified that through their assignment of the Ohio lease,

4 Defendant Crimson was the lessor and Plaintiff was the lessee. (Id. at ¶ 47.) Defendant's agent

5 testified that Crimson received royalty payments from Plaintiff under the terms of the Ohio lease.

6 (Id. at ¶ 48.) Finally, Plaintiff contends that Defendant Crimson's agent falsely testified that

7 Crimson had not granted access to KWBA to any portion of the subject premises, acknowledging

8 that KWBA had entered into the areas outside of the parcel prior to the commencement of the

9 trial. (Id. at ¶ 49.)

10       On February 10, 2014, judgment was entered for KWBA. (Id. at ¶ 50.) The judgment

11 ordered the immediate right for KWBA to recover possession of the parcel; a writ of possession

12 may be issued by the Sheriff of Kern County evicting Plaintiff from the property; removal of

13 Plaintiff's buildings from the property; and Plaintiff to pay damages, including attorney fees to

14 KWBA. (Id. at ¶¶ 51-54.)

15       Plaintiff contacted Defendants and informed them of the judgment and that Plaintiff had

16 filed a motion for new trial. (Id. at ¶ 56.) Plaintiff requested that Defendants cooperate,

17 intervene, defend and otherwise assist Plaintiff to avoid removal from the parcel. (Id.)

18 Alternately, Plaintiff requested that Defendants assign their mineral rights on the parcel to

19 Plaintiff, with a modest reduction in royalty payment, so that Plaintiff could apply the rights to

20 prevent the judgment from becoming final. (Id. at ¶¶ 57-58.)

21       KWBA has entered the balance of the 250 acres of the Ohio lease and installed and is

22 operating water extraction wells. (Id. at ¶ 61.) The judgment issued by the state court only

23 applied to the parcel at issue in this action. (Id. at ¶ 62.) Defendant Crimson acquiesced to

24 KWBA entering onto the remainder of the land subject to the Ohio lease. (Id. at ¶ 64.) The

25 wells being operated by KWBA are causing subsidence and other related damage to Plaintiff's

26 oil wells. (Id. at ¶ 66.) Plaintiff has been forced to vacate the parcel. (Id. at ¶ 68.)

27       Plaintiff brings two causes of action for breach of contract. Plaintiff's first cause of

28 action is for Defendants' breach of contract for failing to defend Plaintiff's right and possession

to the parcel based upon the implied covenant of quiet possession.  (<u>Id.</u> at ¶¶ 71-85.)  Plaintiff's second cause of action alleges that Defendants breached the contract by allowing KWBA to install water wells on the remainder of the property subject to the Ohio lease.  (<u>Id.</u> at ¶¶ 86-93.)

### III.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true.  <u>Iqbal</u>, 556 U.S. at 678-79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> at 678.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief.  <u>Starr</u>, 652 F.3d at 1216.

### VI.

### ANALYSIS

#### A.    Defendant Crimson is a Proper Defendant in this Action

Initially, Defendants move to dismiss Defendant Crimson from this action arguing it is no longer a party to the contract.  Defendant Crimson argues that it assigned its rights under the

1   contract to Defendant Cal Royalty on January 1, 1995 and it is not a proper defendant.  Plaintiff

2   counters that they have properly alleged that Defendants Crimson and Cal Royalty are the same

3   and exercise joint control and direction over the lease.

4           Only a party to a contract can be held liable for a breach of the contract.  Jones v. AIG

5   Risk Management, Inc., 726 F.Supp.2d 1049, 1054 (N.D. Cal. 2010).  Similarly, the implied

6   covenants that derive and exist based upon the contractual relationship are only enforceable

7   against the parties to the contract.  Wady v. Provident Life and Accident Ins. Co. of America,

8   216 F.Supp.2d 1060, 1065 (C.D. Cal. 2002).  There are several doctrines that would allow a

9   nonsignatory to the contract to be held liable, including the existence of an agency relationship.

10  Wallis v. Centennial Ins. Co. Inc., 927 F.Supp.2d 909, 915 (E.D. Cal. 2013).  As relevant here, a

11  subsidiary is a general agent and represents the parent corporation by performing services

12  "sufficiently important to the [parent] corporation that if it did not have a representative to

13  perform them, the [parent] corporation ... would undertake to perform substantially similar

14  services."[3]  Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th

15  Cir. 2003) (citations omitted).  "The agency test permits the imputation of contacts where the

16  subsidiary was 'either established for, or is engaged in, activities that, but for the existence of the

17  subsidiary, the parent would have to undertake itself.' " Harris Rutsky & Co. Ins. Servs., 328

18  F.3d at 1135 (citations omitted.)

19          In their reply, Defendant argues that Plaintiff has not put forth a cognizable legal theory

20  against Defendant Crimson.  The second amended complaint alleges that Defendant Cal Royalty

21  is an affiliate of Defendant Crimson that was established to manage or own certain of Defendant

22  Crimson's assets.  Further, Plaintiff alleges that at trial Defendants' agent testified that the

23  Defendants are one and the same.  At the pleading stage, Plaintiff's allegations are sufficient to

24  allege that Defendant Cal Royalty is a general agent of Defendant Crimson such that both

25  _____

26  [3] A corporate entity can also be held liable on an alter ego theory.  "To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.' " Harris Rutsky Co. Ins.

27  Services, Inc., 328 F.3d at 1134-35 (citations omitted).  This requires the plaintiff to show that the control that the parent exercises over the subsidiary renders the subsidiary the mere instrumentality of the parent. Id. at 1135.

28  Plaintiff has included no allegations in the second amended complaint to allege an alter ego theory of  liability.

companies could be held liable under the contract.  Defendants' motion to dismiss Defendant Crimson is denied.

### B.      Plaintiff Fails to State a Claim for Breach of Contract

Defendants contend that Plaintiff's first cause of action for breach of contract fails as none of the actions alleged breached any provisions of the Ohio lease.  Plaintiff counters that the Defendants are merely rehashing arguments that this Court decided in the prior motion to dismiss.

While Plaintiff argues that this Court decided that the implied covenants can still allow a claim under these facts, the December 24, 2014 order did not find that the implied covenants may co-exist with paragraph 24 of the Ohio lease.  The December 24, 2014 order found that Plaintiff's had not alleged facts to show that Defendants were parties to the Ohio lease or that the Ohio lease included any obligation to defend the title to the leasehold.  (ECF No. 28 at 6-10.) The Court then discussed Defendants' argument that as a matter of law, the doctrine of quiet enjoyment and California Civil Code section 1927 do not require a landlord to defend claims on title, specifically recognizing that the implied covenants apply absent any language to the contrary.  (ECF No. 28 at 10:18-29.)  This was in light of the finding that the Court could not determine the agreement between the parties to this action.  The Court did not find that the implied covenant of quiet enjoyment could co-exist with the terms of the Ohio lease.  Plaintiff's citations to portions of the December 24, 2014 order to argue such a finding are taken out of context.

As this is a diversity action, California law applies to the state law claims.  Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003).  "Under California law, '[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.' "  Ehret v. Uber Technologies, Inc., __ F.Supp.3d __, 2014 WL 4640170, at *11 (N.D. Cal. Sept 17, 2014) (quoting CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239 (2008).)

"The fundamental rules of contract interpretation are based on the premise that the

interpretation of a contract must give effect to the 'mutual intention' of the parties." <u>Waller v. Truck Ins. Exch., Inc.</u>, 11 Cal. 4th 1, 18 (1995), as modified on denial of reh'g (Oct. 26, 1995). Under California statutory law, "the mutual intention of the parties at the time the contract is formed governs interpretation." <u>Waller</u>, 11 Cal.4th at 18 (citing Cal. Civ. Code, § 1636). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." <u>Waller</u>, at 18 (citing Cal. Civ. Code, § 1639). "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (id., § 1644), controls judicial interpretation." <u>Waller</u>, at 18 (quoting Cal. Civ. Code § 1638).

A contract "provision is ambiguous when it is capable of two or more constructions both of which are reasonable." <u>Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co. (Bay Cities)</u>, 5 Cal.4th 854, 867 (1993) (quoting <u>Suarez v. Life Ins. Co. of North America</u> 206 Cal.App.3d 1396, 1402 (1988)). "Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." <u>Bay Cities</u>, 5 Cal. 4th at 867 (citations omitted.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638.

1.    <u>The Contract Specifically Excludes Liability Premised on Defects in or Lack of Title</u>

Plaintiff's complaint alleges that Defendants breached the contract by not protecting Plaintiff's possessory interest in the surface rights of the property. However, the language of the contract specifically provides that Defendants are not liable for any title defect that affects Plaintiff's right to use of the property.[4]  The lease specifically states that:

> The Lessee accepts as satisfactory to itself the title of the Lessor to the demised premises, and agrees that (a) **the Lessor shall not be liable or responsible to the Lessee in damages or otherwise by reason of any defects in or liens or**

---

[4] The incorporation by reference doctrine allows material that is attached to the complaint to be considered on a motion to dismiss, as well as "unattached evidence on which the complaint 'necessarily relies' if : (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." <u>Corinthian Colleges</u>, 655 F3d at 999. Since the Ohio lease is attached to Plaintiff's complaint, is referred to in the complaint, is central to Plaintiff's claims, and no party questions the authenticity of the document, the Court shall consider the Ohio lease in deciding the motion to dismiss.

**encumbrances on the Lessor's title or any want of title in the Lessor to the demised premises or any portion thereof** or to any oil, gas or other hydrocarbon substances therein contained or found or produced thereon or taken, therefrom, and (b) that in the event of the assertion by others of any claim against the Lessor on account of the extraction or removal from the demised premises of oil, gas or other hydrocarbon substance by the Lessee; the Lessee will defend and indemnify and save and hold the Lessor harmless from all of such claims except such portion thereof as represents the Lessor's royalty; provided that upon receiving notice thereof, the Lessor shall notify the Lessee with reasonable promptness of the filing of any action or suit for the assertion of any such claim and shall allow the Lessee the privilege of having its attorneys appear therein either alone or in association with the Lessor's attorneys (as the Lessor may elect) in defending any such action or suit on behalf of the Lessor, each party paying the expenses of its own attorneys.

(Oil and Gas Lease – The Ohio Oil Company, "B" Lease ¶ 24, attached as Exhibit 1-1 to Sec. Am. Compl (emphasis added), ECF No. 29.)  The language of the lease itself is not ambiguous. By the plain language of the lease, the parties agreed that the Lessor is not liable to the Lessee for any defects in or want of title and the Lessor is not liable for damages or otherwise due to defects in or want of the title to the property.  This language controls here.

Despite Plaintiff attempting to sidestep this language by arguing that the cause of their damages is that Defendants did not protect the title of the property, the basis of Plaintiff's damages is that a third party has claimed superior title to the property.  "When the parties knowingly bargain for the protection at issue, the protection should be afforded.  This requires an inquiry into the circumstances of the damage or injury and the language of the contract. . . . CAZA Drilling (California), Inc. v. TEG Oil & Gas U.S.A., Inc., 142 Cal. App. 4th 453 (2006). The language of the contract specifically precludes damages for defects in or want of title. Defendants are not liable to Plaintiff for loss of the use of the surface of the property due to KWBA asserting superior title to the property.  The Court is not persuaded by Plaintiff's argument that it is not a defect in title that caused their damages, but Defendants' conduct in conspiring with or acquiescing in the claims of KWBA.

In this instance, KWBA asserted a claim that they have superior title in the property which is traceable to the State of California.  The California Superior Court has adjudicated the claim and found that KWBA has superior title to the property.  The contract entered into by the parties specifically provides that Defendants are not liable for defects in or the want of title.

1    Further, Plaintiff alleges that Defendants have agreed to defend the title as necessary by

2    entering into an attorney client relationship.  However, as the Court found in the December 24,

3    2014 order, "[t]he language of the lease itself does not create an obligation for the lessor to

4    defend the title of the property on behalf of the lessee."  (Order Granting Defs.' Mot. to Dismiss

5    8-10, ECF No. 28.)  Plaintiff also contends that the lease provides that Defendants must assign

6    their mineral rights to Plaintiff so that they may succeed in defending their right to the property.

7    However, Plaintiff's point to no language in the lease creating such an obligation, nor does the

8    Court find such language.

9        The terms of the lease are clear.  Defendants are not liable for the defect or want of title

10   and the lease creates no obligation in Defendants to assist Plaintiff in challenging the Superior

11   Court's decision or to remove KWBA from the property.  Plaintiff fails to state a claim for

12   breach of the express terms of the contract.

13       2.    The Implied Covenant of Good Faith and Fair Dealing Does Not Create
              Obligations Not Contemplated by the Contract
14
15       Plaintiff contends that Defendants have violated the implied covenant to cooperate in

16   good faith to protect Plaintiff's possessory interest in the property.  "The prerequisite for any

17   action for breach of the implied covenant of good faith and fair dealing is the existence of a

18   contractual relationship between the parties, since the covenant is an implied term in the

19   contract."  Smith v. City & County of San Francisco, 225 Cal.App.3d 38, 49 (1990).  "To

20   establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish

21   the existence of a contractual obligation, along with conduct that frustrates the other party's

22   rights to benefit from the contract."  Fortaleza v. PNC Fin. Servs. Grp., Inc., 642 F. Supp. 2d

23   1012, 1021-22 (N.D. Cal. 2009).  However, the covenant "cannot impose substantive duties or

24   limits on the contracting parties beyond those incorporated in the specific terms of their

25   agreement."  Agosta v. Astor, 120 Cal. App. 4th 596, 607 (2004) (quoting Guz v. Bechtel

26   National, Inc., 24 Cal.4th 317, 349-50 (2000)).

27       The contract itself does not create an obligation for Defendants to protect Plaintiff's

28   possessory interest in the property, and there is no implied covenant to obligate Defendants

beyond the express terms of the contract.  "The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract."  Pasadena Live, LLC v. City of Pasadena, 114 Cal. App. 4th 1089, 1094 (2004) (quoting 1 Witkin, Summary of Cal. Law (2003 supp.) Contracts, § 743, p. 449)).  Absent a right under the contract "the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.' "  Waller, 11 Cal. 4th at 36 (quoting Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 1152 (1990)).  Plaintiff alleges breach of implied covenants that are not contemplated by the contract.

Plaintiff contends that Defendants predecessors created the claim of paramount title in KWBA and that Defendants assumed liability for these acts.  Plaintiff does not include any factual allegations as to what acts the predecessors under the contract alleged did to create the claim of paramount title in KWBA.  Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.  Plaintiff's conclusory allegation is insufficient to state a cognizable claim.  Further, the transferee is not liable for any breach of a promise that occurred prior to the transfer.  49 Am. Jur. 2d Landlord and Tenant § 960.  Defendants, as transferees of the rights under the assignment of the lease, are not liable for any breach of the contract by their predecessors.

Plaintiff makes conclusory allegations that Defendants conspired with KWBA to enter into sections of the parcel.  However, the factual allegations in the complaint show that Plaintiff was assigned rights under the lease on September 21, 1984.  (ECF No. 29 at ¶ 8.)  Defendants were assigned rights under the lease in 1995.  (Id. at ¶ 23.)  There was no change in Plaintiff's use of the property due to the assignment to Defendants.  It was not until 2012, approximately seventeen years later, that KWBA began to interfere with Plaintiff's use and occupancy of the

1   parcel.  (Id. at ¶ 35.)  There are no facts alleged by which the Court could infer that Defendants

2   engaged in any conspiracy with KWBA to deprive Plaintiff of rights under the lease.  Iqbal, 556

3   U.S. at 678-79.

4          Plaintiff alleges that Defendants communicated with KWBA and did not take any actions

5   to prevent KWBA from coming onto the property and thus breached the lease.  However, the

6   allegations in the complaint show that KWBA asserted that they had superior title to the

7   property.  While Plaintiff contends that the superior court decision did not adjudicate title to the

8   remaining 250 acres covered by the Ohio lease, there are no facts alleged from which the Court

9   could infer that the title to the 23 acre parcel here would differ from that of the remaining

10  acreage.  Plaintiff states that prior to trial, Defendants had allowed KWBA to enter into the

11  balance of the property and KWBA has installed and is operating water wells.  (ECF No. 29 at ¶¶

12  49, 61.)  The State court has adjudicated the title claim and determined that KWBA has superior

13  title to the 23 acres at issue here.  Defendants' decision not to challenge KWBA's assertion of

14  superior title to the balance of the property does not support Plaintiff's claim for breach of

15  contract.

16         3.      Similarly, the Contract Expressly Provides that Defendants are Not Liable for
                   Interference With Plaintiff's Quiet Enjoyment Due to a Defect or Want of Title
17

18         In the absence of contrary language, "every lease contains an implied covenant of quiet

19  enjoyment."   Petroleum Collections Inc. v. Swords, 48 Cal.App.3d 841, 846 (1975).

20  Additionally, California law provides that "[a]n agreement to let upon hire binds the letter to

21  secure to the hirer the quiet possession of the thing hired during the term of the hiring, against all

22  persons lawfully claiming the same."  Cal. Civ. Code § 1927.  Section 1927 is subordinate to the

23  intention of the parties and may be waived unless a waiver would be against public policy.

24  Kushner v. Home Service Co., 91 Cal.App.692, 697 (1928) (citing Cal. Civ. Code § 3268).

25         Section 1927 and "the covenant of quiet enjoyment on the part of the lessor means that

26  the tenant shall not be evicted or disturbed by the lessor, or by persons deriving title from him, or

27  by virtue of a title paramount to his."  Lost Key Mines v. Hamilton, 109 Cal.App.2d 569, 572-73

28  (1952) (emphasis added).  The covenant insulates the tenant against any act or omission by the

1    landlord or anyone claiming under him which interferes with the tenant's right to use and enjoy

2    the premises for the purposes contemplated by the tenancy.  <u>Andrews v. Mobile Aire Estates</u>,

3    125 Cal.App.4th 578, 587 (2005).  This imposes similar duties of care to the implied covenant of

4    good faith and fair dealing.  <u>Andrews</u>, 125 Cal.App.4th at 589.  The implied covenant of quiet

5    enjoyment imposes upon each of the parties an obligation to do everything that the contract

6    presupposes they will do to accomplish the contract's purpose.  <u>Id.</u> at 589.

7           While Plaintiff contends that Defendants breached the implied covenant of quiet

8    enjoyment by failing to protect their possessory interest in the property, in this instance the

9    language of the lease itself contemplated such a situation and specifically absolved the lessor

10   from liability for any want or defect in the title to the property.  The covenant of quiet enjoyment

11   can be modified or waived by the parties to the lease.  <u>Lee v. Placer Title Co.</u>, 28 Cal.App.4th

12   503, 513 (1994).  Here, Plaintiff was displaced due to a party claiming superior title to the

13   property.  The lease specifically provides "the Lessor shall not be liable or responsible to the

14   Lessee in damages or otherwise by reason of any defects in or liens or encumbrances on the

15   Lessor's title or any want of title in the Lessor to the demised premises or any portion thereof. . .

16   ."  (Lease ¶ 24.)  Plaintiff's argument that the implied covenant requires Defendants to protect

17   their interest to title to the property is not supported by the plain language of the lease, which

18   language states to the contrary.

19          Finally, Plaintiff states that a contract clause that the lessor has unqualified rights to

20   unilaterally alter its title in the future so that the lessee could be evicted by someone claiming

21   superior title would violate public policy.  However, there are no allegations in the complaint

22   from which the Court can infer that Defendants took action to "unilaterally alter" the title to the

23   property.  The Ohio lease was entered into in 1936 and the term was for as long as oil, gas, or

24   other hydrocarbon substances were produced from the property in amounts deemed to be paying

25   quantities by the lessee.  (ECF No. 29 at ¶ 27.)

26          "As a matter of contractual interpretation, there is nothing to hinder a 'voluntary

27   transaction in which one party, for a consideration, agrees to shoulder a risk which the law would

28   otherwise have placed upon the other party[,]' " unless it runs afoul of California Civil Code

section 1668.  <u>CAZA Drilling (California), Inc</u>, 142 Cal.App.4th at 467.  California defines contracts that are contrary to public policy as those which "have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent. . . ."  Cal. Civ. Code § 1668.  In <u>CAZA Drilling</u>, the court noted that it would be difficult to imagine a situation where a contract between relatively equal business entities would be able to meet the required characteristics of a transaction that implicated public interest.[5]  142 Cal.App.4th at 469.

Other than the conclusory statement regarding allowing a party to unilaterally alter title, Plaintiff makes no argument that the parties' agreement to limit liability based on unforeseeable challenges to the title of the property in the future would violate public policy.  Nor does the Court find that parties to an open ended lease violate public policy by protecting themselves from unforeseen challenges to the title of the property in the future.

Plaintiff fails to state a claim for breach of the implied covenant of quiet possession and enjoyment as the terms of the lease provide that Defendant is not liable due to defect or want of title to the property.

3.   <u>Plaintiff's Claim Based on KWBA's Installation of Water Wells Outside of the 23 Acre Parcel Fails to State a Claim</u>

Plaintiff contends that Defendants breached the contract by allowing KWBA to install water wells on the balance of the property covered by the Ohio lease.  Plaintiff argues that the lease provides that the Ohio lease gives them exclusive use of all the premises outside of the 23

---

[5] In <u>CAZA Drilling</u>, the court identified "factors or characteristics which identify a transaction implicating the public interest: (1) the transaction "concerns a business of a type generally thought suitable for public regulation; (2) the party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public; (3) the party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards; (4) as a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services; (5) in exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence; and (6) as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." <u>Id.</u> at 468 (internal punctuation and citations omitted).  Plaintiff does not show that any of these factors are applicable here such that the contract would be found to violate public policy.

1  acres.  Initially, the State Court has adjudicated the title of the property, found that Plaintiff is not

2  entitled to any rights on the 23 acres, and ordered Plaintiff to quitclaim the property to KWBA.

3  Since Plaintiff has been evicted from the property due to the finding that KWBA has superior

4  title to the property, the Court is perplexed as to how allowing KWBA to operate wells on the

5  balance of the parcel could interfere with Plaintiff's operations.  The state court has determined

6  that Plaintiff is not entitled to operate on the 23 acres.

7       Plaintiff contends that the lease expressly provides in paragraph 3 a right for it to use the

8  remainder of the 250 acres.  (ECF No. 29 at ¶ 87.)  The lease provides that the Lessee shall have

9  sole and exclusive possession of the property, except that the Lessor has exclusive use control

10  and possession of the parcel as long as it does not unnecessarily interfere with the Lessee's

11  operations.  (ECF No. 29-1 at 5.)  Plaintiff also cites to paragraph 20 of the Ohio lease, which

12  states

13
14  > The Lessee may develop water on said demised premises but shall not either by
   > sinking wells or otherwise, draw water from the Kern River or from any ditch or

15  > other watercourse or increase the seepage or percolation from said river or ditch
   > or other watercourse.  All water so developed shall be only for use on the demised

16  > premises in the operations herein provided for, and the Lessor reserves to itself
   > the right to use any unused portion of said water, but the use by the Lessor of such

17  > unused portion of water shall be at its own risk, and such water shall be taken at
   > such point or points as not to unnecessarily interfere with the Lessee.  The Lessee
   > shall have no right to use any water flowing in, upon, over, or across said demised

18  > premises except such water as it may itself develop, as above provided.

19  (ECF No. 29-1 at 27.)

20       While Plaintiff alleges that allowing KWBA to operate wells on the property breaches

21  these provision of the lease, the acts Plaintiff complains of are not taken by Defendants or

22  someone acting on their behalf.  KWBA is unquestionably a third party who has asserted

23  superior title and the State Court has been determined that KWBA has superior title to the

24  property.  Unlike those cases where the Courts have found that the lessee had statutory right or a

25  right to quiet that required the lessor to take actions to protect the lessee's quiet enjoyment, no

26  such provision exists here.  The essence of Plaintiff's breach of contract claim is that a party

27  claiming superior title has interfered with Plaintiff's rights under the lease.  The lessee waived

28  the right to quiet enjoyment by the lease provision that the lessor was not liable for damages or

1   otherwise for defects or want of title.  Plaintiff fails to state a claim for breach of contract based

2   upon third party KWBA claim of superior title and operation of water wells on the demised

3   premises.   The Court finds that Plaintiff fails to state a claim for breach of contract and

4   Defendants' motion to dismiss will be granted

5       **B.       Leave to Amend**

6       Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

7   given when justice so requires," Fed. R. Civ. P. 15(a), and "[l]eave to amend should be granted if

8   it appears at all possible that the plaintiff can correct the defect," Lopez v. Smith, 203 F.3d 1122,

9   1130 (9th Cir. 2000) (internal citations omitted).   However, courts "need not grant leave to

10  amend where the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith; (3)

11  produces an undue delay in the litigation; or (4) is futile." Id.

12      The Court finds that it would be futile to grant leave to amend.  Plaintiff has filed two

13  complaints alleging a breach of contract based upon KWBA's assertion of title in the property.

14  The state court has adjudicated the title to the parcel and determined that KWBA has superior

15  title to the property.  The lease specifically provides that the lessor is not liable in damages or

16  otherwise by reason of any defects in or liens or encumbrances on the Lessor's title or any want

17  of title in the Lessor to the demised premises or any portion thereof.  Plaintiff's complaint is

18  dismissed without leave to amend.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**VI.**

**CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    The hearing set for March 25, 2015 at 10:00 a.m. in Courtroom 9 is VACATED;

2.    Defendants' motion to dismiss, filed February 20, 2015, is GRANTED;

3.    This action is DISMISSED without leave to amend for failure to state a claim; and

4.    The Clerk of the Court is DIRECTED to close this action.

IT IS SO ORDERED.

Dated:   **March 23, 2015**

UNITED STATES MAGISTRATE JUDGE

18