# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAYSON SERVICE, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CRIMSON RESOURCE MANAGEMENT CORP., et al.,<br><br>　　　　Defendants. | Case No. 1:14-cv-01125-SAB<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT<br><br>ECF NO. 40<br><br>ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEY'S FEES<br><br>ECF NO. 37 |

On April 20, 2015, Plaintiff Grayson Service, Inc. ("GSI") filed a motion to alter or amend the Court's order dismissing this action. (ECF No. 40.) The hearing on the matter took place on June 3, 2015. Douglas Mahaffey appeared on behalf of GSI. Ericka Englert appeared on behalf of Defendants Crimson Resource Management Corp. and Cal Royalty, LLC ("Defendants").

For the reasons set forth below, the Court grants GSI's motion.

## I.

## BACKGROUND

GSI seeks reconsideration of the Court's order granting Defendants' motion to dismiss. The Court granted Defendants' motion to dismiss GSI's Second Amended Complaint on March 23, 2015. (ECF No. 35.)

1

The Second Amended Complaint raised two causes of action for breach of contract. The claims arose from an oil and gas lease dating back to 1936. Crimson is alleged to be the successor in interest to Kern County Land Company ("KCLC") with respect to the oil and gas lease. Cal Royalty is alleged to be an affiliate of Crimson, established to manage and own certain Crimson assets. GSI is the current lessee under oil and gas lease.

Sometime in the early 1900's, KCLC acquired the fee simple interest in lands in Kern County, including Sections 13 and 14, Township 30, Range 25, Kern County, California. On August 7, 1936, KCLC entered into an oil and gas lease with Marathon Oil Company ("Marathon"), formerly known as The Ohio Oil Company ("the Ohio Lease"). The Ohio Lease covers approximately 250 acres within Sections 13 and 14 ("the Leased Premises"). On September 21, 1984, Marathon assigned all right, title, and interest in the Ohio Lease to GSI. GSI subsequently occupied the surface of the leased premises and commenced use of a water well. GSI also produced oil on the leased premises. GSI's water well and buildings are located on approximately six acres in Section 13, which comprises approximately 23 acres ("the 23 Acre Parcel").

Under the Ohio Lease, GSI is entitled to exclusive use and possession of the entire Leased Premises subject only to non-interfering use by Defendants. Further, GSI possesses exclusive right to use of the water on the Leased Premises subject only to non-interfering use by Defendants of any portion of the water unused by GSI.

In the 1970's, KCLC was purchased by Tenneco, Inc. and changed its name to Tenneco West, Inc. ("TWI"). In 1984, TWI became the lessor of the Ohio Lease. On June 30, 1988, TWI assigned their fee simple interest in the minerals underlying the Ohio Lease and all surface rights related to the Ohio Lease to Tenneco Oil Company ("TOC"). TOC executed an identical assignment to TOC-Pacific Coast, Inc. On December 15, 1988, Atlantic Richfield Company ("ARCO") merged with TOC-Pacific Coast, Inc. and acquired the rights to the Ohio Lease. On January 1, 1995, ARCO conveyed and assigned those same rights to Crimson. On the same day, Crimson conveyed a portion of the minerals underlying the GSI production zones to Cal Royalty.

///

2

1  Crimson operates a well on the 23 Acre Parcel which produces hydrocarbons.  Crimson
2  and GSI share the surface area of the 23 Acre Parcel based on Crimson/Cal Royalty's mineral
3  ownership and production.  GSI's right to access the 23 Acre Parcel is subject only to non-
4  interfering use by Crimson.

5  In or around 2012, the Kern Water Bank Authority ("KWBA") began to interfere with
6  GSI's occupancy of the 23 Acre Parcel.  KWBA claimed a paramount title over Crimson's.
7  KWBA demanded that GSI vacate the 23 Acre Parcel and quitclaim all rights to use the surface
8  of the 23 Acre Parcel to KWBA.  GSI disputed this claim, which lead to KWBA to file a lawsuit
9  in state court entitled <u>KWBA v. GSI and Does 1-100</u>, Case No. S-1500-CV-275141.  KWBA
10 claimed to own the surface rights of the 23 Acre Parcel through a chain of title tracing back
11 through the State of California.

12 GSI informed Defendants of the lawsuit and requested that Defendants defend GSI's
13 right of quiet enjoyment and possession of the leased premises.  Crimson initially assisted GSI
14 by providing records establishing Crimson's chain of title.  However, GSI alleges that Crimson's
15 agent, Teresa Kenney, falsely testified that Crimson had not granted access to KWBA to any
16 portion of the Leased Premises, when in fact they had granted KWBA access to portions of the
17 Leased Premises outside of the 23 Acre Parcel prior to trial.  Judgment was entered in favor of
18 KWBA in the state court action on February 10, 2014.

19 GSI alleges that Crimson breached its duty to cooperate, defend, intervene, and support
20 under the Ohio Lease.  GSI further alleges that KWBA entered the remaining portions of the
21 Leased Premises outside the 23 Acre Parcel and installed water extraction wells with Crimson's
22 acquiescence.  GSI alleges that KWBA's water wells are causing damage to GSI's oil wells.

23 Defendants filed their motion to dismiss the Second Amended Complaint on February 20,
24 2015. (ECF No. 31.)  Defendants argued that Crimson was not a proper defendant in this action,
25 that GSI's first cause of action fails to state a claim because Defendants had no duty to protect
26 GSI's tenancy, and that GSI's second cause of action fails to state a claim because Defendants
27 are not liable for KWBA's actions on the Leased Premises.
28 / / /

The Court rejected Defendants' first argument pertaining to Crimson being a proper defendant, but granted the motion to dismiss on the basis that the Second Amended Complaint failed to state any cognizable claims. The Court found that the Ohio Lease specifically excluded any liability on the part of Defendants premised upon any defects in title and that the clause in the lease disclaiming any liability on the part of Defendants for defects in title absolved Defendants from any liability for the breach of the implied covenant of quiet enjoyment. The Court further found that GSI failed to state any claim based upon KWBA's installation of water wells on the Leased Premises outside the 23 Acre Parcel because KWBA was a third party with superior title to the property.

## II.

## LEGAL STANDARDS

GSI moves to alter or amend the judgment in this action under Federal Rule of Civil Procedure 59(e), which states:

> (e) Motion to Alter or Amend a Judgment.  A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

"Amendment or alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001) (citing School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993)).

## III.

## DISCUSSION

### A.     Reconsideration of the Court's Order Dismissing the First Cause of Action

GSI contends that the Court committed clear error in dismissing the first cause of action. The first cause of action raised a claim for breach of contract on the theory that the covenant of quiet enjoyment imposed a duty on Defendants to prevent KWBA from interfering with GSI's quiet enjoyment of the 23 Acre Parcel. GSI alleges that Defendants breached this obligation when KWBA evicted GSI from the 23 Acre Parcel via the state court proceedings.

1   GSI argues that the Court erred in finding that the covenant of quiet enjoyment did not
2   apply because of the existence of a clause in the Ohio Lease releasing Crimson from any liability
3   for any defects in title.

4   The clause in the Ohio Lease regarding defects in title states:

> 24.   Title of Lessor
> The Lessee accepts as satisfactory to itself the title of the Lessor to the demised premises, and agrees that (a) the Lessor shall not be liable or responsible to the Lessee in damages or otherwise by reason of any defects in or liens or encumbrances on the Lessor's title or any want of title or the Lessor to the demised premises or any portion thereof or to any oil, gas or other hydrocarbon substances therein contained or found or produced thereon or taken therefrom, and (b) that in the event of the assertion by others of any claim against the Lessor on account of the extraction or removal from the demised premises of oil, gas or other hydrocarbon substance by the Lessee, the Lessee will defend and indemnify and save and hold the Lessor harmless from all of such claims except such portion thereof as represents the Lessor's royalty; provided that upon receiving notice thereof, the Lessor shall notify the Lessee with reasonable promptness of the filing of any action or suit for the assertion of any such claim and shall allow the Lessee the privilege of having its attorneys appear therein either alone or in association with the Lessor's attorneys (as the Lessor may elect) in defending any such action or suit on behalf of the Lessor, each party paying the expenses of its own attorneys.

17   (Second Am. Compl., Ex. 1, at pg. 27.)

18   In ruling on Defendants' motion to dismiss, the Court found that this clause excluded
19  liability premised upon any defects in title.  However, upon reconsideration, it is unclear whether
20  this clause applied solely to defects in title in existences at the time the Ohio Lease existed in
21  1936, or whether it could be interpreted to apply to defects in title that did not exist in 1936, but
22  subsequently arose later in time.  Plaintiff argues that the latter interpretation is implausible
23  because such a construction would allow the lessor to lease property to the lessee, then
24  immediately create a defect in title to that same property which would destroy the lessee's
25  leasehold estate.

26  Defendant cites two cases in support of their argument that this clause could be
27  interpreted to apply to all defects in titles, including those which arise after the execution of the
28  Ohio Lease.  Defendant's authority is unpersuasive.  In <u>Frittelli, Inc. v. 350 N. Canon Drive, LP</u>,

202 Cal. App. 4th 35, 45-46 (2011), the lease contained a disclaimer of liability for any disruption due to remodeling of the premises by the lessor, but the language specifically stated that it applied to remodels "[a]t any time during the Term." The Ohio Lease does not have any comparable language specifying when the defects in title arise. Furthermore, a defect in title is materially different issue compared to disruption caused by remodeling. It makes sense to include a contractual clause pertaining to disruption caused by remodeling during the term of the lease, and little sense to include a contractual clause pertaining to disruption caused by remodeling outside the terms of the lease. In contrast, it makes sense to include a contractual clause pertaining to defects in title which exist prior to the execution of the lease. It makes little sense for a tenant to agree to a contractual clause disclaiming all liability for defects in title which are created by the landlord at any time during the term of the lease. Defendant also cites Kushner v. Home Service Co., 91 Cal. App. 692, 694 (1928), but Kusher has no persuasive value in this action either, as it concerns a clause in the lease permitting the landlord to terminate the lease, upon five months' notice, if the landlord wished to erect a new building on the same property. The term in the Ohio Lease did not provide for any notice to be given to GSI or its predecessors in the event that the lessor created a defect in title, lending less plausibility to Defendants' interpretation.

Although the Court's research failed to find any cases involving similar clauses in a lease, the Court notes that in the context of title insurance policies, clauses pertaining to defects in title are generally only applicable to defects that affect the title at the time when the policy issued and not to defects which arise after execution. Rosen v. Nations Title Ins. Co., 56 Cal. App. 4th 1489, 1499 (1997). Accordingly, while the Court does not issue any findings regarding the proper interpretation of the clause in this action, the Court recognizes the possibility that the clause regarding defects in titles could be interpreted in a similar fashion.

Even if the covenant of quiet possession runs with the land and Defendants were obligated to protect GSI's quiet enjoyment of the Leased Premises and the 23 Acre Parcel from interference from third parties claiming superior title, Defendants argue that any breach of the covenant of quiet possession was committed by their predecessors and Defendants are not liable

for the actions of their predecessors.

Although not alleged in the Second Amended Complaint, GSI's motion to alter or amend states that in 1988, TWI, Defendants' predecessor and a prior lessor, entered into an agreement conveying water rights to recharge ponds to the State of California. GSI states that "KWBA's title thus arises out [of] the predecessor lessor of the property." Thus, the rights KWBA acquired and used against GSI during the eviction proceedings appear to be rights KWBA acquired from the State of California, who in turn obtained those rights via conveyance from TWI.

Under California law, "[n]o one, merely by reason of having acquired an estate subject to a covenant running with the land, is liable for a breach of the covenant before he acquired the estate, or after he has parted with it or ceased to enjoy its benefits." Cal. Civ. Code § 1466.

However, GSI's claim need not be premised on the actions which occurred in 1988. In 2012, when Defendants were the lessors under the Ohio Lease, GSI was evicted from the 23 Acre Parcel by KWBA, a third party claiming paramount title. Under California law, a lessor is liable for breach of the covenant of quiet enjoyment where a plaintiff was evicted from the leased premises by one who had established paramount title to the property. LaFrance v. Kashishian, 204 Cal. 643, 644 (1928). The paramount title held by the third party need not be derived from actions by the defendant—in LaFrance, the defendants' defective title was from a tax title, which the parties were aware of when the lease was executed. There was no allegation that the defendants conveyed the paramount title to the third party who evicted the plaintiff.

Under California law, "[a]n agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring, against all persons lawfully claiming the same." Cal. Civ. Code § 1927 (emphasis added). Notably, Section 1927 contains no requirement that a lessor act in bad faith to be liable. It is also worth noting that Section 1927 imposes liability on a lessor irrespective of the lessor's good faith efforts to provide a defense on behalf of the lessee in resisting the paramount title asserted by the third party. In short, California law imposes liability on a landlord whenever a tenant is evicted by a third party possessing superior title to the property, which is precisely what occurred with respect to the 23 Acre Parcel in 2012.

7

The Court reconsiders its prior order based on the possibility that Plaintiff can demonstrate that the clause in the Ohio Lease regarding title defects only applied to title defects in existence at the time the Ohio Lease was executed in 1936 and the defect claimed by KWBA was created in 1988. In the Court's order granting the motion to dismiss, the Court presumed that the clause regarding title defects applied to title defects which were created after the execution of the Ohio Lease. However, if the clause concerning defects in title were interpreted to apply only to defects in title in existence at the time the Ohio Lease was executed, the covenant of quiet enjoyment could apply to impose liability on Defendants for KWBA's interference with GSI's tenancy.

Based upon the foregoing, the Court will grant GSI's motion and amend its order granting Defendants' motion to dismiss. The Court finds that GSI's Second Amended Complaint states a cognizable cause of action for breach of contract with respect to Defendants' breach of the covenant of quiet enjoyment.

**B.    Reconsideration of the Court's Order Dismissing the Second Cause of Action**

Plaintiff argues that the Court committed legal error in dismissing the Second Cause of Action for breach of contract. The second cause of action raised a claim for breach of contract on the theory that GSI permitted KWBA to drill for water on the Leased Premises outside the 23 Acre Parcel. GSI alleges that they possessed primary water rights to the entire Leased Premises under the Ohio Lease, including the land outside the 23 Acre Parcel.

The Court reconsiders the order granting Defendants' motion to dismiss the second cause of action for the same reasons articulated above with respect to the first cause of action. The evidence may show that the clause pertaining to defects in titles was not intended to apply to defects arising after the Ohio Lease was executed in 1936. Under this interpretation, the covenant of quiet enjoyment would apply to impose liability against Defendants for KWBA's interference with GSI's quiet enjoyment of their leasehold estate, specifically their right to use of the ground water on the Leased Premises.

The Court notes that there is no allegation that KWBA's state court action determined the ground water rights pertaining to the Leased Premises outside the 23 Acre Parcel. The Second

Amended Complaint expressly alleges that KWBA's occupancy of the Leased Premises outside the 23 Acre Parcel is unrelated to any claim of superior title or the state court eviction proceedings. GSI alleges that KWBA occupies this land with Defendants' express consent. A breach of the covenant of quiet enjoyment can be premised upon the actions of a third party who interferes with the lessee's quiet enjoyment with the lessor's permission. <u>Nativi v. Deutsche Bank National Trust Company</u>, 223 Cal. App. 4th 261, 307 (2014) ("We recognize, however, that 'a landlord cannot interfere with his tenant's possession or enjoyment by allowing others to enter upon the land. [Citation.]'").

Accordingly, the Court finds that GSI's Second Amended Complaint states a cognizable cause of action for breach of contract with respect to KWBA's interference with GSI's water rights on the Leased Premises outside the 23 Acre Parcel.

### C. Defendants' Motion for Attorney's Fees

On April 6, 2015, Defendants filed a motion for attorney's fees. (ECF No. 37.) Defendants sought attorney's fees as provided under the Ohio Lease as the prevailing party in this action. However, since the Court has reconsidered the order granting Defendants' motion to dismiss, Defendants are no longer the prevailing party at this time. Accordingly, the Court will deny the motion for attorney's fees.

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that it committed legal error in granting Defendants' motion to dismiss the Second Amended Complaint.

Accordingly, it is HEREBY ORDERED that:

1. GSI's motion for to alter or amend the Court's order granting the motion to dismiss is GRANTED;
2. The March 23, 2015 order granting Defendants' motion to dismiss is VACATED;
3. Defendants' motion to dismiss is DENIED;

///

///

9

1      4.      The Clerk of the Court is ordered to reopen this action; and

2      5.      Defendants' motion for attorney's fees is DENIED.

IT IS SO ORDERED.

Dated:   **June 8, 2015**

UNITED STATES MAGISTRATE JUDGE