Douglas L. Mahaffey, Esq. (SBN 125980)
Steven E. Paganetti, Esq. (SBN 087513)
**MAHAFFEY LAW GROUP, PC**
**A Professional Corporation**
20162 SW Birch Street, Suite 300
Newport Beach, California 92660
Telephone: (949) 833-1400
Facsimile: (949) 263-8736
dougm@mahaffeylaw.com
steve@mahaffeylaw.com

Attorney for Plaintiff
Grayson Service, Inc.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAYSON SERVICE, INC., a California corporation;<br><br>        Plaintiff,<br><br>vs.<br><br>CRIMSON RESOURCE MANAGEMENT CORP., and DOES 1 through 100,<br><br>        Defendants. | CASE NO.:  14cv01125-SAB<br><br>**THIRD AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br>**(Fed. R. Civ. P. 38(b))** |

Plaintiff GRAYSON SERVICE, INC. alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action under 28 U.S.C. section 1332, which provides for diversity jurisdiction between citizens of diverse states where the dispute involves more than seventy-five thousand dollars ($75,000). Venue is proper within this district pursuant to, *inter alia*, 28 U.S.C. section 1391 subsection (b)(2).

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

# PARTIES

2.     Plaintiff, Grayson Service, Inc., ("GSI") is a California corporation, whose principal place of business is in Bakersfield, California.  Defendant, Crimson Resource Management Corp., is a Colorado corporation whose principal place of business is in Colorado, at 410 17th St., Suite 1010, Denver, CO 80202.  Crimson Resource Management Corp., ("Crimson") is the successor in interest to Kern County Land Company ("KCLC") as Lessor of the August 7, 1936, oil and gas lease between KCLC and the Marathon Oil Company, fna Ohio Oil Company.  ("The Ohio Lease").[1] Further, at all times herein mentioned Crimson as the purported shareholder/sole member of Cal Royalty, LLC, was in the fact the alter ego of Cal Royalty, and instead of Cal Royalty operating as a separate legal entity then its purported controlling shareholder, it operated Cal Royalty as if it were a division of Crimson.

3.     Crimson's person most knowledgeable has testified that the principals of Crimson considers Crimson Resource Management Corp. and Cal Royalty the same identical entity, as to the relationship with GSI.

4.     Crimson has succeeded to the obligations under the Ohio Lease, and notwithstanding its purported assignment of the lease to Cal Royalty, Crimson is the successor Lessor to the Ohio lease and is the party responsible to Plaintiff to comply with the lease covenants that extend to the benefit of Plaintiff.  The purported assignment to Cal Royalty is null and void as Crimson is the alter ego of Cal Royalty and therefore responsible for all of Cal Royalty's debts and obligations as alleged herein.

5.     Crimson also own minerals underlying the subject premises at issue in this litigation and operates production facilities on the subject premises at the same location that Plaintiff conducted its operations.

---

[1] The Ohio Oil Company changed its name to Marathon Oil Company in 1962 as part of its 75th Year celebration.

**ALTER EGO ALLEGATIONS**

6.     At all times herein mentioned, Defendant Crimson owned, operated, managed and utilized Cal Royalty as a division of Crimson and/or Cal Royalty was a fictitious name under which Crimson effectively operated the Ohio Lease.

7.      At all times herein mentioned there was such a unity on interest and ownership between Crimson and Cal Royalty to the extent any separateness between them ceased to exist.

8.     Crimson at all times herein mentioned exercised total management and control of Cal Royalty business affairs through its officers, managers and/or directors including but not limited to making business decisions on behalf of Cal Royalty as a division and/or fictitious name of Crimson without any consultation with any puported members of Cal Royalty.

9.     As a result of the complete dominance and control of its business and financial affairs by Crimson, Cal Royalty was a mere shell or instrumentality of Crimson.

10.     Crimson and Cal Royalty have identical mangement, officers and share the exact same office, the exact same office equipment and support staff, and have no separate identity to the outside world.

11.     At all times herein mentioned, Crimson initially and continuously through the present time funds and otherwise finances the business operation of Cal Royalty to such an extent that without the financing provided by Crimson, Cal Royalty would not have adequate capital or other finances to pay for its expenses associated with any business operation of Cal Royalty.

12.     Cal Royaly functions as a division of Crimson and/or fictitious name business of Crimson in that Cal Royalty has no separate substantial business except with Crimson.

13.     Cal Royatly was formed for the single purpose of attempting to shield Crimson from liability on the subject Ohio lease, for the sole beneift of Crimson's

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

1   controlling owner Gary Buntman.

2       14.   No Cal Royalty assets ever existed except for those which were

3   purportedly conveyed by Crimson.

4       15.   Cal Royalty's financial accounting including assets, income and

5   liability are recorded and reported in the consolidated financial statements of

6   Crimson. Any intra corporate transaction between Crimson and Cal Royalty was

7   identical to a transaction that would occur if Cal Royalty was a department,

8   division and/or fictitious business name of Crimson, as they were not at arm's

9   length including, agreements between Cal Royalty and Crimson which are more

10  favorable to Crimson.

11      16.   Any decision making for Cal Royalty is carried out by and through the

12  representatives of Crimson.

13      17.   Cal Royalty is so integrated with Crimson through the comingling of

14  funds, business activities, and supervision is to such an extent they are or should be

15  considered as one true enterprise.

16      18.   Cal Royalty was used to place Crimson's liabilities in Cal Royalty,

17  while Crimson maintains all the assets, as a device to shiled Crimson from creditor

18  claims.

19      19.   That at all times herein mentioned, all business dealings by GSI

20  regarding the Ohio Oil Lease were done between Crimson and GSI and all

21  payments under the Ohio Oil Lease by GSI were made to Crimson.

22      20.   Crimson never provided any oral or written notice to GSI that any

23  right or ownership under the Ohio Oil Lease was assigned and/or transferred in any

24  manner to GSI prior to the institution of the present legal action. The conduct by

25  Crimson was a perpetration of a fraud to induce GSI to continue to perform under

26  the terms of the lease as Crimson performed as Lessor and in fact still held all

27  right, title and interest in the Ohio Oil Lease and based thereon, induced GSI to

28  make payments under the lease to Crimson.

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

21.    That current adherence by Crimson to the fiction or separate existence of Cal Royalty as an entity separate and distinct from Crimson as opposed to the true nature of its business relationship as a department, division and and/or fictitious name business of Crimson would sanction fraud or promote injustice on Plaintiff.

22.    Crimson should not be allowed to escape any potential liability or acts as alleged in this complaint by asserting that these acts were that of a separate legal entity named Cal Royalty, when in fact they were acts of Crimson.

23.    It would be unfair and unjust for Crimson to escape liability under the Ohio Oil Lease due to the fact Cal Royalty was set up in order to insulate Crimson from any future liability regarding management of the Ohio Oil Lease.

24.    Crimson's management and operation of Cal Royalty was designed and has created a business which is devoid of indiviudal assets in an unfair attempt to insulate Crimson from any further liability to Plaintiff, or other entities or agencies that Crimson has liability to arising out of oil and gas operations on the subject premises.

25.    At all relevant times discussed herein, Crimson was the Lessor of certain property that was subject to a mineral rights lease for which Plaintiff was the Lessee.

26.    Crimson collected all royalty payments due under the terms of the lease from Plaintiff.

27.    Crimson managed and supervised all activity on the property, including clean up, access, ingress and egress, and managed the control of access to water rights necessary for oil operations on the subject premises.

28.    As described herein more specifically, this matter has been brought for the lack of action taken by the Lessor of property in response to a third party's (Kern Water Bank Authority "KWBA") act of interference with Plaintiff's surface rights to the property as afforded under the Ohio Lease terms, and KWBA ultimate

ejectment of Plaintiff from the property at issue.

29.     Before ejectment, Plaintiff made a demand to Crimson as Lessor of the property to cease the interference by KWBA  with Plaintiff's mineral rights.

30.     At the time of receipt of the demand, and at all times thereafter until the various motions to dismiss filed in the instant action, Crimson maintained its position that it was the owner of the property subject to the mineral lease entered into between Plaintiff and Crimson's predecessor in interest.

31.     Crimson communicated with Plaintiff through written corresponce that identified Crimson as the corresponding party.

32.     Crimson uses the same attorney as Cal Royalty, and has no separate client files or business, and Crimson pays all attorneys fees that are allegedly incurred by Cal Royalty.

33.     Crimson by itself and with no reference to Cal Royalty, provided assistance to Plaintiff in its defense of the KWBA interferance.

34.     Crimson, not Cal Royalty,  provided all evidence of chain of title to support and evidence Plaintiff's rights as Lessee of the property.

35.     Crimson's land manager, Terry Kenny assisted Plaintiff by providing a chain of title and was authorized by Crimson to serve as a witness at the Kern County KWBA on Plaintiff's behalf.

36.     At the KWBA Kern County trial Ms. Kenney repeatedly referred to Crimson as the "mineral rights owner", "Lessor" or "Landlord" for the "Crimson/Grayson Lease".

37.     Cal Royalty is nothing more than a mere shell instrumentality as admitted by Crimson's representative at the KWBA Kern County trial.

38.     At the KWBA/Grayson trial, Ms. Kenny testified "we manage all aspects of Cal Royalty."  Further, Ms. Kenny testified that: "Cal Royalty was created by the principals of Crimson Resource Management."

39.     In    fact,    Crimson's    legal    counsel    became    involved    in    the

THIRD AMENDED COMPLAINT

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

KWBA/Grayson matter to represent the rights of Crimson, and no defense was raised to give notice that Crimson was anything but the owner of the property.

40.　Ultimately, Crimson withdrew its support and did not defend Plaintiff's lease rights thus giving rise to the instant litigation.

41.　However, throughout the KWBA/Grayson litigation, Crimson's representative Gary Buntman made all decisions concerning Crimson's position with regard to the litigation, and was clearly the decision maker for Cal Royalty in protection of Crimson.

42.　This included but was not limited to the decision to refrain from intervening in the litigation, the refusal to assign the rights of Crimson in the Lease to Plaintiff, all decisions with respect to the title dispute, all decisions regarding permitting access to the property by KWBA and the decisions regarding Crimson's position with respect to the litigation.

43.　Cal Royalty has attempted to conceal the true identity of Crimson as the real party in interest to all matters pertaining to the Ohio Lease and Plaintiff, including asserting falsely that Cal Royalty is the Lessor of the Ohio Lease, when in truth Cal Royalty has no employees or agents separate from Crimson, who has any involvment with the Ohio lease, and all of the agents of Crimson are instructed that they work for Crimson, not Cal Royalty, as to all matters pertaining to the Ohio Lease, all each is paid by Crimson, not Cal Royalty, for their work and services.

44.　Crimson contols this litigation through its majority shareholder, Gary Buntman. Crimson and Cal Royalty have been represented by the same legal counsel during this litigation.  Defendants and Cal Royaltyy have sought court protective orders to secret the identity of the members of Cal Royalty and only Gary Buntman has executed verifications for discovery and/or declarations on behalf of Crimson and Cal Royalty in this litigation.

45.　Therefore, at all times mentioned herein, the purported  separateness

of Crimson and Cal Royalty should be disregarded.

## GENERAL ALLEGATIONS

46.   Commencing in the early 1900's KCLC acquired the fee simple interest of lands in Kern County, that included, *inter alia*, Sections 13 and 14, Township 30, Range 25, Kern County, California.

## THE OHIO LEASE AND SUBSEQUENT LESSEES

47.   On August 7, 1936, KCLC entered into an Oil and Gas lease for the S1/2 and the S1/2 of the N1/2 of Section 13, and the S1/2 of the NE1/4 of Section 14 to Marathon Oil Company, fna The Ohio Oil Company.  (A true and correct copy of the Ohio Lease is attached hereto and incorporated herein by reference as **Exhibit "1"**).   The combined total acreage of the Ohio lease, as it pertains to sections 13 and 14, is approximately two hundred and fifty (250) acres.

48.   On September 21, 1984, Marathon Oil Company assigned to GSI "all of its right, title and interest" in and to the Ohio Lease, together with all wells therein and thereon, and all items of personal property relating thereto.  (Said Assignment is attached as **Exhibit "2"** hereto).  All rights and obligations of the Ohio Lease were assigned to GSI.

49.   Immediately after acquisition of the assignment from Marathon, GSI occupied the surface of the assigned Ohio lease as it pertained to sections 13 and 14, including but not limited to occupying multiple buildings and commenced use of a water well and its production of water, all of which were transferred with the lease. GSI utilized the buildings and referenced water well for permissible usages as expressly allowed pursuant to the terms of the Ohio lease.

50.   The GSI water well and Ohio Lease buildings are located on approximately six acres in section 13, inside of a subsection of the Ohio lease that measures twenty-three (23) acres in size.  The legal description of those twenty-three (23) acres is "the South 1000 feet of the West 1000 feet of the SW1/4 of the NW1/4 of Section 13, Township 30 South, Range 25 east, Mount Diablo Meridian,

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

according to the Official Plat thereof, containing an area of 23 acres, more or less." (hereinafter "the 23 Acre Parcel").

51.   GSI has at all times, since the assignment from Marathon, produced oil from zones underneath the entire Ohio lease, including but not limited to production from zones directly underneath the 23 Acre Parcel.  The oil wells GSI operates are located immediately adjacent to the border of the 23 Acre parcel. The hydrocarbons are extracted from zones that underlie the 23 Acre Parcel.  All headquarters of GSI's Ohio Lease operations were located on the 23 Acre Parcel.

52.   GSI has, at all times, used the buildings located on the 23 Acre Parcel, to operate its business of operating the Ohio Lease, including but not limited to, occupying the buildings for offices, shops, and storage, as expressly allowed by the Ohio Lease and as expressly allowed by Crimson.  Crimson has expressly confirmed that, so long as GSI does not commit any crimes, GSI has no restrictions as to GSI's use of the buildings and surface of the 23 Acre Parcel.[2]

### THE SUBSEQUENT LESSORS OF THE OHIO LEASE

53.   In the 1970s, Tenneco, Inc. purchased KCLC and then changed the name of KCLC to Tenneco West, Inc. ("TWI").

54.   In 1984 TWI, formerly known as KCLC, was the lessor of the Ohio Lease.

55.   Effective as of June 30, 1988, TWI assigned their fee simple interest ownership in the minerals underlying the Ohio Lease, and all surface rights related to the Ohio Lease, to Tenneco Oil, Company ("TOC").  That assignment is attached hereto and incorporated by reference as **Exhibit "3"**, and is herein referenced, as "the 1988 TWI-TOC Surface and Mineral Fee Assignment."  All obligations and responsibilities to perform the duties of the Ohio Lease were expressly assumed by TOC as part of the Exhibit "3" assignment and conveyance.

56.   Page 14 of 22 of the 1988 TWI-TOC Surface and Mineral Fee

[2] See footnote 2.

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

1  Assignment, specifically referenced the subject Section 13 and 14. (See Exhibit "3",

2  Exhibit "A").

3      57.   The rights assigned and conveyed to TOC were described as "[A]ll fee

4  interest…all oil and gas mineral interest, all surface rights...appertaining to the

5  subject Interest or Subject Properties". (See Exhibit "3", pages 2, 3).  No severance

6  of any surface estate occurred by this assignment as to the 23 Acre Parcel, or any of

7  the other lands impacted by the Ohio lease.

8      58.   Simultaneous   with   the   1988   TWI-TOC   Surface   and   Mineral

9  Assignment, TOC executed an identical assignment, specifically including Sections

10  13 and 14, to TOC-Pacific Coast, Inc.  That assignment included the 23 Acre Parcel.

11      59.   TCO transferred to TOC-Pacific Coast, Inc. all minerals with no

12  restrictions.  The assignment and Conveyance to TOC-Pacific Coast, Inc. is attached

13  hereto as **Exhibit "4"**.

14      60.   As part of the Exhibit "4" assignment and conveyance, TOC-Pacific

15  Coast, Inc. expressly assumed all obligations and responsibilities to perform the

16  duties of the Ohio Lease.

17      61.   On December 15, 1988, Atlantic Richfield Company ("ARCO")

18  merged with TOC-Pacific Coast, Inc. and, pursuant to the terms of that merger,

19  acquired multiple rights, including but not limited to, the minerals and fee surface

20  rights appertaining to sections 13 and 14, including the 23 Acre Parcel, and

21  expressly assumed all obligations under the Ohio Lease.

22      62.   On January 1, 1995, ARCO conveyed and assigned to Crimson

23  Resource Management, Corp., all oil, gas, and mineral fee estates, and associated

24  surface rights, without exception as it pertains to the mineral rights at issue, that

25  pertain to Sections 13 and 14, including the 23 Arce Parcel, and assigned the Ohio

26  Lease to Crimson, who fully assumed it.  At Section 2.4 of the conveyance, Crimson

27  agreed it would assume and agreed to "perform and discharge all obligations"

28  related to the Ohio Lease.  (See Page 12, top right corner.  That Assignment is

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

attached hereto as **Exhibit "5"**, and identifies the Ohio Lease and is incorporated herein by reference.

63.   On January 1, 1995, Crimson purported to convey to Cal Royalty, the Ohio Lease and a portion of the minerals underlying the GSI production zones, but this assignment was a sham in that Cal Royalty is, as alleged herein, the alter ego of Crimson, and therefore Crimson still maintains full control over all minerals, and lease obligations.

64.   Crimson at all times was and remains the Lessor obligated to fulfill the covenants of the Ohio Lease.

65.   Crimson operates a producing well on the 23 Acre Parcel, known as well 324-13.  The Crimson well produces hydrocarbons from the fee mineral estate that Crimson purchased from ARCO, and Crimson maintain related tanks and equipment on the 23 Acre Parcel related to well 324-13.

66.   Crimson and GSI share the entire surface of the area of the 23 Acre Parcel based on Crimson's mineral ownership and production, and based on the Ohio Lease, which provides that both the Lessor and Lessee may use the surface and buildings, so long as neither interferes with the other's operations.

67.   Crimson has at all times managed and supervised the property under the Ohio lease terms with respect to Plaintiff, GSI.

68.   The Ohio Lease provides at Paragraph 2: Term - "The term of this lease shall be for twenty (20) years from the date hereof, and so long thereafter as oil, gas or other hydrocarbon substances are produced from the demised premises in quantities deemed paying quantities by the Lessee, unless and except to the extent that this agreement and lease shall be sooner terminated in whole or in part or the rights of the Lessee hereunder are sooner forfeited or surrendered in whole or in part with respect to all or any part of parts of said demised premises."  (See Exhibit # 1).

69.   The Ohio Lease provides at Paragraph 3: Possession – "The possession by the Lessee of said lands during said term shall be **sole and exclusive**, except that

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

the Lessor hereby reserves and shall have the exclusive use, control and possession of the demised premises for all purposes **not inconsistent** with the rights hereby granted to the Lessee, together with the full and free right to use or to lease for agricultural or grazing purposes, or any other purpose which shall not unnecessarily interfere with the operations of said premises."  (See Exhibit # 1, emphasis added).

70.     Paragraph 20 of the Ohio Lease states in part that "Lessee may develop water on said demised premises…for use on the demised premises in the operations herein provided for, and Lessor reserves to itself the right to use any unused portion of said water…but such water shall be taken at such point or points as not unnecessarily to interfere with the Lessee."  (See Exhibit # 1).

71.     The Ohio Lease is in full force and effect today, and has been at all times relevant to this lawsuit.

72.     GSI's right to explore, drill, operate, and have exclusive access to the surface of the 23 Acre Parcel is subject only to **non-interfering use** by Crimson, and its predecessors interest.

73.     GSI's right to occupy the entire surface of the portions of Sections 13 and 14 included within the Ohio Lease, including the 23 Acre Parcel, is part of the rights and duties that Crimson agreed to protect as GSI's lessor.  Defendants agreed to this obligation by accepting the conveyance of the mineral and surface rights, and by accepting the assignment as Lessor of the Ohio Lease from ARCO.

74.     As testified to by Crimson land manager, Teresa Kenney, GSI has unlimited access to the minerals on the property that GSI leases and produces from, as to all area of the described lands in the Ohio Lease, including but not limited to the 23 Acre Parcel.[3]

75.     GSI maintains a water well and a pressure tank on the 23 Acre Parcel

---

[3] August 19, 2013, Teresa Sue Kenney testimony in *KWBA vs GSI*, Kern County SC s-1500-cv-275141.

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

which are essential to GSI's oil operations with regard to the Ohio Lease.

76.    In or about 2012, the Kern Water Bank Authority (KWBA) began to interefere with GSI's use and occupany of the 23 Acre Parcel.  Its conduct was premised on a claim of paramount title, which Crimson expressly consented to.

77.    As to the 23 Acre Parcel, KWBA demanded that GSI vacate the 23 Acre Parcel, remove all buildings, cease all oil operations that pertained to the Ohio Lease operations, and quitclaim all rights to use the surface of the 23 Acre Parcel to KWBA.

78.    GSI disputed this demand and maintained that it had rights under the Ohio Lease that expressly allowed for full access to the surface of the 23 Acre Parcel, full rights to occupy all buildings located thereon, and full rights to access and continue using the GSI Water Well located on the 23 Acre Parcel.

79.    In 2012, KWBA filed an action impacting GSI's rights of quiet enjoyment and right to possession of the 23 Acre Parcel, in an action entitled *KWBA vs GSI* and Does 1 -100, Case No. S-1500-CV-275141 which alleged *inter alia* that KWBA  "[B]y deed recorded in Kern County on August 9, 1996 (Document # 0196101606) the Agency transferred lands, including the Real Property to the Plaintiff"… and that KWBA received "the Mineral Lease from Kern County Land Company ("KCLC") to Ohio Oil Company recorded in Kern County on August 19, 1936 in book 652 at page 485…."

80.    KWBA claimed to own the surface rights to the 23 Acre Parcel through a chain of title tracing back through the State of California.

81.    In accordance with the Ohio Lease, GSI notified Crimson, in writing, of this judicial proceeding which purported to affect GSI's right to occupy the subject 23 Acre Parcel.

82.    GSI communicated on multiple occasions to Crimson that Defendants were requested to participate in defending against these false claims of ownership and specfically, the claim of the right to enter the 23 Acre Parcel for any purpose

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

1  based, on KWBA's claim of paramount title to the 23 Acre Parcel.

2      83.   GSI demanded that Defendants protect GSI's right of quiet enjoyment
3  and possession of the subject 23 Acre Parcel, including the right of GSI to maintain
4  access and use of the buildings and the GSI Water Well.

5      84.   Crimson initially agreed to assist GSI by providing records establishing
6  their chain of title to the Property and by directing their agent Teresa Kenney to
7  appear and testify on August 19, 2013, during the KWBA trial.   Ms. Kenney
8  partially supported GSI's claims that all rights to continue occupying the 23 Acre
9  Parcel were in full force and that no violations of the Ohio Lease had occurred, but
10  failed to fullfill other obligations required by the Ohio Lease, as further set forth
11  below.  At trial Ms. Kenney testified that she was the representative of both Crimson
12  and Cal Roylaty as the two were one and the same.

13      85.   Crimson's agent testified, in part, that GSI had the right to full
14  possession of the surface rights to the 23 Acre Parcel, subject only to Crimson's use
15  of the same surface rights as necessary for Crimson's oil operations.

16      86.   Crimson's agent testifed that GSI had rights to the 23 Acre Parcel,
17  subject only to the restrictions in the Ohio Lease for future development, whether or
18  not mineral operations were currently proceeding.

19      87.   Crimson's agent acknowledged that the Ohio Lease reserved to GSI all
20  rights arising out of the Ohio Lease.  Those rights include surface access, as an oil
21  operator, to every portion of the 23 Acre Parcel, as well as the balance of the
22  approximately 250 acres of sections 13 and 14, as necessary and reasonable to
23  produce minerals under the terms of the Ohio Lease, including future rights to
24  explore, drill, and develop the leased minerals on the 23 Acre Parcel.

25      88.   Ms. Kenney specifically acknowledged that through Crimson's
26  acquisition of the mineral rights on the Subject Property that "we both succeed to the
27  position of Lessor and Lessee.  Crimson being Lessor, Mr. Grayson being Lessee."

28      89.   Ms. Kenney also acknowledged that Crimson received royalty

1    payments from GSI under the terms of the Ohio Lease.

2        90.   Ms. Kenney testifed falsely that Crimson had not granted access to

3    KWBA to any portion of the subject premises, including but not limited to the 23

4    Acre Parcel.  In fact, as to the area outside of the 23 Acre Parcel that falls within the

5    Ohio Lease, Crimson acquiesed to KWBA entering the areas outside the 23 Acre

6    Parcel, prior to the trial's commencement.

7        91.   On February 10, 2014, KWBA obtained a Judgment that impacted

8    GSI's right to use and possess the 23 Acre Parcel.

9        92.   The Judgment includes, *inter alia*, the immediate right for KWBA to

10   "have and recover the possession of the real property situated in Kern County

11   California and described as 23 acres, i.e. the South 1000 feet of the West 1000 feet

12   of the SW/4, NW/4, Sec. 13, T30S, R25E, MDB&M, sometimes also described as

13   APN 160-070-23 and sometimes also described as 4004 South Enos Lane,

14   Bakersfield, California from Grayson Service, Inc."

15       93.   The Judgment further provides that a writ of possession may be issued

16   by the Sheriff of Kern County, California evicting GSI from the subject property.

17       94.   The Judgement required GSI to remove its buildings.

18       95.   The Judgement required GSI to pay damages, including attorneys' fees

19   to KWBA.

20       96.   The subject Judgment interferes with GSI's rights of quiet possession

21   and enjoyment under the Ohio Lease.

22       97.   GSI contacted Crimson and advised them of the judgment and the fact

23   that GSI filed a motion for new trial, which was pending at that time.   GSI

24   requested, pursuant to the subject Ohio Lease obligations and implied obligations

25   applicable by California law, that Crimson cooperate, intervene, defend, and

26   otherwise assist GSI to avoid GSI's removal from the Subject Property.

27       98.   GSI requested of Crimson to alternatively assign their mineral rights to

28   the 23 Acre Parcel to GSI, so that GSI could "stand in Crimson shoes" and apply

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

those rights to prevent the subject judgment from becoming final, with the specific purpose to challenge the judgment on behalf of Crimson, who holds the dominant estate to the property, based upon its Fee simple mineral and surface ownership.

99.  GSI proposed that, at no expense to Crimson, Crimson assign the mineral interests of a portion of the subsurface, with only a modest reduction in royalty payment, so that GSI could pursue claims arising out of its leasehold estate combined with the assignment of the mineral interests against KWBA.

100.  Crimson's obligation to cooperate, defend, intervene, and support its lessee to maintain the lessee's right of occupancy of the Lessee's headquarters, buildings, and other use of the 23 Acre Parcel was required by the Ohio Lease agreement.

101.  Implicit within Crimson's duty to defend is the implied covenant of good faith and fair dealing, which require that Crimson not impair GSI's rights, nor withhold unreasonably those assignments and/or cooperation as requested to succeed in the defense of the adverse title claim.

102.  KWBA has also entered the balance of the approximate 250 acres of the Ohio lease, outside of the 23 Acres, and installed and is operating water extraction wells (the "KWBA water wells").

103.  KWBA does not have a judgment or any legal claim to access any other land, *other than the 23 Acre Parcel.*

104.  No other entity is allowed, under the terms of the Ohio Lease, to gain access to and operate a water well on the subject Ohio Lease, and no judgment gives KWBA that right.

105.  Crimson acquiesed to KWBA enterring onto the subject Ohio Lease, outside of the 23 Acre Parcel, not based on any claim by KWBA that it had a judgment, and in this acquiescence Crimson breached the Ohio Lease.

106.  Crimson's conduct violated paragraph 20 of the Ohio Lease which provides GSI the rights to the water it developed on the property. (See Exhibit # 1).

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

107.  The KWBA Water Wells, which are loacted outside the 23 Acre Parcel, are causing subsidence and other related damage to GSI's oil wells and their formations.

108.  Crimson refuses to take any steps to defend the claims of KWBA; Crimson refused to assign their rights or intervene; and Crimson has engaged in other conduct in violation of their duties and obligations under the Ohio Lease and as required by law.

109.  As the result of Crimson's failure to act, Plaintiff has been forced to vacate the Subject Property.

110.  Plaintiff further has been forced into further defense of KWBA's claims that GSI must pay sums to remediate the property, including the removal of all buildings and other structures that Plaintiff previously occupied or utilized in its operations upon the Subject Property.

111.  Plaintiff has incurred attorneys fees caused by Crimson's breach of its obligations under the Ohio Lease, which fees are expressly recoverable under section 31 of the Ohio Lease.  (See Exhibit # 1).

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
## AGAINST CRIMSON AND DOES 1-10

112.  GSI incorporates by reference each of the above-referenced paragraphs herein as if set forth in their entirety.

113.  The above-referenced Ohio Lease contains an implied covenant of quiet possession wherein the tenant shall not be evicted, or disturbed, by the lessor or by persons deriving title from him, or by virtue of a title paramount to the lessors.

114. Civil Code section 1927 requires that Crimson Resource Management Corp., as lessor secure to GSI the quiet possession and enjoyment against all persons that would otherwise interfere with GSI's surface right possession during the life of the Ohio Lease, and who claim paramount title or access and possession from the

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

lessor or lessor's predecessors.

115. The Ohio Lease contains an implied covenant of good faith and fair dealing that obligates the lessor to cooperate in good faith to protect GSI's possessory interest in the surface rights of the 23-Acre Parcel.

116. The Ohio Lease has implied covenants prohibited the lessor and its successors from degrading the surface rights of the lessee by entering into agreements that create a color of title to the surface in third parties.  Although the lessee of the Ohio Lease, accepted title, as it existed in 1936, and assumed the risk of title defects *as of that date*, the lessee did not agree to the lessor creating title defects by affirmative conduct in the future.   The Ohio Lease required that Crimson Resource Management Corp. protect the condition of the lessor's title as it existed in 1936 and not lessen and degrade and/or cloud the rights of the surface possession of GSI.

117. GSI has complied with all requirements under the Ohio Lease. Specifically, GSI and its predecessors have drilled and operated numerous oil wells on the Ohio Lease premises, extracting hydrocarbons from formations located underneath the subject 23 Acre Parcel and the surrounding acreage.

118. GSI and its predecessors have paid royalties since the 1930s when the first of the Ohio Oil Company wells were completed, and have paid royalties and maintained continuous production at all times, all in accordance with the Ohio Lease terms.

119. Crimson has accepted and deposited the royalty payments made by GSI, and Crimson's predecessors accepted and deposited the royalty payments made by GSI before Crimson owned the minerals.

120. GSI has erected gates and fences to keep third parties off the premises.

121. In 2014, GSI was evicted by KWBA from the 23 Acre Parcel, forced to remove its offices and biuldings, and compelled to vacate the premises and pay damages to KWBA, who claimed, based on both paramount title and express

1   consent from Crimson, the right to eject and compel GSI to vacate the premises and

2   to remove GSI's buildings.

3        122. Crimson Resource Management Corp. has breached the terms of the

4   Ohio Lease and its implied covenants, including but not limited to, as follows:

5             a.     Their predecessors created the claim of paramount title in

6   KWBA.  The Ohio Lease expressly obligates its Lessor to not created title defects

7   after the lease date became effective.   Crimson expressly assumed the liabilty for

8   this conduct in Crimson's acknowledgements and conditions contained in the

9   exhibits attached hereto.

10            b.     Crimson independantly violated the convenant by its conduct in

11  2013 which has continued to the present time by supporting and assisting KWBA's

12  claim to paramount title by expressly consenting to KWBA evicting GSI and forcing

13  GSI to remove buildings, including buildings that Crimson had equal rights to based

14  upon the conveying instruments which created their ownership in the fee surface and

15  minerals.

16            c.     Crimson expressly refused to intervene in the KWBA eviction

17  action.

18            d.     Crimson expressly refused to assign rights that would not have

19  cost any significant monies to Crimson, but would have provided greater rights to

20  GSI to defend against the eviction action.

21            e.     Crimson refused to defend the KWBA eviction action even

22  though it was expressly tendered to them.

23            f.     Crimson did not particpate as needed in the eviction trial, but

24  instead appeared through Teresa Kenney with only limited support to GSI, which

25  was insufficient to accomplish the covenant of quiet possession, and which

26  participation made the circumstances worse for GSI.

27            g.     Crimson has expressly communicated to KWBA their ratification

28  of the claim of paramount title; Crimson conspired with KWBA to remove GSI by

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

providing express permission to KWBA to enter other sections of the Ohio Lease, even though the writ of possession and eviction judgment only pertains to the 23 Acre Parcel.

123.  Crimson's breaches of the contract with GSI continue.  Its continuing breaches, include but are not limited to, their joint refusal to engage in any manner, or cooperate with assigning all rights needed for GSI to engage and assert Crimson's superior rights, and GSI's derivative rights to possess the 23 Acre Parcel, and to remove KWBA's water wells, or assess damages against KWBA for installing and removing water from those wells, causing damages to GSI by impacting its existing oil wells and their formations.

124.  Crimson has expressly communicated that it will not confront KWBA but will support their efforts of eviction as supporting KWBA decreases the future risk that KWBA will force Crimson to clean up and environmentally restore the surface of the 23 Acre Parcel, and will enhance the probability that KWBA will force GSI to clean up the subject 23 Acre Parcel, including areas of alleged contamination that Crimson, and their predecessors are liable for.

125.  As a direct and proximate result of Crimson's action and failure to act as alleged above, and as a proximate cause of the breach of contract as alleged, GSI has suffered damage in an amount to be determined at trial.

126.  These damages include, but are not limited to, the loss of value of the surface access and loss of value of the related equipment and buildings on the subject 23 Acre Parcel that had to be removed and/or demolished, the expense of having to move buildings and equipment off the 23 Acre Parcel, the loss of opportunity to re-open abandoned wells and complete those wells on the 23 Acre Parcel, damages caused to GSI's ability to operate its lease rights from the historical buildings that GSI occupied for over thirty (30) years, interference with GSI's access to a water well that is necessary to its oil operations, and costs of defense of the underlying case, all in amounts in according to proof, but in amounts in excess of

$500,000.

**SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT FOR ALLOWING KWBA TO INSTALL WATER WELLS OUTSIDE OF THE 23 ACRE PARCEL**

127.  GSI incorporates by reference each of the above-referenced paragraphs herein as if set forth in their entirety.

128.  The Ohio Lease expressly provides in paragraph 3, that GSI shall have exclusive possession of the demised premises, which includes but is not limited to those portions of Section 13 and 14  that are outside of the 23 Acre Parcel (hereinafter "the Non 23 Acre Parcel Sections of the Lease.").  Other than Crimson, GSI has all other exclusive use of the demised premises outside of the 23 Acre Parcel.

129.  KWBA does not claim any judgment provides them access or use of the Non 23 Acre Parcel Sections of the Ohio Lease.

130.  Unrelated to the KWBA v. GSI, the Kern County eviction litigation, within the last four years, and continuing to the present, Crimson, breached the Ohio Lease by expressly allowing and/or acquiesing to KWBA entering and drilling, and/or using prior drilled water wells not located on the 23 Acre Parcel.  Such right is not contained within the eviction judgment and is in violation of the express rights granted to GSI.  KWBA's extraction of water is a continuing breach, that is ongoing to this day.

131. Section 20 of the lease only allows the Lessor to use the "unused portion of water" that is developed by Lessee, and then only at the "expense and risks" of the Lessor, and then only as to not uneccessarily interfere with the Lessee's operations.  (See Exhibit # 1).

132.  Crimson breached the Ohio Lease by expressly allowing KWBA to enter onto the Ohio Lease, despite KWBA not having any rights to install or produce water from the Non 23 Acre Parcel Sections of the Ohio Lease, or KWBA not

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

having any judgment otherwise proclaiming it to have those rights.  KWBA's Kern County Judgment is only applicable to the 23 Acre Parcel, not the balance of the lease, and the Eviction Judgment does not cover the subject KWBA illegal water wells.

133.  Crimson engaged in this conduct to befriend the principals of KWBA, so as to cause KWBA to pursue claims against GSI for environmental clean up and so that KWBA will not pursue Crimson.

134.  These actions of Crimson has damaged GSI and continue to damage GSI as the illegal extraction of water by KWBA is causing damage to GSI's formations, production of hydrocarbons, and exposing GSI to subsidance, all in amounts according to proof.

///
///
///

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

**PRAYER FOR RELIEF**

**WHEREFORE, GSI** prays as follows:


**On its First Cause of Action:**

1.     For a judgment for breach of contract against Defendants and each of them;

2.     For damages according to proof;

**On its Second Cause of Action:**

3.     For a judgment for breach of contract against Defendants and each of them;

4.     For damages according to proof;

**As to both Causes of Action:**

5.     For all other relief, pre-judgment interest, costs of suit, attorney's fees allowed by contract or law, and all other Orders as the Court may deem appropriate at the time of the final entry of judgment in this matter.


Dated:  November 11, 2015     **MAHAFFEY LAW GROUP**



By: */s/Douglas L. Mahaffey*
　　DOUGLAS L. MAHAFFEY
　　Attorneys for Plaintiff Grayson Services, Inc.

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

1

## <u>DEMAND FOR TRIAL BY JURY</u>

2        Pursuant to Fed. R. Civ. P. 38(b), GSI hereby demands a jury trial on all

3   issues so triable raised in this action.

4

5   Dated:  November 11, 2015      **MAHAFFEY LAW GROUP**

6

7

8

9        By: */s/Douglas L. Mahaffey*

10       DOUGLAS L. MAHAFFEY
     Attorneys for Plaintiff Grayson Services, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mahaffey Law Group, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660

# PROOF OF SERVICE

*Grayson Services, Inc. v. Crimson Resource Management Corp, et al.*
**USDC EASTERN DISTRICT, CASE No. 1:14-cv-01125—SAB**

I am a citizen of the United States and employed in City of Newport Beach, County of Orange, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is **20162 Southwest Birch, St. Suite 300, Newport Beach, California 92660**.

On **November 11, 2015**, I served the document(s) named below on the parties in this action as follows:

DOCUMENT(S) SERVED:          **THIRD AMENDED COMPLAINT**

**[X] BY ELECTRONIC MAIL**: As follows: I caused each such document to be delivered by electronic mail to the addressee(s) below.

On the interested parties in this action, respectively, as follows:

ERICKA F. HOUCK ENGLERT
LEWIS BESS, WILLIAMS & WEESE P.C.
1801 California, Suite 3400
Denver, Colorado 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
eenglert@lewisbess.com
**Attorneys for Defendants, CRIMSON RESOURCE MANAGEMENT CORP. and CAL ROYALTY, LLC**

**[X] (FEDERAL):**  I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on **November 11, 2015,** at Newport Beach, California.

*/s/ Mary Halverson*
**Mary Halverson**