*EXHIBIT "1"*



12905

MEMORANDUM OF AGREEMENT
AND LEASE

KERN COUNTY LAND COMPANY,
Lessor,

and

THE OHIO OIL COMPANY,
Lessee.

Dated: _____, 1936

McCUTCHEN, OLNEY, MANNON & GREENE
Counselors at Law
Balfour Building

## OIL AND GAS LEASE – THE OHIO OIL COMPANY
### "B" LEASE

THIS AGREEMENT AND LEASE, made and entered into this 7th day of August, 1936, by and between KERN COUNTY LAND COMPANY, a corporation organized and existing under and by virtue of the laws of the State of California, as first party, hereinafter called the Lessor, and THE OHIO OIL COMPANY, a corporation organized and existing under and by virtue of the laws of the State of Ohio, as second party, hereinafter called the Lessee,

### W I T N E S S E T H :

### 1.   DEMISE

THAT in consideration of the performance by the Lessee of all of the covenants and provisions herein contained on its part to be performed, and for the term and subject to the covenants and provisions hereinafter set forth, to each and all of which the parties hereto hereby mutually agree, the Lessor hereby leases unto the Lessee and the Lessee hereby lets from the Lessor, the lands hereinafter described, with the sole and exclusive right (except as hereinafter provided) to the Lessee to drill for, produce, extract and take oil, gas and other hydrocarbon substances from, and store the same upon said lands, and the right to enter upon said lands at all times during said term for said purposes, and from time to time during said term to construct, use, maintain, erect, repair and replace thereon all buildings, tanks, machinery, pipe lines, telephone and telegraph lines and other structures which the Lessee may desire in carrying on its business and mining operations upon said lands, with rights of way for passage over and ingress and egress to and from said lands.  The said lands are situate in the County of Kern, State of California, and are more particularly described as follows, to wit:

The South half (S½) and the South half of the North half (S½ of N½) of Section 13; the Southeast quarter (SE¼) and the South half of the Northeast quarter (S½ of NE¼) of Section 14, Township 30 South, Range 25 East, Mount Diablo Base and Meridian.

All of Section 18; and the Northeast quarter (NE¼) of Section 19, Township 30 South, Range 26 East, Mount Diablo Base and Meridian.

Containing in the aggregate 1,535.6 acres, more or less.

1



## MEMORANDUM OF AGREEMENT AND LEASE

THIS MEMORANDUM OF AGREEMENT AND LEASE, made and entered into this ____ day of _____, 1936, by and between KERN COUNTY LAND COMPANY, a corporation organized and existing under and by virtue of the laws of the State of California, as first party, and THE OHIO OIL COMPANY, a corporation organized and existing under and by virtue of the laws of the State of Ohio, as second party,

## W I T N E S S E T H :

That for the term and upon the covenants, terms and conditions set forth in that certain agreement and lease entitled "Oil and Gas Lease - The Ohio Oil Company 'B' Lease", dated _____, 1936, from the first party hereto to the second party hereto, the first party has leased, let and demised to the second party, and by these presents does lease, let and demise unto the second party, for oil development purposes, those certain lands situate in the County of Kern, State of California, and more particularly described as follows, to-wit:

The South Half (S½) and the South Half (S½) of the North Half (N½) of Section 13; the Southeast Quarter (SE¼) and the South Half (S½) of the Northeast Quarter (NE¼) of Section 14, Township 30 South, Range 25 East, M. D. B. & M.

All of Section 18; and the Northeast Quarter (NE¼) of Section 19, Township 30 South, Range 26 East, M. D. B. & M.

Containing in the aggregate 1,535.6 acres, more or less.

SUBJECT to all existing easements, servitudes and rights of way for canals, ditches, roads, telephone, telegraph and electric power lines, railroads, pipe lines and other purposes.

SUBJECT ALSO to the provisions of the agreement made between Henry Miller and others, and James B. Haggin and others, under date of July 28, 1888, and recorded in the office of the County Recorder of Kern County, California.

2.    TERM

The term of this lease shall be for twenty (20) years from the date hereof and so long thereafter as oil, gas or other hydrocarbon substances are produced from the demised premises in quantities deemed paying quantities by the Lessee, unless and except to the extent that this agreement and lease shall be sooner terminated in whole or in part or the rights of the Lessee hereunder are sooner forfeited or surrendered in whole or in part with respect to all or any part or parts of said demised premises.

3.    POSSESSION

The possession by the Lessee of said lands during said term shall be sole and exclusive except that the Lessor hereby reserves and shall have the exclusive use, control and possession of the demised premises for all purposes not inconsistent with the rights hereby granted to the Lessee, together with the full and free right to use or to lease for agricultural or grazing purposes, or any other purpose which shall not unnecessarily interfere with the operations of the Lessee upon the demised premises, all such portions of the demised premises as the Lessee does not actually employ in its operations on said premises. The Lessor shall have and hereby reserves to itself the right to construct and/or place and the exclusive right to permit others to construct and/or place upon, across, in, under and over the demised premises, any and all parts thereof, roads, levees, ditches, canals, waterways, water conduits, pipe lines, railways, telephone, telegraph and electric power lines, and any and all other structures or improvements which it may deem necessary, proper or advisable for the development or use of property in Kern County or elsewhere, and the Lessor further reserves any and all other rights pertaining to the use, enjoyment and disposition of the said demised premises or any part thereof not inconsistent with the rights hereby granted to the Lessee;  provided, however, that the exercise of any of the rights so reserved shall not unnecessarily interfere with the operations of the Lessee.  The Lessor shall have free use of all roads or ways constructed by the Lessee.

4.    DRILLING REQUIREMENTS AND RIGHTS

The Lessee shall during the term hereof drill wells upon

2.

the leased premises as follows:

    A.   **"First Well"**. The Lessee shall and hereby agrees to commence the drilling of a well (hereinafter referred to as the "first well") on the demised premises within sixty (60) days from the date hereof, and to prosecute such drilling of said well continuously and with reasonable diligence to completion.

    B.   **Subsequent drilling prior to discovery of oil or gas.** If oil, gas and/or other hydrocarbon substances shall not be discovered in quantities deemed paying quantities by the Lessee in said "first well", then within sixty (60) days after drilling and/or such testing as may reasonably be necessary has ceased upon said "first well", the Lessee shall, as a condition of the continuance of its rights under this lease, commence the drilling of a second well, and shall diligently and continuously prosecute the drilling of the same to completion; and as a condition of the continuance of its rights under this lease and so long as the Lessee shall claim any rights hereunder, the Lessee shall thereafter keep at least one string of tools continuously employed (with not more than sixty (60) days intervening between the cessation of drilling and/or of such testing as may reasonably be necessary on one well and the commencement of drilling on another) in drilling wells upon the said demised premises to completion, until oil, gas and/or other hydrocarbon substances in such quantities shall be discovered by the Lessee on the demised premises.

    C.   **Drilling after discovery of oil.** If oil and/or other hydrocarbon substances (other than natural gas only, as that term is hereinafter defined) are found in quantities deemed paying quantities by the Lessee in any well drilled upon the demised premises by the Lessee, the Lessee shall within sixty (60) days after such discovery commence to drill a second well upon said demised premises and thereafter commence to drill a third well on said demised premises, with an interval of not exceeding thirty (30) days between the commencement of the second well and the commencement of the third well, and shall thereafter, except as hereinafter expressly otherwise provided, keep at least two strings of tools in continuous operation in drilling wells upon said demised premises to completion until (a) an average of one well shall have been completed upon said demised premises for each ten (10) acres comprising the said premises if the average depth of the said wells is six thousand (6,000) feet or less; or (b) an average of one well shall have been completed upon said demised premises for each twenty (20) acres comprising the said demised premises if the average depth of said wells is over six thousand (6,000) feet. The Lessee may during the period of twenty (20) years from and after the date of this lease, but not thereafter, drill upon the lands from time to time remaining subject hereto for oil development as many wells as it may desire in addition to those which, by the terms of this lease, it is required to drill.

D. <u>DRILLING FOR NATURAL GAS.</u>   After the finding of natural gas in quantities deemed paying quantities by the Lessee in any well completed as a gas well upon the demised premises and until the finding of oil in quantities deemed paying quantities by the Lessee in any well drilled upon the demised premises, the Lessee, except as hereinafter expressly otherwise provided, shall keep at least one string of tools in continuous operation in drilling gas wells upon the demised premises to completion until at least an average of one well shall have been completed upon the said demised premises for each one hundred sixty (160) acres thereof, whereupon the said premises shall be deemed fully developed for gas, except for the drilling of offset wells, as hereinafter provided.   The foregoing drilling requirements are minimum only and the Lessee agrees that in the event of the discovery of a natural gas field before the drilling program for gas may be deemed complete, the Lessee must have drilled on the demised premises at least to the generally accepted well-spacing on the field, but in any event at least to an average of one (1) well to each one hundred sixty (160) acres.   If the Lessee shall discover oil in quantities deemed paying quantities by the Lessee in any well drilled upon the demised premises, then the foregoing drilling provisions of this paragraph shall no longer be applicable but the Lessee shall forthwith commence and maintain the drilling and development of the said premises and the whole thereof for oil, in accordance with the provisions of paragraph C of this subdivision, until the said premises be fully developed for oil.

E.   <u>FORFEITURE OF OIL RIGHTS BY CESSATION OF DRILLING.</u>
The finding of natural gas only shall not excuse the Lessee from continuing to explore the demised premises for oil, and in order for the Lessee to retain its rights to develop and operate the demised premises, or any part thereof, for the production of oil, after the discovery of natural gas, the Lessee must keep at least one string of tools in continuous operation drilling either oil or gas wells upon the demised premises until oil is discovered thereon in quantities deemed paying by the Lessee or the number of wells prescribed by Paragraph C of this subdivision shall have been completed upon the premises.   If the Lessee shall fail to keep said string of tools in continuous operation drilling wells on the premises to completion, with intervals of not exceeding sixty (60) days between the completion of one well and the commencement of the drilling of another well, then all rights of the Lessee hereunder to drill or develop the said premises or any part thereof for oil, shall ipso facto cease and terminate.   In spite of such forfeiture and termination of the Lessee's rights to drill and develop for oil, it may still retain its rights to drill and develop for natural gas by performance of the drilling and other obligations of this lease pertaining to gas.

4.

F.  OFFSET WELLS.  If oil, gas and/or other hydro-carbon substances shall be discovered in commercial quantities in a well situate on property outside the boundaries of the demised premises, and in case of an oil well, within three hundred (300) feet of any boundary line of the demised premises, and in case of a natural gas well, within thirteen hundred twenty (1320) feet of the said boundary line, the Lessee shall within sixty (60) days of such discovery commence drilling a well (hereinafter called an "offset" well) on the demised premises within the same (or a less) distance from the boundary line as such well to be offset shall be, and in the event of an oil well, within three hundred (300) feet of a projection into said demised premises of a straight line extended from the well to be offset through the nearest point on said boundary line, and in the case of a natural gas well, within thirteen hundred twenty (1320) feet of a projection into said demised premises of a straight line extended from the well to be offset through the nearest point on said boundary line, and shall diligently and continuously prosecute the drilling of such offset well for the purpose of discovering oil, gas and/or other hydrocarbon substances therein, and such offset well shall be drilled to a depth sufficient to penetrate all productive strata from which oil, gas and/or other hydrocarbon substances are being produced in commercial quantities from the well which is being offset; and the Lessee shall thereafter operate such "offset" well so long as oil, gas and/or other hydrocarbon substances are produced in paying quantities.  No well developed on property outside the boundaries of the demised premises shall be deemed to produce oil in commercial quantities if the average daily production thereof over a test period of thirty (30) days or over any other period of thirty (30) consecutive days is less than fifty (50) barrels of forty-two (42) gallons each.  In case of an oil well to be offset, the Lessee shall not be obligated to drill such offset well if at the time there shall be either in the process of drilling or actually producing an oil well upon the demised premises within three hundred (300) feet of the boundary line and within three hundred (300) feet of a projection into said demised premises of a straight line extended from the well which, according to the provisions of this paragraph would otherwise be required to be offset, through the nearest point on said boundary line, and if such well on the demised premises be drilled to a depth sufficient to penetrate all productive strata from which oil is being produced in commercial quantities from the said well on adjoining lands; and in case of a gas well to be offset, the Lessee shall not be obligated to drill an offset well therefor, as hereinabove provided, if at the time there shall be either in the process of drilling or actually producing a gas well upon the demised premises within thirteen hundred twenty (1320) feet of the boundary line and within thirteen hundred twenty (1320) feet of a projection into said demised premises of a straight line extended from the well which, according to the provisions of this paragraph would otherwise be required to be offset, through the nearest point on said boundary line, and if such well on the demised premises be drilled to a depth sufficient to penetrate all productive strata from which gas is being produced in commercial quantities from the said well on adjoining land.  Any "offset"

5.

well drilled pursuant to the provisions of this paragraph before the Lessee shall have completed the full number of wells which it is required to drill upon the demised premises pursuant to the provisions of paragraphs lettered C and D of this subdivision, shall be taken into account in determining whether said full number of wells has been drilled by the Lessee. But the Lessee shall nevertheless be bound to drill "offset" wells as provided in this paragraph whenever and as often as the conditions requiring the drilling thereof according to the provisions of this paragraph arise, notwithstanding that it shall have theretofore drilled the full number of wells it would otherwise have been required to drill under the provisions of this lease.

G.  NO DRILLING AFTER TWENTY YEARS.  Except as otherwise provided in paragraph lettered F of this subdivision, the Lessee shall not, after the expiration of twenty (20) years from and after the date of this lease, without the written consent of the Lessor first had and obtained, commence the drilling of any new well or wells for either oil or gas upon the demised premises, or deepen any existing oil well upon the demised premises to any sand or zone deeper than the deepest sand then penetrated by such well, or drill any oil well then in the course of being drilled to a deeper sand than the deepest sand theretofore penetrated by any existing well upon the demised premises.  The Lessee shall have the right to deepen any existing gas well and/or to drill any gas well then in the course of being drilled to any gas sand or gas zone.  Subject to the foregoing limitations, the Lessee shall have the right to continue to operate any well or wells theretofore drilled so long as oil, gas or other hydrocarbon substances are produced therefrom in paying quantities, and also shall have the right to continue work and complete any well then in the course of being drilled, or which has theretofore been drilled and which is then being repaired, cleaned out, redrilled and/or deepened, and to operate such well or wells if and so long as oil, gas or other hydrocarbon substances are produced therefrom in paying quantities; and, subject to the foregoing limitations, the Lessee shall have the right at any time and from time to time to repair, clean out, redrill and/or deepen any well or wells which, pursuant to the provisions of this paragraph the Lessee shall have the right to operate after the expiration of the said twenty (20) year period.

H.  ELECTION OF LESSEE TO CEASE DRILLING.

1.  Before discovery.  At any time after completion of the "first well" or, subsequently but before the discovery of oil, gas or other hydrocarbon substances in quantities deemed paying quantities by the Lessee in any well

6.

drilled upon the demised premises by the Lessee, the
Lessee may at its election cease further drilling or
the continuous operation of the number of strings of
tools hereinabove required, whereupon this lease shall
terminate in its entirety and the Lessee shall forfeit
and surrender all of its rights hereunder as to all of
the demised premises.

2.  <u>After discovery of oil</u>.  At any time after the
discovery of oil or other hydrocarbon substances (other
than natural gas only), the Lessee may at its election
cease further drilling or the continuous operation of the
number of strings of tools hereinabove required and, if
completed wells to the number indicated in paragraph C
of subdivision 4 hereof shall not then have been drilled,
this lease shall terminate and the Lessee shall forfeit
and surrender all of its rights hereunder as to all the
premises above described except ten (10) acres surrounding
each producing well (or well then being drilled) six thousand
(6,000) feet or less in depth, and except twenty (20) acres
surrounding each producing well (or well then being drilled)
more than six thousand (6,000) feet in depth, which shall
remain in the possession of the Lessee hereunder and be sub-
ject to this agreement and lease, but free of further drilling
obligations so long as drilling proceeds on the well situated
thereon or so long as oil is produced by the Lessee from the
well thereon; provided, however, that the Lessee shall not
after such forfeiture and surrender deepen any producing
well retained by it pursuant to the provisions of this para-
graph to any sand or zone deeper than the deepest sand then
penetrated by such well, nor, in the event that the Lessee
shall retain any producing well pursuant to the provisions
of this paragraph, shall it drill any well then in the course
of being drilled to a deeper sand than the deepest sand there-
tofore penetrated by a producing well so retained by it, but
subject to the foregoing limitations, the Lessee shall have
the right at any time and from time to time to repair, clean
out, redrill and/or deepen any well or wells retained by
it pursuant to the provisions of this paragraph.   Each such
ten (10) or twenty (20) acre tract, as the case may be, shall
be in the form of a square, or of a rectangle, the longer
sides of which shall not exceed twice the length of the
shorter sides, the well so far as practicable to be in the
middle of such square or rectangle.   The Lessee shall in
such case have the right to use as appurtenant to each such
ten (10) or twenty (20) acre tract, as the case may be, so
long as drilling proceeds on the well thereon or oil is pro-
duced by it from such well, such rights of way over the lands
originally subject to this lease as shall be necessary for
ingress to and egress from such ten (10) or twenty (20) acre
tract, as the case may be, and the well thereon for the water

lines, oil lines and other pipe lines, and the tele-
phone, telegraph and electric power lines reasonably
required for the convenient and effective operation of
such well and the production, storage and transportation
of the products therefrom.

3. <u>After discovery of natural gas only</u>. After the
discovery of natural gas only, the Lessee may postpone
drilling operations for gas as provided in paragraph
lettered A of subdivision numbered 7 hereof.

I. <u>SUBSTITUTE WELLS</u>. If, in the drilling of any well
upon the demised premises, mechanical difficulties are encounter-
ed before such well is completed which would under good deep oil
well drilling practice preclude completion of such well, then
the Lessee may abandon such well, in which event the Lessee shall
within sixty (60) days after such abandonment commence the drill-
ing of a substitute well and prosecute such drilling continuously
and with reasonable diligence to completion.

## 5.   ABANDONMENT BY LESSEE

The Lessee shall have the right, at any time after it shall
have drilled the "first well" herein provided for, voluntarily and by
a quitclaim deed duly executed, acknowledged and delivered to the
Lessee, to release wholly from the operation of this lease any sur-
veyed legal subdivision or subdivisions included in the demised pre-
mises containing in any case not less than forty (40) contiguous acres
as nearly as is consistent with the government system of public sur-
veys, and thereupon this lease and the rights, obligations and liabil-
ities of the Lessee hereunder (except those already accrued) shall ter-
minate as to the lands so released and said lands shall thereafter be
deemed wholly excluded from the demised premises for all purposes.

## 6.   OBLIGATION TO OPERATE AND PRODUCE

A.   <u>Oil</u>. Subject to the provisions of subdivision numbered
9 hereof, the Lessee shall operate continuously and to its full
capacity (pumping if necessary) each oil well upon the demised
premises while this lease remains in force as to the portion
of said lands upon which said well is situated so long as such
well shall produce oil and other hydrocarbon substances (other
than natural gas only) in quantities deemed paying quantities
by the Lessee, to the end that maximum production may be secured
and maintained at all times in accordance with good oil field
practice. To the same end the Lessee shall keep all producing
wells cleaned out and in good producing condition.

B.   <u>Gas</u>. Subject to paragraphs A and C of subdivision num-
bered 9 hereof, the Lessee shall use its best endeavors to market

all gas (including natural gas) found in wells drilled by it
on the demised premises, and shall in any event market and de-
liver from the demised premises an equitable and proper share,
pro rated according to productive potentiality of all gas
marketed or delivered from all lands operated or controlled
by the Lessee in the same gas bearing field.  If the Lessee
fails to market from the demised premises its share of gas,
as above provided, the Lessee shall pay to the Lessor the
royalty to which the Lessor would have been entitled if the
Lessee had marketed said share of said gas.  The Lessor shall
have the right to market all gas not marketed or used by the
Lessee in its operations hereunder and the Lessee shall make
delivery of all such gas pursuant to the agreement for the
marketing thereof; provided, however, that without the written
approval of the Lessee, the Lessor shall not market such gas at
a price less than five (5) cents per thousand cubic feet, nor
covering a period longer than five (5) calendar years, nor at
a rate of delivery higher than warranted by good gas field prac-
tice, nor requiring processing of the gas by the Lessee.  If such
sales are made at pressures higher than operative flowing well
pressures, then the sales price must exceed said five (5) cents
by an amount sufficient to return to the Lessee its costs of
compressing.  In such sales by the Lessor, the purchaser or
purchasers shall be obligated to pay directly to the Lessee
four-fifths (4/5) of the gross proceeds of such sales.  Nothing
herein contained shall be deemed to obligate the Lessee to pro-
duce, save, sell or otherwise dispose of gas from oil wells on
the said demised premises; provided that the Lessee shall have
the right, at any time and from time to time, to use all or any
part of such gas (a) in the operation of appliances and methods
for the purpose of increasing the production of oil from the de-
mised premises; and/or (b) for introduction into one or more
wells on the demised premises for the purpose of repressuring
the producing horizons of said demised premises.  The Lessor
shall have the right (at its own expense but without any charge
or cost to it for said gas), at will, to take, use, sell, and/or
dispose of any natural gas not saved and sold by the Lessee and/or
any gas from oil wells not saved and sold or used by the Lessee,
but any such sale of gas by the Lessor shall be subject to the
provisions of this subdivision.

7.   OBLIGATION OF LESSEE TO MAKE MONTHLY PAYMENTS ON ACCOUNT OF
     NATURAL GAS.

     During all periods in which the well or wells drilled on
the demised premises by the Lessee shall be capable of producing
natural gas in paying quantities, and not oil in paying quantities,
and during which the Lessee shall not be drilling wells on the demised
premises, the Lessee shall make monthly payments to the Lessor at the
rate of one hundred ($100) dollars a month for each one million
(1,000,000) cubic feet of gas per day that the said well or wells are
capable of producing (but in no event at a rate less than five hundred
($500) dollars a month or more than one thousand ($1,000) dollars a

9.

month), unless the Lessee is entitled to suspend drilling under the provisions of paragraphs lettered A or C of subdivision numbered 9 hereof. The Lessee shall make said monthly payments even though the Lessee may have completed an average of one well upon the demised premises for each one hundred sixty (160) acres comprising the demised premises, or one well for each one hundred sixty (160) acres of said demised premises as the same may be reduced by abandonment by the Lessee under the provisions of subdivision numbered 5 hereof, or by termination or cancellation in part by the Lessor, it being the intent of the parties hereto that said monthly payments shall be made during all periods in which the Lessee (except when excused under the provisions of paragraphs lettered A and C of subdivision numbered 9 hereof) is not actually drilling wells on the demised premises and during which the wells on the demised premises, or on that portion of the demised premises retained by the Lessee, are capable of producing natural gas (but not oil) in paying quantities. Such monthly payments made during the period of any calendar year shall be credited against any royalty payments due from the Lessee to the Lessor from the sale of gas hereunder during the same year, if any.

A. When gas capacity sufficient. If the drilling program for gas be not fully completed as provided in paragraph lettered D of subdivision numbered 4 hereof, when the Lessee shall cease from drilling, and if the well or wells on the demised premises shall then be capable of producing a quantity of gas sufficient for all market requirements (which shall be deemed in no event to be less than twenty million (20,000,000) cubic feet of gas per day), the obligation of the Lessee to drill further for gas shall be deemed postponed during the period in which the payments prescribed by this subdivision numbered 7 are continued to be made and said capacity is so maintained. Such postponement of drilling obligations shall end the right of the Lessee to drill and develop the demised premises for oil, and the Lessor, its successors, operators and lessees shall have the right to enter upon and drill and develop the same for oil as provided in subdivisions numbered 12 and 13 hereof, and the Lessee shall have no right or interest in the oil or other hydrocarbon substances therein found, other than natural gas only.

B. When gas capacity not sufficient. If the Lessee shall cease drilling wells on the demised premises at a time when the well or wells thereon shall not be capable of producing a quantity of gas sufficient for all market requirements (which shall be deemed in no event to be less than twenty million (20,000,000) cubic feet of gas per day) and prior to the completion of the said gas drilling program, the rights of the Lessee hereunder in the demised premises shall wholly terminate, save and except its rights in the one hundred sixty (160) acre tracts surrounding each then-existing gas well, which one hundred sixty (160) acre tracts shall remain in the possession of the Lessee hereunder (but subject to the Lessor's right to explore and develop for oil) and be subject to this lease, for further development and delivery of natural gas only so long as the monthly payments in this subdivision 7 provided are continued to be made. The Lessee shall not after such termination drill any new gas wells on any of said one hundred sixty (160) acre tracts but shall have the right at any time and from time to time to repair, clean out, redrill and/or deepen to any gas sand or zone any

10.

well or wells retained by it pursuant to the provisions of this paragraph. Each such one hundred sixty (160) acre tract shall be in the form of a square or of a rectangle, the longer sides of which shall not exceed twice the length of the shorter sides, the well, so far as practicable, to be in the middle of such square, or rectangle. The Lessee shall in such case have the right to use as appurtenant to each such one hundred sixty (160) acre tract, so long as drilling proceeds on the well thereon or gas is produced and marketed by it from such well, such rights of way over the lands originally subject to this lease as shall be necessary for ingress to and egress from such one hundred sixty (160) acre tract and the well thereon for the water lines, gas lines and other pipe lines, and the telephone, telegraph and electric power lines reasonably required for the convenient and effective operation of such well and the production, storage and transportation of the products therefrom. The Lessor, its successors, operators and lessees, shall have the right to enter upon and drill and develop for oil any and all tracts so retained by the Lessee, as provided in subdivisions numbered 12 and 13 hereof, and the Lessee shall have no right or interest in the oil or other hydrocarbon substances therein found, other than natural gas only.

8.   NATURAL GAS OBLIGATIONS WHEN PREMISES PRODUCING OIL.

Anything in this lease to the contrary notwithstanding, the Lessee shall not be obligated to develop the demised premises or any part thereof for natural gas during any period in which the wells on said premises shall be producing oil in paying quantities, unless natural gas is being marketed from wells on other lands drilled into gas sands or zones underlying the demised premises, in which event the Lessee, in addition to its obligations to develop the demised premises for oil and to produce oil therefrom, shall be obligated also to develop the demised premises for natural gas and to use its best endeavors to produce and market from wells on the said premises a fair share, pro rated according to productive potentiality, of all gas marketed or delivered from said sands or zones.

9.   SUSPENSION OF DRILLING OR OPERATING OBLIGATIONS.

A.   On account of strikes, etc.   Drilling and/or operating obligations of the Lessee shall be suspended while, but only so long as and to the extent that, the Lessee is prevented from complying therewith by strikes, lockouts or other labor disturbances, riots, insurrections, fire, the elements, acts of God, governmental action, injunctions, interference by civil, military or naval authorities, accidents, or other matters (whether similar or dissimilar) beyond the control of the Lessee.

11.

B.  On account of price of oil.  Except as hereinafter otherwise provided, the Lessee shall not be required to conduct the drilling operations in paragraph lettered C of subdivision numbered 4 hereof provided for, or to pump or operate any oil well drilled upon the demised premises, at any time when the market price of oil (as "market price" is hereinafter defined) of the quality and gravity produced from the wells on said demised premises shall be less than fifty (50) cents per barrel of forty-two (42) gallons; provided, however, that in the case of cessation of drilling or pumping or operating because of such reduction in the market price of oil, such drilling and pumping and operating shall promptly be resumed as soon as the market price for oil of the quality and gravity produced from the demised premises shall again reach the price of fifty (50) cents per barrel; provided, further, that the Lessee's drilling and operating obligations as to "offset" wells and all other wells on the demised premises within thirteen hundred twenty (1320) feet of any boundary line thereof shall not be suspended unless, and then only so long as pumping and all other production from all wells on property adjoining the demised premises and opposite said "offset" and other wells and within thirteen hundred twenty (1320) feet of the boundary line of the demised premises shall also be suspended.

C.  On account of curtailment laws or plans.  The suspension or curtailment of production from any well or wells upon the demised premises in conformity with any valid law, rule or regulation, State or Federal, requiring the same, or such suspension or curtailment in conformity with any invalid law, rule or regulation prior to the establishment of its invalidity, or in conformity with any oil or gas curtailment plan or program which is receiving general or substantially general observance by the oil or gas operators in the State of California and which does not reduce the oil or gas production from the demised premises to a substantially greater extent, proportionately to potential production, than other producing properties in the same field, and which does not reduce the oil or gas production from said field to a substantially greater extent, proportionately to potential production, than the other producing oil or gas fields in the State of California, unless the same would result in substantial damage to the Lessor by the draining of the demised premises by wells on nearby property, shall not be deemed a violation of any of the obligations of the Lessee under this lease.

12.

10. RENTS AND ROYALTIES

At the end of each calendar month of the term hereof, com-
mencing with and including the month next succeeding the month
in which oil or gas shall be first discovered on the said premises
by the Lessee in quantities deemed paying quantities by it, the
Lessee agrees to account and pay to the Lessor at the latter's
office at San Francisco, California, as rents and royalties here-
under, as follows:

I.   A minimum payment as follows:

A.   As to Oil:

(a)   In the absence of production curtailment.

Except as hereinafter in part (b) of this
subparagraph provided:

(1)  Oil from wells producing less than
150 barrels.

A sum of money representing the
market price (as "market price" is here-
inafter defined) of a one-fifth (1/5)
part of all oil produced during the pre-
ceding calendar month from each well upon
the demised premises whose average daily
production (as "average daily production"
is hereinafter defined) during such
preceding calendar month shall have been
less than one hundred fifty (150) barrels
of forty-two (42) gallons each; and

(ii) Oil from wells producing 150 barrels
or more.

A sum of money representing the
market price (as "market price" is herein-
after defined) of a one-fourth (1/4) part
of all oil produced during the preceding
calendar month from each well on the
demised premises whose average daily pro-
duction (as "average daily production" is
hereinafter defined) during such preceding
calendar month shall have been one hundred
fifty (150) barrels of forty-two (42)
gallons each or more.

13.

(b)  <u>During production curtailment.</u>

During the continuance of any curtailment of production of oil from the demised premises for any cause which under the provisions of paragraph C of subdivision numbered 9 hereof shall not be deemed a violation of any obligation of the Lessee hereunder, the following provisions shall apply to each and every well on the demised premises whose production of oil is restricted by such curtailment:

(i)  <u>Oil from wells allowed to produce less than 150 barrels.</u>

A sum of money representing the market price (as "market price" is hereinafter defined) of a one-fifth (1/5) part of all oil produced during the preceding calendar month from each well upon the demised premises whose allowable daily production (as "allowable daily production" is hereinafter defined) during the said preceding calendar month shall have been less than one hundred fifty (150) barrels of forty-two (42) gallons each; and

(ii)  <u>Oil from wells allowed to produce 150 barrels or more.</u>

A sum of money representing the market price (as "market price" is hereinafter defined) of a one-fourth (1/4) part of all oil produced from each well upon the demised premises during the preceding calendar month whose allowable daily production (as "allowable daily production" is hereinafter defined) during the said preceding calendar month shall have been one hundred fifty (150) barrels of forty-two (42) gallons each or more.

14.

B. As to gas, gasoline and other hydrocarbon sub-
stances other than oil found in oil wells.

A sum of money representing the market price (as
"market price" is hereinafter defined) of a one-fourth (1/4)
part of all gasoline extracted from gas produced from the
demised premises, and of a one-fifth (1/5) part of all gas
produced and sold from oil wells, and of a one-fifth (1/5)
part of all other hydrocarbon substances (other than natural
gas) produced from the demised premises.

The Lessee shall have the right to treat or cause
to be treated all or any portion of the gas produced from the
demised premises for the purpose of extracting the gasoline
or other content therefrom.  In the event that such gas shall
be treated by the Lessee itself (or by any subsidiary of the
Lessee or company controlled by it or in which it is a sub-
stantial stockholder) either on the demised premises or else-
where, the Lessor shall receive a sum of money representing
the said market price of a one-fourth (1/4) part of the gas-
oline and other products extracted from such gas, subject,
however, to a charge in favor of the Lessee of not to ex-
ceed the Lessor's proportion, to wit, one-fourth (1/4) of
the actual cost of extraction (excluding all overhead costs,
interest upon capital investment and charges or allowances
for depreciation). Should the Lessee cause the gas to be
treated by a third person (other than a subsidiary of the
Lessee or company controlled by it or in which it is a sub-
stantial stockholder) under a contract or lease upon a royal-
ty basis, then the Lessor shall receive a sum of money repre-
senting one-fourth (1/4) of all royalties and other con-
siderations paid to the Lessee.

C. As to natural gas.

A sum of money equal to a one-fifth (1/5) part of
the gross sales price of all natural gas produced and sold
from wells on the demised premises.

The Lessee shall have the right and it shall be
obligated to use its best endeavors to sell, as expedi-
tiously as possible, all the natural gas produced from the
demised premises, including the Lessor's share thereof.
The Lessor shall be entitled to receive in lawful money of
the United States a one-fifth (1/5) part of the gross pro-
ceeds of any such sale or sales.  Copies of all proposed con-
tracts, agreements and other commitments, and all extensions
or renewals thereof, for the sale or delivery of natural gas
produced from wells on the demised premises shall be sub-
mitted by the Lessee to the Lessor at least ten (10) days
prior to the entering into of the same by the Lessee, pro-
vided, however, that nothing herein contained shall be deemed
to require the approval by the Lessor of any such contracts,

15.

agreements or other commitments, or of any extensions or renewals thereof.

II.  In addition.

In addition to the minimum payment hereinabove in paragraph I of this subdivision 10 hereof required, the Lessee shall pay to the Lessor at the end of each calendar month such further sum of money, if any, as shall represent the amount by which one-half of the "net profits" (to be ascertained as hereinafter provided) derived from all operations hereunder on the demised premises up to the end of the preceding calendar month exceeds the aggregate of:

1.  all sums of money theretofore paid to the Lessor by the Lessee pursuant to the provisions of this subdivision 10 hereof, plus

2.  all sums of money contemporaneously payable to the Lessor by the Lessee pursuant to the provisions of paragraph I of this subdivision 10 hereof.

The Lessor shall not be obligated in any event to repay any sum or sums of money paid to it in any month by the Lessee under either paragraph I or II of this subdivision 10 even though there should be a subsequent decrease of said "net profits" or subsequent losses.

11.  PRODUCTS CONSUMED, ETC. IN OPERATIONS

The Lessee shall not be required to account to the Lessor for, nor pay rent or royalty on, oil or gas produced from the demised premises and actually used in any operations hereunder; provided, however, that, so far as reasonably practicable, gas and not oil shall be used for fuel in such operations.  The Lessee shall not be required to account to the Lessor for, nor pay rent or royalty on, oil or other hydrocarbon substances which shall unavoidably be lost or wasted in production and which cannot, by the use of reasonable care, be impounded in tanks or other containers or otherwise made available for sale or other disposition.

12.  INTEREST IN MACHINERY AND EQUIPMENT

If and whenever the "gross proceeds" derived from the property shall equal "chargeable expenses" theretofore incurred, all improvements and equipment, the cost of which was included in such "chargeable expenses", shall become and thereafter be the property of the parties hereto in equal shares and at any particular time prior thereto the Lessor shall be deemed to own such share of such

16.

improvements and equipment as shall represent that proportion of a one-half interest therein as the "gross proceeds" theretofore derived from the operations of the said premises shall bear to the "chargeable expenses" theretofore incurred. Within the meaning of this paragraph, any date on which the gross proceeds shall equal the "chargeable expenses" shall be a "cut-off" date; and the rights of the parties with respect to improvements and equipment (the cost of which is a "chargeable expense") thereafter added shall be determined by reference to the "gross proceeds" derived and the "chargeable expenses" incurred since such "cut-off" date; it being intended that whenever the parties hereto shall have acquired equal interest in particular improvements and equipment, their equal interest therein shall not be affected by the fact that the "chargeable expenses" thereafter incurred may exceed the "gross proceeds" thereafter derived. The Lessor shall not, however, have any right or interest in the equipment of the first well, the cost of drilling of which is not to be included as a "chargeable expense" as provided in paragraph H of subdivision 30 hereof.

### 13. RIGHT OF LESSOR TO OPERATE FOR OIL PART OF PREMISES RETAINED BY LESSEE FOR GAS

If natural gas only is found by the Lessee in quantities deemed paying quantities by the Lessee, the right of the Lessee hereunder to develop the demised premises for oil or hydrocarbon substances other than natural gas, shall absolutely cease and terminate upon the cessation or postponement by the Lessee for any cause whatsoever of drilling wells upon the demised premises for the period of sixty (60) consecutive days, or the cessation for sixty (60) consecutive days of the continuous operation of at least one string of tools in drilling wells upon the demised premises save and except a suspension of drilling under the provisions of subdivision numbered 9 of this lease; provided, there has not been drilled by the Lessee on the premises an average of one completed well for each ten (10) or twenty (20) acres thereof, as the case may be, as provided in paragraph lettered B of subdivision numbered 4 hereof. Upon such termination of the rights of the Lessee to develop for oil as to any portion of the said demised premises retained by the Lessee for the development, production and delivery of natural gas only, the Lessor shall have the right either through lessees or otherwise, to enter into possession of said portion of said premises and to mine, drill and develop such portion of said premises for oil, and the Lessee shall have no right or interest in any oil or in gas associated with oil, or gasoline associated with oil, discovered or produced in such development.

### 14. MANNER OF OPERATION FOR OIL BY LESSOR ON LANDS RETAINED BY LESSEE FOR NATURAL GAS PRODUCTION

In drilling and developing for oil or other hydrocarbon substances (other than natural gas) any portion of the demised premises as to which the Lessee may still retain its rights to develop and operate for natural gas only, as provided in the preceding paragraph, the Lessor, and/or its operators, lessees and assigns, will conduct

17.

its exploration, development and production so as not materially
to interfere with the operation and development by the Lessee of
the same land for the production and delivery of natural gas, and
will cause the natural gas in all productive zones encountered in
the development for oil to be cased or cemented over so as to prevent,
so far as reasonably possible, leakage, loss or flow of natural gas
from the zone or zones. In the event of operations for oil by the
Lessor, its operators, lessees or assigns, upon lands still held by
the Lessee for natural gas production or delivery, each of the parties
hereto agrees that surface improvements shall be so constructed and
located as not to interfere unnecessarily with operations on the de-
mised premises, and that any surface improvements other than wells
and derricks shall be moved when required, provided, however, that
the party so requiring the moving shall pay the cost thereof.

<u>Right of Lessee to take over gas wells.</u>

If any such well drilled for oil shall be productive of
natural gas only, then the Lessee shall have the right, within
ninety (90) days after the completion of said well, if the lands
upon which said well is situate shall not then have been forfeited
or abandoned by the Lessee for natural gas production, to take over
the said well as if it were a natural gas well drilled by the Lessee
hereunder upon the payment to the Lessor of a sum of money equal to
the full cost and expense of the drilling of the said well.

<u>15. LESSEE TO KEEP ACCOUNTS AND RECORDS</u>

<u>Logs of wells.</u> The Lessee shall keep, and upon
request and without charge shall furnish to the Lessor
copies of accurate logs of all wells drilled upon the de-
mised premises, showing the thickness and character of strata
and formations encountered and drilled through and all details
of such wells. Upon request the Lessee shall advise the Lessor
fully as to the progress of all work upon the demised premises.

<u>Records and accounts.</u> The Lessee shall keep full,
true and correct records and accounts showing its operations
and the production of oil, gas and other hydrocarbon substances
upon the demised premises and the amount and gross sales price
of all gas produced from the premises and sold during each calen-
dar month and of all other data necessary or proper for the settle-
ment of the accounts between the parties hereto and the adjustment
of their rights hereunder, and the Lessor shall have the right, at
all times to inspect and take copies of such records and accounts.
Not later than the end of the first calendar month following the

18.

month in which oil, gas or other hydrocarbon substances shall
be discovered upon said premises in quantities deemed paying
quantities by the Lessee, the Lessee shall deliver to the
Lessor an itemized written statement showing the total produc-
tion on said premises for the preceding calendar month and
the rentals and royalties payable in respect thereto and the
data upon which the amount of such rents and royalties is com-
puted and showing the "gross proceeds" derived from the premises
and the items thereof and the average daily production from
each well thereon during the preceding calendar month and all
"chargeable expenses" in detail paid or incurred up to the end
of such preceding calendar month; and thereafter and not later
than the end of each calendar month, the Lessee shall deliver
to the Lessor similar written statements covering the preceding
calendar month.  In case natural gas is discovered on the demised
premises in paying quantities, the Lessee shall further give
the Lessor monthly written statements showing the amounts of
all natural gas marketed or delivered or contracted to be
marketed and delivered from all lands in the same field operated
or controlled by the Lessee.

## 16.  NO REIMBURSEMENT BY LESSOR

Nothing herein contained shall be deemed to obligate the
Lessor to reimburse the Lessee for any sums expended or expenses
incurred by the Lessee in any operations hereunder.  The Lessor
shall not be obligated to repay to the Lessee any sum paid to
the Lessor pursuant to the provisions of subdivision 10 hereof,
whether or not "net profits" shall be derived from the operations
hereunder or whatever may be the relation between the amount of
such "net profits" (if any) and the amounts paid to the Lessor pur-
suant to the provisions of said subdivision 10.  In no event shall
the amounts payable to the Lessor pursuant to the provisions of
subparagraph II of subdivision 10 hereof be affected or reduced by
any losses sustained by the lessee in operations hereunder or by
the fact that at any time or at the conclusion of the operations
there may be no "net profits".

## 17.  INSPECTION BY LESSOR

The Lessor shall have the right, without hindrance whatso-
ever, (a) to examine (with experts) and take copies of the books and
records agreed to be kept by the Lessee;  (b) to enter upon the demised
premises, to examine the work done and in progress thereon and to
take samples of production; (c) to inspect the Lessee's works, tanks
and appliances; and (d) to examine, gauge and meter the oil, gas or
products produced, found or saved upon the demised premises.

19.

18. MANNER OF OPERATION BY LESSEE

A. In general. The Lessee shall in drilling, equipping and operating the wells and in all other operations on the demised premises, use reasonable care and diligence, and shall perform all work in a proper and workmanlike manner and in such manner as to interfere as little as possible with agricultural, grazing or other uses to which the land may be put. So far as practicable, the Lessee shall locate its buildings, camps and other structures in groups so as to eliminate unnecessary scattering of such structures and unnecessary occupancy of the demised premises. The Lessee shall keep the premises around all tanks, camps, sump holes, wells, works, apparatus, buildings and structures of the Lessee free from brush, weeds and rubbish and in a neat and clean condition, and shall use extraordinary care to prevent fires upon the demised premises and/or the adjoining lands of the Lessor, and as and when requested by the Lessor so to do, the Lessee shall plough for a width of at least eight (8) feet such parts of the demised premises as it shall be reasonably necessary or proper to plough to prevent the spread of any fire originating at any tank, sump or place in the control of the Lessee.

B. Lessee to provide sump holes and protect canals. The Lessee shall provide and maintain the necessary sump holes and other reservoirs, to take care of and impound tailings, water, oily substances and other liquid refuse from wells drilled by it upon the demised premises. The Lessee shall take extraordinary care to prevent the escape or seepage of any oil, oily substances, water, tailings and/or other refuse into Kern River or into any canal, ditch or watercourse, or into any well, used for the production of water, and to prevent the pollution of any water in the said river or in any canal, ditch, watercourse or water well, by or as the result of any operations hereunder.

C. Fences. The Lessee shall, upon the written request of the Lessor, erect and maintain substantial fences around all wells, sump holes, buildings and other structures erected and used by it upon the demised premises, and shall keep closed all gates in any fences enclosing or upon the demised premises, or any part thereof used by it upon or when entering said premises, except when the same are necessarily open for the purpose of ingress and egress through the same, and upon the written request of the Lessor, the Lessee shall install substantial cattle guards of a type approved by the Lessor at all points where roads used by the Lessee pass through fences upon the demised premises.

D. Burying of pipes. The Lessee shall, upon written request of the Lessor and at such places as the Lessor may designate, bury all pipe lines upon the demised premises, or any portion thereof, so that the top thereof shall be not less than eighteen (18) inches below the surface of the ground, and shall properly fill in all trenches dug in the course of burying any such pipe lines. Wherever any pipe line or lines shall cross any ditch, canal or waterway now existing or hereafter constructed,

20.

such pipe line or lines may be laid over or under such ditch, canal or waterway; provided, however, that whenever and wherever necessary, and whenever and wherever directed by the Lessor so to do, the Lessee shall lay or relay (as the case may be) and thereafter at all times maintain such pipe line or lines so that the top thereof shall be not less than twenty-four (24) inches below the bottom of ditches, canals and waterways as the same now exist or as the same may hereafter be constructed or established, all at the expense of the Lessee.

E.  Shutting off water.  In case of the abandonment of any well, the Lessee will use all reasonable means to shut off from the oil-bearing strata any water that may have been encountered in the drilling of such well.

F.  Lessee to comply with laws, etc.  The Lessee shall, in all operations under this Lease or upon the demised premises, at its own expense, promptly comply with and execute any and all laws, ordinances, rules, regulations, requirements and orders whatsoever, present or future of the national, state, county or municipal government, and of any and all departments, bureaus, subdivisions, boards, commissions, offices or officers thereof, which may in any way apply to the use or occupation of or operations upon the demised premises or the drilling, maintenance, operation, or abandonment of any wells drilled or to be drilled thereon, or the handling of any product thereof. The Lessee hereby agrees that it will indemnify the Lessor, and save and hold the Lessor free and harmless of and from, and that it will at all times keep the demised premises and all parts thereof free and clear of any and all liens, claims of lien, claims or demands whatsoever, based upon or arising out of any failure on the part of the Lessee, its agents or employees, or the contractors engaged in doing work for it, to comply with, perform and execute the provisions of any such present or future law, ordinance, rule, regulation, requirement or order.

G.  Crop and livestock damage.  If the Lessee by reason of its operations hereunder shall at any time destroy or render unproductive any growing crops or farm products upon the demised premises, or kill or injure any livestock, or damage or destroy any other property, it shall promptly pay to the owner thereof the full amount of damage thereto.

H.  Locating wells, etc. adjacent to river and improvements. The Lessee shall not drill any well or place or erect any tank, building or other structure upon the demised premises in the bed or channel of Kern River or in the bed or channel of any canal, irrigation ditch or other watercourse nor within two hundred (200) feet of the toe of the bank of the Kern River or of any slough or other natural watercourse, nor within two hundred (200) feet of any levee, embankment, weir, headgate, water well, building or other improvement now or hereafter located upon the demised premises.

21.

19.  TAXES, ASSESSMENTS, ETC.

A.  Upon property of Lessee.  The Lessee shall pay, before the same become delinquent, all taxes, assessments and other governmental charges whatsoever levied upon or assessed or charged against the said demised premises or any part thereof and/or against any rights of the Lessee hereunder and/or against any buildings, plants, tanks, machinery, equipment, tools or other personal property or improvements on the said demised premises and/or against any mineral or mineral rights or other rights therein, during the term of this lease, including all taxes, assessments and other charges for the fiscal year 1936-1937.  The Lessee agrees that it will indemnify the Lessor and hold it harmless from and will at all times keep the demised premises and all parts thereof free and clear of any and all liens, claims of lien, claims or demands based upon or arising out of any tax, assessment or charge whatsoever.  If the Lessee shall fail and neglect to pay any tax, assessment or other charge before the same shall become delinquent, the Lessor shall have the right, at its option, to pay the same, together with all penalties and interest thereon (the payment thereof by the Lessor being conclusive upon the parties hereto as to the legality or correctness of the tax, assessment, charge or interest so paid), and the Lessee shall pay to the Lessor forthwith upon demand the amount of all taxes, assessments, charges, interest and penalties so paid, together with interest upon such amounts so paid from the date of the payment thereof by the Lessor until repaid at the rate of one (1) per cent per month.

B.  Taxes, assessments, etc. on account of operations, etc.  The Lessee shall, at its own expense and without reimbursement by the Lessor,

22

pay and discharge any and all taxes, assessments
or charges upon or referable to any operations
or acts of the Lessee or on its behalf upon
the demised premises, including (but by such
inclusion in nowise limiting the generality
of the foregoing) the drilling or opera-
tion of any well or wells, the production,
extraction, severance or removal of any
oil or other products, the processing,
refining, storage or use thereof, the
sale of any such oil or other pro-
ducts or of any products manufactured
therefrom or therewith, or the trans-
poration thereof away from the demised
premises; and the Lessee also shall at
its own expense and without reimburse-
ment by the Lessor, pay and discharge
any and all assessments, charges or
obligations of any kind whatsoever
which, by reason of any operations
of the Lessee, may be or might
become a lien upon or charge
against the demised premises
or any part thereof, or any
well situate thereon (including,
but by such inclusion in nowise
limiting the scope of the fore-
going provisions, any charge,
assessment, claim or obligation
created by or arising under Chapter
718 of the Statutes of 1915 of the
State of California, or any act amenda-
tory thereof or supplemental or addi-
tional thereto) whether the same shall
be created by or shall arise under or
by reason of any present or future law,
ordinance, regulation or order whatsoever.

## 20.  DEVELOPMENT OF WATER

The Lessee may develop water on said demised premises
but shall not either by sinking wells or otherwise, draw water from
the Kern River or from any ditch or other watercourse or increase
the seepage or percolation from said river or ditch or other water-
course. All water so developed shall be only for use on the demised
premises in the operations herein provided for, and the Lessor re-
serves to itself the right to use any unused portion of said water,

23

but the use by the Lessor of such unused portion of water shall be at its own expense and risk, and such water shall be taken at such point or points as not unnecessarily to interfere with the Lessee. The Lessee shall have no right to use any water flowing in, upon, over, under or across said demised premises except such water as it may itself develop, as above provided.

21. REMOVAL OF MACHINERY, EQUIPMENT, ETC.

A. By Lessee on own motion. If the Lessee shall not then be in default in any payment required to be made by it under the provisions of this lease, it shall have the right within thirty (30) days after this lease shall terminate or be terminated (or with respect to any portion of the demised premises within thirty (30) days after the termination of this lease or the Lessee's rights as to such portion of said premises), to commence to remove therefrom any and all things and property whatsoever owned by the Lessee or placed by or for it upon the demised premises; provided, however, that the Lessee shall diligently and continuously prosecute such removal and shall restore said premises or part thereof (as the case may be) to as near its original condition as is reasonably practicable, and shall leave the same in a neat, clean and orderly condition, and shall leave in abandoned wells, casings or other material required for the shutting off of water therein; provided, further, that before so removing any well casing from any well on the demised premises the Lessee shall give to the Lessor at least thirty (30) days written notice of its intention to remove the same, and the Lessor shall have the right, within fifteen (15) days after the receipt of such notice, to take over and purchase all or any part of the casing in any such well at one-half (1/2) of the then prevailing market price of similar casing at Bakersfield, California.

B. Upon notice from Lessor. Upon any expiration, termination or forfeiture of this lease or of the rights of the Lessee in the demised premises, or any portion thereof, even though the Lessee may retain the right to use the same as provided in the last proviso of paragraph lettered D of subdivision numbered 28 hereof, the Lessee shall promptly, upon written notice from the Lessor so to do, commence to remove from the demised premises or such portion thereof as to which the rights of the Lessee shall have so expired, terminated or been forfeited, any and all things and property whatsoever used by the Lessee or placed by it upon said demised premises, as required by the Lessor (except the necessary pipe lines and other property contemplated by the last proviso of paragraph lettered D of subdivision numbered 28 hereof, which said pipe lines and other property it agrees to remove as soon as its right to use the property to which the same are appurtenant shall cease) and the Lessee shall prosecute the said work of removal diligently and continuously to prompt completion and shall restore said premises to as near

24.

their original condition as is reasonably practicable, and shall leave said premises in a neat, clean and orderly condition. If the Lessee shall fail to remove the said property or to restore the demised premises as hereinabove provided within a reasonable time after the receipt of such notice, the Lessor may elect to have and possess said property as its own, without any payment by or cost to it, or at the expense and for the account of the Lessee to cause the same to be removed and disposed of and to restore said demised premises, and in such event the Lessee shall pay to the Lessor, upon demand, the entire expense of such removal, disposition and/or restoration, and the Lessor shall not be or be held liable or in anywise responsible for any expense, loss, or damage resulting to the Lessee from such removal, disposition and/or restoration.

C.   Disposal of machinery and equipment in which Lessor may have an interest.  The Lessee shall, upon removal, promptly sell for the best price obtainable, any building, structure, tubing, casing, pipe, rig, tank, derrick, pipe lines, engine, boiler, machinery, tools, telephone, telegraph and/or electric lines, and any other thing and property whatsoever placed by the Lessee upon the demised premises and in which the Lessor may have an interest, and the net proceeds of such sale shall be divided between the parties hereto in the proportion of the interest of each of said parties in and to the property so sold.

## 22.   LESSEE TO PAY FOR ALL LABOR AND MATERIALS

The Lessee shall at its own risk and expense, provide and promptly pay for all labor and all derricks, pumps, pipes, engines, tanks, tools, equipment, materials, supplies and other property, of whatsoever kind or nature, which may be necessary or proper to carry on the operations hereunder and to perform the covenants, terms and conditions of this lease, and the said Lessor shall not be liable for any part thereof. The Lessee hereby indemnifies the Lessor and agrees to hold it free and harmless of and from and the demised premises and all thereof free and clear of any lien, charge, or claim or demand based upon, or arising out of or in connection with the doing of any such labor, or the furnishing of any such materials or supplies; and the Lessee shall at once notify the Lessor of the attaching of any such lien or charge. The Lessor shall have the right to enter upon the demised premises and to post thereon notices of non-responsibility.

## 23.   LESSEE TO INDEMNIFY THE LESSOR

The Lessee agrees to pay all damage, losses, costs and expenses suffered or incurred by the Lessor or by the Kern County Canal and Water Company, a corporation, or by any corporation more

than half of the outstanding capital stock of which may now or
hereafter be owned by the Lessor or by the said Kern County
Canal and Water Company, and to indemnify and save and hold
the Lessor and all of the demised premises free and harm-
less of and from any and all costs, expenses (including
attorneys' fees in any action or proceeding arising out
of the matters hereinafter set forth), damages, losses,
liability to others or claims of others whatsoever,
which may result from or in anywise arise out of or in
connection with (a) any of the operations of the Lessee
upon the demised premises; or (b) the exercise by or for
the Lessee of any of its rights hereunder; or (c) any act
or negligence on the part of the Lessee, or of any con-
tractor engaged in doing work for it; or (d) any breach by
the Lessee or by any contractor engaged in doing work for it
of any of the agreements, covenants, terms or conditions of
this lease.

## 24.  TITLE OF LESSOR

        The Lessee accepts as satisfactory to itself the title
of the Lessor to the demised premises, and agrees that (a) the
Lessor shall not be liable or responsible to the Lessee in
damages or otherwise by reason of any defects in or liens or
encumbrances on the Lessor's title or any want of title in the
Lessor to the demised premises or any portion thereof or to
any oil, gas or other hydrocarbon substances therein con-
tained or found or produced thereon or taken therefrom, and
(b) that in the event of the assertion by others of any claim
against the Lessor on account of the extraction or removal
from the demised premises of oil, gas or other hydrocarbon
substance by the Lessee, the Lessee will defend and indem-
nify and save and hold the Lessor harmless from all of such
claims except such portion thereof as represents the Lessor's
royalty;  provided that upon receiving notice thereof, the
Lessor shall notify the Lessee with reasonable promptness of
the filing of any action or suit for the assertion of any such
claim and shall allow the Lessee the privilege of having its
attorneys appear therein either alone or in association with
the Lessor's attorneys (as the Lessor may elect) in defending
any such action or suit on behalf of the Lessor, each party
paying the expenses of its own attorneys.

## 25.  JUDICIAL PROCEEDINGS

        The Lessee shall promptly notify the Lessor in writing of
any judicial proceedings brought to the attention of the Lessee and

26

affecting, or purporting to affect, the Lessee's possession or
rights hereunder.


## 26.  INTEREST

Unless otherwise expressly provided, all amounts payable
by the Lessee to the Lessor under any of the provisions of this
lease, if not paid when the same become due, shall bear interest
from due date until paid at the rate of eight (8) per cent per
annum, compounded semi-annually.


## 27.  COVENANTS BY THE LESSEE

The Lessee covenants and agrees that it will pay the
rent, royalties and other payments herein reserved, as and when
due; that it will keep, perform and observe, at its own expense,
all the covenants, terms, conditions and stipulations hereof on
its part to be kept, performed or observed.


## 28.  REMEDIES IN CASE OF DEFAULT

In addition to all other rights and remedies of the Lessor
under any of the provisions of this lease or otherwise, in the event
of any breach of any of the covenants, terms or conditions of this
lease, the Lessor shall have the following rights and remedies, which
shall be cumulative:

A.  *Failure to drill wells prior to discovery.*  In the
event that the Lessee shall fail, neglect or refuse to commence
the drilling of a well or to drill any of the wells as pro-
vided in paragraphs A or B of subdivision 4 hereof at the time
and in the manner therein provided, then this agreement and lease
and all the rights of the Lessee in or to the demised premises or
any part thereof shall, without any notice whatsoever to the Les-
see, ipso facto cease and terminate and revert to the Lessor, and
the Lessor shall have and it is hereby given the right to re-
enter the demised premises and repossess itself thereof as of
its former estate, removing all persons and property therefrom.

B.  *Failure to drill other wells.*  In the event that the
Lessee shall fail, neglect or refuse to drill any of the wells
hereinabove in paragraphs lettered C or D or F of subdivision
numbered 4 hereof provided for at the times and in the manner
therein provided, then, subject to the provisions of paragraph
lettered D of this subdivision and if such default shall continue
for a period of thirty (30) days after written notice thereof
given by the Lessor to the Lessee, this lease and all of the
rights of the Lessee hereunder or in or to the demised premises,

shall cease and terminate and revert to the Lessor, and the
Lessor shall have, and it is hereby given the right to re-
enter the demised premises and repossess itself of its former
estate therein, removing all persons and property therefrom.

C.  Failure of Lessee to pay royalties or perform other
covenants.  In the event that the Lessee shall fail, neglect
or refuse to pay or deliver the rent or royalty at the times
and in the manner hereinabove provided, or shall fail, neglect
or refuse to keep and perform any of the covenants, terms or
provisions of this lease on its part to be kept and per-
formed, other than those specifically mentioned in paragraphs
lettered A and B of this subdivision, if such default shall
continue for a period of thirty (30) days after written notice
thereof given by the Lessor to the Lessee, then, subject to
the provisions of paragraph lettered D of this subdivision,
the Lessor may, at its option, terminate this lease and all
of the rights of the Lessee hereunder, or in or to the demised
premises, and the Lessor shall thereupon have the right to re-
enter said demised premises and repossess itself thereof as of
its former estate therein, removing all persons and property
therefrom.

D.  Effect of termination.  The termination of this
lease or of the rights of the Lessee hereunder or in or to the
demised premises, as provided in paragraphs lettered B and C
of this subdivision, shall be subject to the following limitation,
to wit, that such termination shall not apply to any of the follow-
ing wells (except such thereof as to which the Lessee may be in
default in the payment of rent or royalty, or otherwise in de-
fault) to wit (a) any producing well or wells, (b) any well or
wells already drilled and completed which are then being repaired,
cleaned out, redrilled, deepened or otherwise operated, or (c)
any well or wells then in the process of being drilled pursuant
to the provisions of this lease, but it is agreed that the Lessee
shall at all times have the right (unless, as aforesaid, the
Lessee is in default as to any such well or such right shall have
been terminated by reason of some subsequent default with res-
pect thereto) to complete any well which is in the process of
being drilled pursuant to the provisions of this lease, or to
repair, clean out, redrill, deepen, or otherwise operate any
well which has theretofore been drilled and which the Lessee is
at the time repairing, cleaning out, redrilling, deepening or
otherwise operating; provided, however, that the Lessee shall
not, after the termination of this lease or of its rights hereunder
or in or to the demised premises as aforesaid, deepen any exist-
ing and theretofore completed oil well retained by it pursuant
to the provisions of this paragraph to any sand or zone deeper
than the deepest sand or zone then penetrated by such well, nor,
in the event that the Lessee shall retain any oil well or oil
wells theretofore completed, shall it drill any oil well then in
the course of being drilled to a deeper sand or zone than the

28

deepest sand theretofore penetrated by any of the completed
wells retained by it; provided, however, that the Lessee shall
have the right to deepen any natural gas well to any sand or
zone.  The Lessee shall also have the right to continue to
pump and/or operate any well which it is entitled to retain as
above provided which is producing any of the substances in
this lease before enumerated in quantities deemed by it to be
paying quantities, so long as such well shall continue to pro-
duce any of such substances in such paying quantities, and the
Lessee shall also be entitled to retain and use an area of not
exceeding ten (10) acres surrounding each such oil well six
thousand (6,000) feet or less in depth or an area of not ex-
ceeding twenty (20) acres surrounding each such well more than
six thousand (6,000) feet in depth, located as in subparagraph
2 of paragraph lettered H of subdivision numbered 4 hereof pro-
vided, or an area of not exceeding one hundred sixty (160)
acres surrounding each such gas well located as in paragraph B
of subdivision numbered 7 hereof provided; provided, also, that
it shall have the right to use, as appurtenant to each such ten
(10, or twenty (20) or one hundred sixty (160) acre tract, as
the case may be, so long as drilling proceeds on the well there-
on or oil and/or other hydrocarbon substances are produced by it
from such well, or gas is produced and marketed by it from such
well, such rights of way over the land originally subject to
this lease as shall be necessary for ingress to and egress from
such ten (10) or twenty (20) or one hundred sixty (160) acre
tract, as the case may be, and the well thereon, or for the
water lines, oil lines, gas lines and other pipe lines, tele-
phone, telegraph and electric power lines reasonably required
for the convenient and effective operation of such well and
the production, storage and transportation of the products
therefrom.

    E.  <u>Reconveyance by Lessee upon termination</u>.  In the
event of any cancellation or termination of this lease, or any
termination of the rights of the Lessee in and to the demised
premises or any part thereof, either by expiration of the term
hereof or surrender or forfeiture, the Lessee shall peaceably
surrender up the possession of all of those portions of the
demised premises as to which this lease, or its rights in or
to the same, may be terminated, surrendered or forfeited, and
the Lessee shall execute and deliver to the Lessor a good and
sufficient quitclaim deed, duly acknowledged, covering all
such portions of said demised premises.

29.  RIGHT OF LESSOR TO CONDUCT OIL OPERATIONS

    Notwithstanding any other provision in this lease, the Lessor
or any other person so authorized by it may at any time and from time
to time after the expiration of twenty (20) years from and after the
date hereof go upon all or any part of the lands which the Lessee is,

pursuant to the provisions of this lease, entitled to retain posses-
sion of and prospect, drill for, produce, extract and take oil,
gas and/or other hydrocarbon substances therefrom; provided (first)
that such operations shall not unduly interfere with any operations
which the Lessee is carrying on thereon pursuant to the terms of
this lease, and (second) that the Lessor or such other person autho-
rized by it to conduct such operations shall not, by means of any
well located upon the lands so entered upon or within three hundred
(300) feet of the boundaries thereof, produce, extract or take any
oil, gas or other hydrocarbon substances from the sands or zones
from which the wells of the Lessee upon the lands so entered upon
are producing, or, if the Lessee shall then be in the course of
drilling a well or wells upon such lands as in this lease permitted,
from the sands or zones to which the Lessee is entitled under the
other provisions of this lease to drill, and actually does drill,
such well or wells.  For the purpose of determining the sands or
zones from which the Lessor or those so authorized by it may pro-
duce, extract and/or take oil, and/or other hydrocarbon substances
under the provisions of this paragraph, each separate piece of land
(whether made of the area around one or more wells, so long as it
constitutes one contiguous body of land) of the demised premises
which the Lessee is entitled to retain possession of under the
provisions of subparagraph 2 of paragraph lettered H of subdivision
numbered 4 and/or of paragraph lettered B of subdivision numbered 7
and/or of paragraph lettered D of subdivision numbered 28 hereof,
shall be considered separately and by itself and with reference
only to the wells thereon and not with reference to the wells on
any other separate piece of land.


## 30.  DEFINITIONS.

A.   "Average daily production".   Where used in this
lease, the words "average daily production" shall mean the
average daily production of the well in question on those
days during the calendar month as to which the production
is to be determined, upon which said well is pumped or
operated to full capacity for a full twenty-four (24) hours
per day.  If a well be not pumped or operated for a full
twenty-four (24) hours on any day during such calendar month,
then the average daily production of said well shall be de-
termined by dividing the total production of such well during
such calendar month by the number of hours during which said
well was pumped, operated or producing to full capacity and
by multiplying the result so obtained by twenty-four (24).

B.   "Allowable daily production".   Where used in this
lease, the words "allowable daily production" shall mean the
daily production allowed for a well under any valid law, rule
or regulation, State or Federal, or in conformity with any
oil curtailment plan or program under the provisions of para-
graph C of subdivision numbered 9 of this lease.

C. "Complete" - "Completed" - "Completion". Where used in this lease the word "complete" or "completed" or "completion" shall mean when used with reference to a well:

    (a)  The drilling of such well to a depth of not less than four thousand (4,000) feet, the Lessee then electing to cease drilling therein; or

    (b)  The finding of oil, gas and/or other hydrocarbon substances therein in quantities deemed by the Lessee to be paying quantities, if the Lessee shall have elected to cease further drilling operations in such well; or

    (c)  the finding in the drilling of such well of igneous or metamorphic rock formation at a lesser depth than four thousand (4,000) feet in sufficient quantities reasonably to preclude the finding of oil, gas and/or other hydrocarbon substances in such well, if the Lessee shall have elected to cease drilling therein on account thereof.

D. "Continuous operation". Where used in this lease, the words "continuous operation", when used with reference to the operation of a string of tools shall mean such continuous operation that not more than sixty (60) days shall elapse between the use of a string of tools in drilling one well and the commencement of the drilling of another well.

E. "Market price". Where used in this lease (unless otherwise expressly provided), the words "market price" shall mean the highest market price offered and paid to producers generally for products of like grade and gravity in any of the oil fields in Kern County on the day on which such product was produced.

F. "Natural Gas". Where used in this lease, the words "natural gas" shall mean natural petroleum gas produced alone and not in combination with any petroleum product liquid at ordinary surface temperatures and surface pressures.

G. "Gross Proceeds". Where used in this lease, the words "gross proceeds" shall mean -

    (a)  The "market price" of all oil produced from wells upon the said premises and/or for all gasoline extracted from gas produced from the demised premises; and

    (b)  The actual gross sales price of all gas and other hydrocarbon substances (other than oil and gasoline) produced from said premises and sold.

31

H.   "Chargeable expenses".  Where used in this lease (except as herein otherwise expressly provided), the words "chargeable expenses" shall mean the actual expense to the Lessee of drilling and bringing to production and of operating wells upon the said premises and of delivering the products therefrom to pipe lines for transportation, including all moneys actually disbursed and the expenses actually incurred by the Lessee for materials, equipment and supplies and for constructing, maintaining and repairing the roads, power lines, telephone lines, water pipe lines, buildings and other structures required and used for the drilling and operation of wells upon the said premises and for the production of oil, gas and/or other hydrocarbon substances from such wells and for the extraction of gasoline from gas; provided, however, that any contributions made by the Lessor to such expense (for example, to the cost of extracting gasoline from gas) shall be deducted from such "chargeable expenses"; and provided, further, that such "chargeable expenses" shall not include –

(a)  any charge for "overhead", such, for instance, as a charge for any proportion of the expense of maintaining the general offices or general staff of the Lessee; nor any tax or assessment on oil or gasoline stored on the demised premises for a period longer than is necessary in the ordinary course of operation of any oil property to provide for measuring and testing and delivery to pipe lines; nor

(b)  any charge for all or any part of the general taxes paid by the Lessee, such as franchise, license, or other corporate taxes, capital stock, income or profit taxes; nor

(c)  any part of the cost or expense of drilling the first well to completion as herein provided; nor

(d)  any charge for all or any part of betterments which are not solely and exclusively used for operation upon the said premises; nor

(e)  any allowance for interest upon the sums disbursed by the Lessee or for depreciation or obsolescence of any improvements, equipment or other property; nor

(f)  any part of the cost of or any expense incident to transporting any oil, gasoline, gas and/or other hydrocarbon substances produced from said premises or the storing of such oil, gasoline, gas and/or other hydrocarbon substances upon the premises for a longer period than in the ordinary course of operation of oil producing property is necessary to collect, measure and test the product therefrom and deliver it to pipe lines for transportation.

I. "Net Profits"  Where used in this lease, the words "net profits" shall mean the amount by which the "gross proceeds" from the property up to that time exceeds "chargeable expenses" up to that time.

## 31.  ATTORNEYS' FEES IN ACTION FOR BREACH

If any action or actions or proceedings at law, or any suit or suits in equity shall be brought to recover any rent or royalty hereunder, or for or on account of any breach whatsoever in the performance or observance of any of the covenants, terms, conditions or stipulations hereof on the part of the Lessee to be kept and performed, or for recovery of possession of the said demised premises or any portion thereof, or for damages or other relief, or on account of any breach hereof, and judgment therein shall be recovered by the Lessor, the Lessee shall, in addition to all costs of suit, be liable for a reasonable sum as and for the Lessor's attorneys' fees, which sum shall be fixed by the court and shall be made a part of such judgment.

## 32.  TIME OF THE ESSENCE

Time is hereby expressly declared to be of the essence of this lease and of each and every covenant, term, condition, stipulation and provision hereof;  and each such covenant, term, condition, stipulation and provision is hereby declared to be and made a material, essential and necessary part of this lease.

## 33.  NOTICES

All notices or demands herein provided to be given or made, or which may be given or made, by either party to the other, shall be deemed to have been fully given or made when made in writing and deposited in a sealed envelope in the United States mail, registered and postage prepaid and addressed as follows:

To the LESSOR:        Room 910,
                      485 California Street,
                      San Francisco, California.

To the LESSEE:        1250 Subway Terminal Building,
                      Los Angeles, California.

The address to which any notice or demand may be given or made to either party may be changed upon written notice given by such party to the other as herein provided.

## 34.  NON-ASSIGNABILITY

This lease and all of the covenants, terms, conditions and stipulations herein contained, shall bind and inure to the benefit

33

of the successors and assigns, respectively, of the parties hereto; provided, however, that the Lessee hereby covenants and agrees that it will not let or sublet, or attempt to let or sublet, the demised premises or any part thereof, nor to assign or transfer or mortgage or attempt to assign, or transfer or mortgage, this lease or any of the term hereby granted, or any of the Lessee's interest hereby created, without the written consent of the Lessor first had and obtained save and except that in case of a merger, consolidation or dissolution of the Lessee, or sale of all of its properties, the Lessee may assign or transfer to such successor of the Lessee's business the whole of its rights and interests in all of the demised premises then remaining subject to this lease; but no assignee or transferee of the Lessee shall assign or re-assign, transfer or re-transfer, this lease, or any of the term hereby granted or any of the Lessee's or its interest hereby created, without the written consent of the Lessor first had and obtained.   The Lessee hereby further covenants and agrees that neither this lease nor the Lessee's interest hereunder or in or to the demised premises, or any part thereof, nor any part of the term hereby granted, shall at any time be assigned or transferred by, through or in any voluntary or involuntary proceeding in bankruptcy, or otherwise, nor by, nor under, any judgment or execution sale, nor by any receivership proceedings, and that neither this lease nor the interest of the Lessee hereunder or in or to the demised premises, or any portion thereof, shall at any time be subject to garnishment or sale under execution in any suit, action or proceeding against the said Lessee, unless such suit, action or proceeding shall be instituted or prosecuted by or for the Lessor, and that neither this lease nor any interest of the lessee hereunder or in or to the said demised premises shall be assigned or transferred for the benefit of any creditor or creditors of the Lessee, and that any assignment or transfer, or attempted assignment or transfer of this lease, or of the Lessee's interest hereunder or in or to the said demised premises, contrary to the provisions hereof, shall, at the option of the Lessor but not otherwise, ipso facto be void or ipso facto terminate this lease and all the rights of the Lessee hereunder, and in and to the said demised premises, and also all rights of any and all persons claiming in or under this lease, and that no notice of such exercise of such option need be given.   Any consent of the Lessor to any subletting of the demised premises, or any portion thereof by the Lessee, or to any transfer or assignment of this lease, or any interest therein by the Lessee, shall not be or be deemed or construed as a consent to any other subletting or transfer or assignment, nor as a waiver of the Lessor's right to object to any such other subletting or transfer or assignment to which its consent in writing has not been given.

35.  NON-LIABILITY OF LESSOR FOR FLOOD DAMAGE

The Lessor shall not be liable for any damage to or destruction of any well, buildings, structures or other property of the Lessee or of others, or for interruption of or interference with the

34

Lessee's operations hereunder caused by or arising from the seepage or percolation of water into or upon the demised premises or any part thereof or from the flooding or overflow of the demised premises or any part thereof, by water from neighboring lands or from any ditch, canal, slough or other waterway, or from the Kern River.

## 26.   PARAGRAPH HEADINGS

The use of paragraph headings in this lease is solely for the purpose of convenience and the same shall be wholly disregarded in the construction of this lease or of any covenant, term, stipulation, condition, clause or portion hereof.

IN WITNESS WHEREOF, the said parties hereto have caused these presents to be duly executed, the day and year first hereinabove written.

Executed in Duplicate.

KERN COUNTY LAND COMPANY,
a corporation,

by _____
Vice-President

(Corporate
Seal)

by _____
Assistant Secretary

LESSOR

THE OHIO OIL COMPANY,
a corporation,

by _____
Vice President

(Corporate
Seal)

by _____
Secretary

LESSEE

Subject to all existing easements, servitudes and rights of way for canals, ditches, roads, telephone, telegraph and electric power lines, railroads, pipe lines and other purposes.

Subject also to the provisions of the agreement made between Henry Miller et al. and James B. Haggin et al., under date of July 28, 1888, and recorded in the office of the County Recorder of Kern County, California.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed the day and year first hereinabove written.

Executed in duplicate.

KERN COUNTY LAND COMPANY,
a corporation,

By _____
Vice-President

(Corporate Seal)

By _____
Assistant Secretary
LESSOR

THE OHIO OIL COMPANY, a corporation,

By _____
Vice President

(Corporate Seal)

By _____
Secretary
LESSEE

State of California,
City and County of San Francisco

On this ____ th day of August in the year of our Lord One Thousand Nine Hundred and Thirty-Six before me, FRANK L. OWEN a Notary Public in and for said City and County and State, residing therein, duly commissioned and sworn, personally appeared Fred T. Elsey and Wm. L. Boos known to me to be the Vice-President and Assistant Secretary, respectively, of Kern County Land Company the Corporation described in and that executed the within instrument, and also known to me to be the person s who executed it on behalf of the said Corporation therein named, and that acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, at my office in the City and County and State aforesaid, the day and year in this certificate first above written.

_____
Notary Public in and for said City and County of San Francisco, State of California.