# *EXHIBIT "5"*

James Maples,Assessor-Recorder
Kern County Official Records

SABRINA
Pages: 24
8/12/1996
8:08:18

DOCUMENT #:0196102485

RECORDING REQUESTED BY
AND AFTER RECORDING
RETURN TO:

Crimson Resource Management Corp.
410 17th Street, Suite 810
Denver, CO  80202

*0196102485*

Fees....    77.00
Taxes...** Conf **
Other...

Stat. Types:1      TOTAL PAID...    77.00

---

## MINERAL DEED, ASSIGNMENT AND CONVEYANCE

---

TITLE OF DOCUMENT

STATE OF CALIFORNIA

COUNTY OF KERN

Recording Requested by and
When Recorded Return to:

Crimson Resource Management Corp.
410 17th St., Suite 810
Denver, Colorado  80202

## MINERAL DEED, ASSIGNMENT AND CONVEYANCE

THIS MINERAL DEED, ASSIGNMENT AND CONVEYANCE (herein called this ``*Assignment*''), dated effective as of January 1, 1995, at 7 a.m. Pacific Standard Time (herein called the ``*Effective Time*''), is from ATLANTIC RICHFIELD COMPANY, a Delaware corporation (herein called ``*Assignor*''), whose mailing address is P. O. Box 2819, Dallas, Texas 75221, to CRIMSON RESOURCE MANAGEMENT CORP., a Colorado corporation (herein called ``*Assignee*''), whose mailing address is 410 17th Street, Suite 810, Denver, Colorado 80202.

### PART I
### GRANTING AND HABENDUM CLAUSES

1.1    *Subject Interests.*  Effective as of the Effective Time, Assignor hereby transfers, grants, conveys and assigns, subject to the reservations and provisions set forth herein, to Assignee, and the successors and assigns of Assignee, all of Assignor's right, title, and interest in and to the following (collectively, the ``*Subject Interests*''):

(a)    the oil and gas mineral fee estates described in Exhibit A attached hereto and made a part hereof in, to and under the land described in Exhibit A (the "Land") including, without limitation, all oil, gas and mineral fee, royalty, overriding royalty, leasehold, term, executive rights and similar interests described in Exhibit A;

(b)    the oil and gas leases described in Exhibit A (the "Leases"), the leasehold estates created by the Leases, the rights and interests attributable or allocable to the Leases by virtue of the Leases;

(c)    all unitization, communitization, pooling, and operating agreements, and the units created thereby which relate to the Leases or Land or interests therein described on Exhibit A or which relate to any units or wells located on the Leases, including any and all units formed under orders, regulations, rules, and other official acts of the governmental authority having jurisdiction, together with any right, title and interest created thereby in the Leases and Lands or lands pooled or unitized therewith;

(d)    all oil, natural gas, natural gas liquids or condensate inventory, including "line fill" and inventory below the pipeline connection in tanks as of the Effective Time, or the proceeds thereof, in each case to the extent derived from the interests described above.

SAVE AND EXCEPT all surface rights other than surface rights that the owner of a mineral estate is entitled to by virtue of the ownership of such mineral estate.

TO HAVE AND TO HOLD, subject to the terms, exceptions and other provisions herein stated, the Subject Interests unto Assignee, its successors and assigns, forever.

PART II
TERM AND TERMINATION; PERMITTED ENCUMBRANCES;
TERMS AND CONDITIONS

2.1     *Permitted Encumbrances.*  Each Subject Interest is assigned and accepted subject to (a) all liens, charges, contracts, agreements, instruments, obligations and other encumbrances, if any, whether or not disclosed in the public records, affecting such Subject Interest, including, without limitation, all instruments creating or transferring such Subject Interest, unit agreements, pooling orders, communitization orders, division orders, transfer orders, operating agreements and marketing contracts, if any, and (b) all laws, rules, regulations and orders of governmental authorities or tribunals having or asserting jurisdiction, in each case to the extent the same are valid, enforceable and affect such Subject Interest (herein called the ``*Permitted Encumbrances*'').

All references herein to Permitted Encumbrances, burdens, defects of title and other similar matters are for purposes of defining the nature and extent of the interest assigned to Assignee hereunder, and shall not be deemed to ratify, create, confer, admit or acknowledge any rights, benefits or remedies in any third party.

2.2     *No Warranty of Title; Subrogation.*  This Assignment is made without warranty of title, express, implied, or statutory, and without recourse, even as to the return of the purchase price, but with full substitution and subrogation of Assignee, and all persons claiming by, through and under Assignee, to the extent assignable, in and to all covenants and warranties by Assignor's predecessors in title and with full subrogation of all rights accruing under the statutes of limitation or prescription under the laws of the State of California and all rights of actions of warranty against all former owners, if any, of each Subject Interest. Any covenants or warranties implied by statute or law by the use of the word ``grant,'' ``transfer,'' or ``convey'' or other similar words in this Assignment are hereby expressly restrained, disclaimed, waived, and negated.

2.3     *Further Disclaimers.*  Assignor and Assignee agree that, to the extent required by applicable law to be operative, the disclaimers of certain warranties contained in this Section 2.3 are ``conspicuous'' disclaimers for the purposes of any applicable law, rule or order.  The Subject Interests are assigned to Assignee without recourse, covenant or warranty of any kind, express, implied or statutory. WITHOUT LIMITING THE GENER-ALITY OF THE IMMEDIATELY PRECEDING SENTENCE, ASSIGNEE SPECIFICALLY AGREES THAT ASSIGNOR IS CONVEYING THE SUBJECT INTERESTS ON AN ``AS-IS, WHERE-IS, WITH ALL FAULTS'' BASIS AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESSED, IMPLIED, AT COMMON LAW, BY STATUTE, OR OTHERWISE (ALL OF WHICH ASSIGNOR HEREBY EXPRESSLY DISCLAIMS AND NEGATES) RELATING TO (a) TITLE, (b) TRANSFERABILITY, (c) ABSENCE OF LATENT DEFECTS, (d) THE CONDITION OF THE SUBJECT INTERESTS (INCLUDING WITHOUT LIMITATION, ANY IMPLED OR EXPRESSED WARRANTY OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS), (e) ANY INFRINGEMENT BY ASSIGNOR OR ANY OF ITS AFFILIATES OF ANY PATENT OR PROPRIETARY RIGHT OF ANY THIRD PARTY OR (f) ANY OTHER MATTER WHATSOEVER. ASSIGNEE EXPRESSLY WAIVES THE PROVISIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT, CHAPTER 17, SUBCHAPTER E, SECTIONS 17.41 THROUGH 17.63, INCLUSIVE (OTHER THAN SECTION 17.555, WHICH IS NOT WAIVED), TEXAS BUSINESS & COMMERCE CODE.

2.4     *Assumption by Assignee.*  Assignee hereby assumes and agrees to perform and discharge all obligations, if any, relating to the Subject Interests, but only to the extent that such obligations are valid, enforceable, and affect the Subject Interests and are attributable to the period after the Effective Time.

PART III
MISCELLANEOUS

3.1     *Further Assurances.*  Assignor and Assignee agree to take all such further actions and to execute, acknowledge, and deliver all such further documents as are necessary or useful in carrying out the

purposes of this Assignment. So long as authorized by applicable law so to do, Assignor agrees to execute, acknowledge, and deliver to Assignee all such other additional instruments, notices, division orders, transfer orders, and other documents and to do all such other and further acts and things as may be necessary or useful to more fully and effectively grant, convey, and assign to Assignee the Subject Interests conveyed hereby or intended so to be.

3.2 *Consents.* If there are prohibitions against or conditions to the assignment of a Subject Interest (or portion thereof) without the prior written consent of third parties (other than consents of a ministerial nature which are normally granted in the ordinary course of business), which, if not satisfied, would result in a breach thereof by Assignor or would give an outside party the right to terminate such Subject Interest (or portion thereof) or, in the case of a Subject Interest carved from an oil, gas, and mineral lease or oil and gas lease, the lease to which such Subject Interest (or portion thereof) is applicable (any such transfer restriction being referred to herein as a ``Restriction''), then notwithstanding any provisions contained in this Assignment to the contrary, the assignment herein granted shall not become effective with respect to such Subject Interest (or portion thereof) unless and until such Restriction is satisfied or waived by the parties thereto. When and if the Restriction relating to such Subject Interest (or portion thereof) is satisfied or waived, the assignment of such Subject Interest (or portion thereof) shall become automatically effective as of the Effective Time, without further action on the part of Assignor; provided, however, that if such Restriction is not satisfied within 21 years after the death of the last to die of all descendants of Theodore H. Roosevelt, late President of the United States of America, who are living on the date this Assignment is executed as reflected hereinbelow, the transfer to Assignee of the Subject Interest (or portion thereof) affected by such Restriction shall be null and void. Assignor agrees to use reasonable efforts to obtain satisfaction of any Restriction.

3.3 *Multiple Counterparts.* This Assignment may be executed in any number of counterparts and/or originals, and each counterpart hereof shall be deemed to be an original instrument, but all such counterparts and/or originals shall constitute but one assignment.

3.4 *Recordation.* To facilitate recording or filing of this Assignment, (a) the counterpart to be recorded in a given county or parish may contain only those portions of Exhibit A that describe property located in such county or parish and (b) each counterpart filed with a federal or state agency or office may contain only those portions of Exhibit A that describe property under the jurisdiction of that agency or office. Assignor and Assignee have each retained a counterpart of this Assignment with a complete Exhibit A.

3.5 *Governmental Assignments.* Separate assignments of certain of the Subject Interests may be executed on officially approved forms by Assignor to Assignee in sufficient counterparts to satisfy applicable statutory and regulatory requirements. Those assignments shall be deemed to contain all of the exceptions, reservations, rights, titles, power and privileges set forth herein as fully as though they were set forth in each such assignment. The interests conveyed by such separate assignments are the same, and not in addition to, the Subject Interests conveyed herein.

3.6 *Governing Law.* The provisions of this Assignment relating specifically to title to real property that, due to applicable law, must be governed by the law of the jurisdiction in which any such real property is located shall be governed by the laws of such jurisdiction. All other provisions of this Assignment shall be governed by and construed in accordance with the laws of the State of California, excluding any conflicts of law rule or principle that might refer same to the laws of another jurisdiction.

3.7 *Exhibits.* All Exhibits attached hereto are hereby made a part hereof for all purposes. References in such Exhibits to instruments on file in the public records are made for all purposes. Unless provided otherwise, all recording references in such Exhibits are to the appropriate records of the counties or parishes in which the applicable properties are located.

3.8 *Headings.* Headings are included in this Assignment for convenience of reference and shall in no way define, limit, extend, or describe the scope or intent of any provision of this Assignment.

3.9     *Successors and Assigns.*  This Assignment shall bind and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

3.10    *Representations and Warranties.*

(a)     Assignor represents and warrants to Assignee that:

(i)     *Existence.*  Assignor is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and is duly qualified and in good standing as a foreign corporation in the State of California.

(ii)    *Power.*  Assignor has the corporate power and authority to enter into and perform this Assignment and the transactions contemplated hereby.  Subject to preferential purchase rights and restrictions on assignment of the type generally found in the oil and gas industry, and to rights to consent by, required notices to, and filings with or other actions by governmental entities, the execution, delivery and performance of this Assignment by Assignor, and the transactions contemplated hereby, will not violate (A) any provision of the charter or bylaws of Assignor, (B) any material agreement or instrument to which Assignor is a party, (C) any judgment, order, ruling, or decree applicable to Assignor as a party in interest, or (D) any law, rule or regulation applicable to Assignor.

(iii)   *Authorization.*  The execution, delivery and performance of this Assignment and the transactions contemplated hereby have been duly and validly authorized by all requisite corporate action on the part of Assignor.  This Assignment has been duly executed and delivered on behalf of Assignor.

(iv)    *Brokers.*  Assignor has incurred no obligation or liability, contingent or otherwise, for brokers' or finders' fees in respect of the matters provided for in this Assignment that will be the responsibility of Assignee; and any such obligation or liability that might exist shall be the sole obligation of Assignor.

(b)     Assignee represents and warrants to Assignor that:

(i)     *Existence.*  Assignee is a corporation duly organized, validly existing, and in good standing under the laws of the State of Colorado and is duly qualified and in good standing as a foreign corporation in the State of California.

(ii)    *Power.*  Assignee has the corporate power and authority to enter into and perform this Assignment and the transactions contemplated hereby.  Subject to rights to consent by, required notices to, and filings with or other actions by governmental entities where the same are customarily obtained subsequent to the assignment of oil and gas interests and leases, the execution, delivery and performance of this Assignment by Assignee, and the transactions contemplated hereby, will not violate (A) any provision of the charter or bylaws of Assignee, (B) any material agreement or instrument to which Assignee is a party, (C) any judgment, order, ruling, or decree applicable to Assignee as a party in interest, or (D) any law, rule or regulation applicable to Assignee.

(iii)   *Authorization.*  The execution, delivery and performance of this Assignment and the transactions contemplated hereby have been duly and validly authorized by all requisite corporate action on the part of Assignee.  This Assignment has been duly executed and delivered on behalf of Assignee.

(iv)    *Brokers.*  Assignee has incurred no obligation or liability, contingent or otherwise, for brokers' or finders' fees in respect of the matters provided for in this Assignment

which will be the responsibility of Assignor; and any such obligation or liability that might exist shall be the sole obligation of Assignee.

(v)    *Further Distribution.*  Assignee is not acquiring the Subject Interests with a view to, or for offer of resale in connection with, a nonexempt distribution thereof within the meaning of the Securities Act of 1933, as amended, and the rules and regulations pertaining to it or a distribution thereof in violation of any applicable Securities laws.  Assignee covenants that if in the future it should decide to dispose of any of its interest in the Subject Interests, it will do so only in compliance with any applicable Federal and State Securities laws.

3.11    *Receipts and Credits.*  All monies, proceeds, receipts, credits and income attributable to the Subject Interests (a) for all periods of time subsequent to the Effective Time, shall be the sole property and entitlement of Assignee, and, to the extent received by Assignor, Assignor shall fully disclose, account for and transmit same to Assignee promptly and (b) for all periods of time prior to the Effective Time, shall be the sole property and entitlement of Assignor and, to the extent received by Assignee, Assignee shall fully disclose, account for and transmit same to Assignor promptly.  Notwithstanding any provision in this Assignment to the contrary, it shall be the responsibility of Assignee to recoup from the disbursing party any monies, proceeds, receipts, credits and income received by Assignor after the 90th day following the date hereof that are attributable to the Subject Interests and to the period following the Effective Time.

3.12    *Tax Matters.*

(a)    *Apportionment of Ad Valorem and Property Taxes.*  All ad valorem taxes, real property taxes, personal property taxes and similar obligations (``*Property Taxes*'') attributable to the Subject Interests with respect to the tax period in which the Effective Time occurs shall be apportioned as of the Effective Time between Assignor and Assignee.  The owner of record on the assessment date shall file or cause to be filed all required reports and returns incident to the Property Taxes and shall pay or cause to be paid to the taxing authorities all Property Taxes relating to the tax period on which the Effective Time occurs.  If Assignor is the owner of record on the assessment date, then Assignee shall pay to Assignor Assignee's pro rata portion of Property Taxes within 30 days after receipt of Assignor's invoice therefor.  If Assignee is the owner of record as of the assessment date then Assignor shall pay to Assignee Assignor's pro rata portion of Property Taxes within 30 days after receipt of Assignee's invoice therefor.

(b)    *Sales Taxes.*  The Purchase Price provided for hereunder excludes any sales taxes or other taxes required to be paid in connection with the sale of the Subject Interests pursuant to this Assignment.  Assignee, however, shall be liable for any sales and use taxes, conveyance, transfer and recording fees and real estate transfer stamps or taxes that may be imposed on any transfer of the Subject Interests pursuant to this Assignment.  Assignor shall, in accordance with applicable law, collect and remit any sales or similar taxes that are required to be paid as a result of the transfer of the Subject Interests by Assignor to Assignee.  If the transfer of the Subject Interests pursuant to this Assignment is exempt from applicable sales or similar taxes, Assignee shall provide Assignor with properly executed exemption certificates or other documentation acceptable under applicable law.

(c)    *Other Taxes.*  All taxes (other than income taxes) attributable to the Subject Interests that are imposed on or with respect to the production of oil, natural gas or other hydrocarbons or minerals or the receipt of proceeds therefrom (including but not limited to severance, production, and excise taxes) shall be apportioned between the parties as of the Effective Time.  All such taxes that have accrued with respect to the period prior to the Effective Time have been or will be properly paid or withheld by Assignor and all statements, returns, and documents pertinent thereto have been or will be properly filed.  Assignee shall be responsible for paying or withholding or causing to be paid or withheld all such taxes that accrue after the Effective Time and for filing all statements, returns, and documents incident thereto.

(d)    *Cooperation.*   Each party to this Assignment shall provide the other party with reasonable access to all relevant documents, data and other information (other than that which is subject to an attorney-client privilege) which may be required by the other party for the purpose of preparing tax returns, filing refund claims and responding to any audit by any taxing jurisdiction. Each party to this Assignment shall cooperate with all reasonable requests of the other party made in connection with contesting the imposition of taxes. Notwithstanding anything to the contrary in this Assignment, neither party to this Assignment shall be required at any time to disclose to the other party any tax return or other confidential tax information. Except where disclosure is required by applicable law or judicial order, any information obtained by a party pursuant to this Section 3.12(d) shall be kept confidential by such party, except to the extent disclosure is required in connection with the filing of any tax returns or claims for refund or in connection with the conduct of an audit, or other proceedings in response to an audit, by a taxing jurisdiction.

(e)    *Indemnification for Tax.*

(i)    Subject to the provisions of Section 3.12(e)(ii), Assignor shall indemnify Assignee for all liabilities that are assessed against Assignee for foreign, federal, state, local or Indian Tribal taxes (other than income taxes) in respect of the ownership of the Subject Interests prior to the Effective Time, together with penalties and interest thereon (provided such penalties and interest do not result from the negligence, late filing, fraud or acts of misfeasance or malfeasance of Assignee), to the extent such liabilities exceed the amounts of such taxes paid by Assignor; provided that Assignor shall be entitled to all refunds or rebates of taxes paid in respect of the ownership of the Subject Interests prior to the Effective Time that may be received by Assignor or Assignee.   Subject to the provisions of Section 3.12(e)(ii), Assignee shall indemnify Assignor for all liabilities which are assessed against Assignor for foreign, federal, state, local or Indian Tribal taxes (other than income taxes), together with penalties and interest thereon (provided such penalties and interest do not result from the negligence, late filing, fraud or acts of misfeasance or malfeasance of Assignor), to the extent such liabilities relate to the ownership of the Subject Interests from and after the Effective Time.

(ii)    In order for Assignor or Assignee (``*Claimant*'') to make a claim against the other (``*Indemnitor*'') under this Section 3.12, Claimant shall give prompt notice to Indemnitor of any liability for which Claimant would claim indemnification under this Section 3.12, which notice shall include the circumstances surrounding such liability. Indemnitor shall then have the right but not the obligation, to contest such liability at its sole cost and expense by giving written notice to Claimant of such election within 30 days after Indemnitor receives Claimant's notice. Should Indemnitor fail to notify Claimant within such 30-day period, Indemnitor shall be deemed to have elected not to contest such liability. Should Indemnitor elect (or be deemed to have elected) not to contest such liability, Indemnitor shall pay the full amount due under Section 3.12(e)(i) in respect of such liability to Claimant in cash within 30 days after Indemnitor elects (or is deemed to have elected) not to contest such liability. Except as specifically provided in this Section 3.12(e)(ii) with respect to certain tax issues which must be combined or joined with other tax issues, if Indemnitor elects to contest any such liability, Claimant shall give Indemnitor full authority to defend, adjust, compromise or settle such liability and any action, suit, or proceeding in which Indemnitor contests such liability, in the name of Claimant or otherwise as Indemnitor shall elect. In any administrative or legal proceeding, Indemnitor shall employ counsel selected by it and reasonably acceptable to Claimant. With respect to tax issues incident to any such liability that must be combined or joined with one or more other tax issues which Claimant desires to contest, Claimant and Indemnitor shall cooperate fully, and control of any administrative legal proceeding shall rest with the party having the greater ultimate liability (including liability under Section 3.12(e)(i) for the taxes in dispute). The party in control may not adjust, compromise or settle taxes which are contested by or on behalf of the other party without the consent of the other party. With respect to any liability contested by Indemnitor under the terms of this Section 3.21(e)(ii), Indemnitor shall pay the full amount due under

Section 3.21(e)(i) in respect of such liability to Claimant in cash within 30 days after the liability is finally determined either by settlement or pursuant to the final unappealable judgment of a court of competent jurisdiction.

3.13   *Indemnification Provisions.*   Assignor and Assignee agree as follows:

(a)      Subject to the terms of Section 3.12, which shall control with respect to the tax matters covered thereby, and subparagraphs (b) and (c) of this Section 3.13, which shall control with respect to the environmental matters covered thereby, (i) Assignee agrees to indemnify, defend and hold harmless Assignor, its directors, officers, employees, agents and representatives (the ``*Assignor Indemnified Parties*'') from and against any and all claims, liabilities, losses, costs and expenses (including, without limitation, court costs and reasonable attorneys' fees, but excluding any amounts reimbursed from third party insurance) (collectively, ``*Losses*'') that are attributable to (A) all liabilities and obligations that are attributable to the ownership or operation of the Subject Interests on or after the date hereof or (B) a breach by Assignee of its representations, warranties, covenants and agreements hereunder, IN EACH CASE WITHOUT REGARD TO THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE OF THE ASSIGNOR INDEMNIFIED PARTIES, and (ii) Assignor agrees to indemnify, defend and hold harmless Assignee, its directors, officers, employees, agents and representatives (the ``*Assignee Indemnified Parties*'') from and against any and all Losses that are attributable to (A) a breach by Assignor of its representations, warranties, covenants and agreements hereunder or (B) the ownership or operation of the Subject Interests before the date hereof, IN EACH CASE WITHOUT REGARD TO THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE OF THE ASSIGNEE INDEMNIFIED PARTIES.

(b)      Assignee agrees and acknowledges that (i) it has had access to and the opportunity to inspect the Subject Interests for all purposes, including without limitation, for the purposes of detecting the presence of hazardous substances, environmental hazards or naturally occurring radioactive material (NORM) and produced water contamination of the surface and/or subsurface, (ii) it has satisfied itself as to the physical and environmental condition of the Subject Interests, both surface and subsurface, and their method of operation and agrees to accept this assignment of the Subject Interests on an ``AS IS, WHERE IS'' basis, ``WITH ALL FAULTS'' and (iii) in making the decision to enter in this Assignment and consummate the transactions contemplated hereby, Assignee has relied solely on the basis of its own independent investigation of the Subject Interests and records related thereto (including the Environmental Reports (as defined below)) and the representations, warranties and covenants in this Assignment and it is aware that Grayson Service, Inc., Schaefer Oil Company, Ancora-Verde Corporation and Pacific Inland Oil and Gas, Inc. are operating on separate portions of the Subject Interests. Accordingly, Assignee further acknowledges that with respect to any tests, evaluations or reports that have been conducted or prepared by or on behalf of Assignor or others pertaining to the environmental condition or operation of the Subject Interests (the ``*Environmental Reports*''), copies of which have been furnished or made available to Assignee, Assignor EXPRESSLY DISCLAIMS AND NEGATES ANY REPRESENTATION OR WARRANTY RESPECTING THE ACCURACY OR THOROUGHNESS THEREOF AND DISCLAIMS ANY LIABILITY IN CONNECTION THEREWITH. Assignee further acknowledges that it has reviewed, examined and thoroughly familiarized itself with the contents of the Environmental Reports.

(c)      Assignee hereby assumes and shall be responsible for and agrees to indemnify, defend and hold harmless the Assignor Indemnified Parties from and against any and all Losses attributable to damage to property, injury to or death of persons or other living things, natural resource damages, CERCLA response costs, environmental remediation and restoration costs, or fines or penalties (collectively, ``*Claims*'') arising out of or attributable to, in whole or in part, either directly or indirectly, the condition or operation of the Subject Interests at any time before, at or after the date hereof (including, without limitation, any Claims relating to any condition existing on, in or under, or resulting from the operation of, the Subject Interests as of the date hereof) that is the result of a violation of, failure to fulfill duties imposed by or incurrence of liability under, any Environmental Laws (as

defined below and as in effect on the date hereof) or under any principle of common law relating to duties to protect or not unduly disturb human health or environmental quality (any such Claim being referred to herein as an ``*Environmental Claim*''), WITHOUT REGARD TO THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE OF THE ASSIGNOR INDEMNIFIED PARTIES.

(d)     As used herein, the term ``*Environmental Laws*'' shall mean any and all laws, statutes, regulations, rules, orders, ordinances, permits or determinations of any governmental authority pertaining to health or the environment in effect in any and all jurisdictions in which the Subject Interests are located, including, without limitation, the Clean Air Act, as amended, the Federal Water Pollution Control Act, as amended, the Rivers and Harbors Act of 1899, as amended, the Safe Drinking Water Act, as amended, the Comprehensive Environmental Response, Compensation and Liability Act (``*CERCLA*''), as amended, the Superfund Amendments and Reauthorization Act of 1986 (SARA), as amended, the Resource Conservation and Recovery Act (RCRA), as amended, The Hazardous and Solid Waste Amendments Act of 1984, as amended, the Toxic Substances Control Act, as amended, the Occupational Safety and Health Act (OSHA), as amended, the Hazardous Materials Transportation Act, as amended, and other federal, state and local laws whose purpose is to conserve or protect health, the environment, wildlife or natural resources.

3.14     *Notices.*  Any notice provided or permitted to be given under this Assignment shall be in writing, and may be served by personal delivery or by depositing same in the mail, addressed to the party to be notified, postage prepaid, and registered or certified with a return receipt requested.  Notice deposited in the mail in the manner hereinabove described shall be deemed to have been given and received on the date of the delivery as shown on the return receipt.  Notice served in any other manner shall be deemed to have been given and received only if and when actually received by the addressee.  For purposes of notice, the addresses of the parties shall be as set forth in the first paragraph of this Assignment; provided, however, that each party shall have the right, upon giving 10 days' prior notice to the other in the manner provided above, to change its address for notice purposes.

3.15     In the event any court invalidates any provision of this Assignment, all other provisions shall remain binding and in full force and effect with respect to the parties hereto.

EXECUTED in the presence of the undersigned witnesses on the 10th day of January, 1996, to be effective for all purposes as of the Effective Time.

ASSIGNOR:

ATLANTIC RICHFIELD COMPANY

By: _____
            David G. Peterson
            Attorney-In-Fact

ASSIGNEE:

CRIMSON RESOURCE MANAGEMENT CORP.

By: _____
            John Grier
            President

STATE OF CALIFORNIA                §

COUNTY OF KERN                     §

On the 16th day of January, 1996 before me, *PAULA RENEE KINZEL*, personally appeared David G. Peterson, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

My commission expires   4-14-97

*Paula Renee Kinzel*
Notary Public, State of California

PAULA RENEE KINZEL
COMM. #991612
NOTARY PUBLIC • CALIFORNIA
KERN COUNTY
My Comm. Expires Apr. 14, 1997

Colorado
STATE OF ~~CALIFORNIA~~              §

city + COUNTY OF ~~KERN~~ Denver       §

On the 18th day of January, 1996, before me, *Teena L. Lacy*, personally appeared John Grier, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

NOTARY PUBLIC
TEENA L.
LACY
STATE OF COLORADO

My commission expires   9/23/98

*Teena L. Lacy*
Notary Public, State of ~~California~~
Colorado

STATE: California
COUNTY: Kern

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995, by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee).

EXHIBIT "A"

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO- |
|---|---|---|---|---|---|---|---|
| 04-029-050042-016 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 09/30/88 | 6183 | 1272 | **T.28S-R27E MD&M** (Parcel One) Section 11: E/2 SW/4 SW/4; EXCEPTING THEREFROM that portion of the parcel conveyed by Kern County Land Company TO J.B. Crocker and S.E. Crocker, his wife, by deed dated February 28, 1913, and recorded in the office of the County Recorder of Kern County, California, on March 12, 1913 in Deeds, Book 225 at page 153, which lies within the E/2 SW/4 SW/4 of said Section 11, and ALSO EXCEPTING Therefrom that portion of said E/2 SW/4 SW/4 lying easterly of the easterly line of the Southern Pacific Main Line right of way; (Parcel Two) Section 11: E/2 W/2 SW/4 SW/4 EXCEPTING THEREFROM that parcel conveyed by Kern County Land Company to Pierre Davin by deed dated October 9, 1933, and recorded in the office of the County Recorder of Kern County, California, on November 27, 1933 in Book 482 of Official Records at Page 478, and ALSO EXCEPT-ING THEREFROM that portion of SW/4 SW/4 conveyed by Kern County Land Company to the State of California by deed dated February 18, 1947 and recorded in the office of the County Recorder of Kern County, California, on April 24, 1947, in Book 1341 of Official Records at Page 247. | 04-039-000308-FEE Oil and Gas Lease dated July 9, 1964 by and between Kern County Land Company, Lessor, and Casey & Montgomery, Lessee, as amended, Memorandum recorded in Book 3884, Page 407. AR-084669 Purchase and Sale Agreement dated October 7, 1988 by and between Tenneco, Inc., as Seller, and Atlantic Richfield Company, as Buyer; Assignment and Conveyance dated November 18, 1988 by and between Tenneco West, Inc., as Assignor and Tenneco Oil Company, Assignee; Assignment and Conveyance by and between Tenneco Oil Company, Assignor, and TOC-Pacific Coast, Inc. Assignee; Certificate of Merger dated November 28, 1988 from TOC-Pacific Coast, Inc. into Atlantic Richfield Company, all effective June 30, 1988. |

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995, by and between Atlantic Richfield Company (Assignor) and Crimson Resources Management Corp. (Assignee).

STATE: California
COUNTY: Kern

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-029-080042-030 04-029-080042-036 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 05/30/88 | 6183 | 1272 | T29S-R27E, MDB&M Section 15: S/2 Lot 29: Section 22: W/2 SE/4 NW/4 NE/4, W/2 E/2 SE/4 NW/4 NE/4, SW/4 NW/4 NE/4, W/2 SW/4 NE/4, SE/4 NE/4 NW/4.  T29S-R27E, MDB&M Section 22: W/2 E/2 NE/4 NW/4, W/2 NE/4 NE/4 NW/4, E/2 NW/4 NE/4 NW/4, and that portion of W/2 NW/4 NE/4 NW/4 lying East of the East line of Lot 1. | 04-029-00012-FEE Oil and Gas Lease dated October 30, 1955, between Kern County Land Company, Lessor, and Harold Green & Fruitvale Associates, Lessee, as amended, ratified, and reinstated. Memorandum recorded in Book 2509, Page 326. AR-084689 AR-092926 Produced Water Disposal License Agreement dated November 28, 1984 by and between Tenneco West, Inc., Owner, and Amoco-Verde Corporation, Licensee, recorded in Book 6055, Page 2427. AR-092928 Produced Water Disposal License Agreement dated January 15, 1986 by and between Tenneco West, Inc., Owner, and Amoco-Verde Corporation, Licensee. Unnumbered Contract #8 Agreement to Commingle Production dated January 22, 1970, by and between Kern County Land Company, Lessor, and Amoco-Verde Corporation, Lessee.  04-029-00012-FEE Oil and Gas Lease dated October 30, 1955, between Kern County Land Company, Lessor, and Harold Green et al., Lessee, as amended, ratified, and reinstated. Memorandum recorded in Book 2509, Page 333. AR-084689 AR-092926 AR-092928 Unnumbered Contract #8 |

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995,
by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee).

STATE:   California
COUNTY: Kern

| ARCO MINERAL FILENUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-029-080042-026 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | T-28S-R27E, MDB&M<br>Section 22: W/2 NE/4 NW/4 NE/4,<br>NW/4 NW/4 NE/4,<br>E/2 E/2 NE/4 NW/4,<br>NE/4 SE/4 NW/4. | 04-029-000326-FEE<br>Oil and Gas Lease dated October 20, 1955 by and<br>between Kern County Land Company, Lessor,<br>and Cambria Company, Lessee, as amended,<br>ratified, and reinstated. Memorandum recorded<br>in Book 2509, Page 312. |
| 04-029-080042-020<br>04-029-080043-026 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | T-28S-R27E, MDB&M<br>Section 15: The North Half (N/2) of Lot 29,<br>and the South Half (S/2) of Lot 30;<br><br>Section 22: E/2 NE/4 NW/4 NE/4,<br>W/2 W/2 NW/4 NE/4 NE/4,<br>SW/4 NE/4 NE/4,<br>E/2 E/2 SE/4 NW/4 NE/4. | AR-084669<br>AR-092936<br>AR-092938<br>Unnumbered Contract #8<br><br>04-029-000327-FEE<br>Oil and Gas Lease dated October 20, 1955 by and<br>between Kern County Land Company, Lessor,<br>and Valley Development Company, Lessee, as<br>amended, ratified, and reinstated. Memorandum<br>recorded in Book 2824, Page 439.<br><br>AR-084669<br>AR-092936<br>AR-092938 |
| 04-029-080042-020 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | T-28S-R27E, MDB&M<br>Section 15: The North Half (N/2) of Lot 10<br>and the North Half (N/2) of Lot 11. | 04-029-000328-FEE<br>Oil and Gas Lease dated October 20, 1955 by and<br>between Kern County Land Company, Lessor,<br>and Kern Producers Inc., Lessee, Memorandum<br>recorded in Book 2509, Page 318.<br><br>AR-084669 |

Page 3

STATE: California
COUNTY: Kern

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995,
by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee).

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-029-080042-030 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | **T29S-R27E, MDB&M**<br>Section 15: NE/4 NE/4 SW/4, NE/4 SW/4 SE/4, SW/4 SE/4 SE/4. | **04-029-000601-FEE**<br>Oil and Gas Lease dated December 29, 1972 by and between Tenneco West Inc., Lessor, and Tenneco Oil Company, Lessee, as amended. Memorandum recorded in Book 5735, Page 501.<br><br>AR-084669<br>AR-092928<br>AR-092928<br><br>**04-029-000606-FEE**<br>Oil and Gas Lease dated May 7, 1973 by and between Tenneco West Inc., Lessor, and Supreme Oil and Gas Corporation, Lessee, Memorandum recorded in Book 5777, Page 1135.<br><br>AR-084669<br><br>AR-092215<br>License Agreement dated June 29, 1982 by and between Tenneco West, Inc., Owner, and Central Lease, Inc., Licensee.<br><br>AR-092605<br>License Agreement dated March 5, 1984 by and between Tenneco West, Inc., Owner, and Central Lease, Inc., Licensee.<br><br>**Unnumbered Contract #6**<br>Quit Claim dated March 13, 1959 by and between Kern County Land Company, Grantor, and Stockdale Development Company, Grantee, recorded in Book 4250, Page 782, and re-recorded in Book 4251, Page 402. |
| 04-029-080042-030 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | | **T29S-R27E, MDB&M**<br>Section 22: NW/4 NW/4 SE/4, E/2 NW/4 SE/4. | |

STATE:  California
COUNTY: Kern

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995,
by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee),

EXHIBIT "A"

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-099-080018-032 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 05/20/88 | 6183 | 1272 | T29S R27E MDB&M Section 29: NW/4 SW/4 NE/4, SE/4 SW/4 NE/4. | 04-028-061837-FEE Oil and Gas Lease dated September 1, 1977 by and between Tenneco West Inc., Lessor, and Tenneco Oil Company, Lessee, as amended. Memorandum recorded in Book 5066 Page 1281. |
| | | | | | | | AR-084669 |
| | | | | | | | AR-092864 License Agreement dated May 30, 1979 by and between Tenneco West, Inc., Owner, and Gary Drilling Company, Licensee. |
| | | | | | | | Unnumbered Contract #1 Assignment of Oil and Gas Lease dated September 1, 1977 by and between Tenneco Oil Company, Assignor, and Gary Drilling Company, Inc., Assignee, recorded in Book 5061, Page 607. |
| | | | | | | | Unnumbered Contract #2 Grant Deed dated May 31, 1946 by and between Kern County Land Company, Owner, and Pacific Gas and Electric Company, Grantee, recorded in Book 1335, Page 143. |

Page 5

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995,
by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee).

STATE: California
COUNTY: Kern

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-029-080048-032 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | **T29S-R27E, MDB&M**<br>Section 29: SW/4 NW/4 NE/4, NE/4 SW/4 NE/4. | **04-029-081647-FEE**<br>Oil and Gas Lease dated February 2, 1978 by and between Tenneco West Inc., Lessor, and Tenneco Oil Company, Lessee, as amended. Memorandum recorded in Book 5092, Page 435.<br><br>AR-084660<br>AR-092864<br>Unnumbered Contract #2 |
| 04-029-080048-035 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | **T29S-R27E, MDB&M**<br>Section 21: All of Lots 5 and 6, E/2 Lot 7. | **Unnumbered Contract #3**<br>Assignment of Oil and Gas Lease dated February 20, 1978 by and between Tenneco Oil Company, Assignor, and Gary Drilling Company, Assignee, recorded in book 5093, page 1485.<br><br>**04-029-094266-FEE**<br>Section 21: All of Lots 5 and 6, E/2 Lot 7.<br>Oil and Gas Lease dated July 24, 1978 by and between Tenneco West Inc., Lessor, and Tenneco Oil Company, Lessee, as may have been amended. Memorandum recorded in Book 5148, Page 1002.<br><br>AR-084669<br>AR-092840<br>AR-093888<br>Unnumbered Contract #7 |

Page 6

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance and Conveyance dated effective as of January 1, 1995, by and between Atlantic Richfield Company (Assignor) and Crimson Resources Management Corp. (Assignee).

STATE:   California
COUNTY: Kern

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-039-080042-032 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 05/30/88 | 6183 | 1272 | T28S-R17E, MDB&M Section 29: W/2 NE/4 NE/4, E/2 NW/4 NE/4. | 04-039-084248-FEE Oil and Gas Lease dated September 13, 1978 by and between Tenneco West Inc., Lessor, and Tenneco Oil Company, Lessee, as amended. Memorandum recorded in Book 5182, Page 2033. |
| | | | | | | | AR-084669 |
| | | | | | | | AR-084664 |
| | | | | | | | AR-092896 License Agreement dated April 26, 1983 by and between Tenneco West, Inc., Owner, and Petro-Lewis Corporation et al, Licensees. |
| | | | | | | | Unnumbered Contract #2 |
| | | | | | | | Unnumbered Contract #4 Assignment of Oil & Gas Lease dated September 13, 1978 by and between Tenneco Oil Company, Assignor and Gary Drilling Company, Assignee. Memorandum recorded in Book 5182, Page 2038. |

Page 7

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995,
by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee).

STATE:   California
COUNTY: Kern

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-029-080042-027 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | 04-029-00004b-FEE Section 23: SW/4 NW/4 NW/4. T29S R27E MDB&M | 04-029-00004b-FEE Oil and Gas Lease dated May 28, 1986 by and between Kern County Land Company, Lessor, and Mohawk Petroleum Company, Lessee, Memorandum recorded in Book 648, Page 193. |
| | | | | | | | AR-084669 |
| | | | | | | | Unnumbered Contract #9 Agreement to Modify Lease effective February 9, 1990 by and between Atlantic Richfield Company and Schaefer Oil Company. |
| | | | | | | | Unnumbered Contract #19 Agreement to Commingle Production dated effective September 21, 1971 by and between Tenneco West, Inc. Owner, and Signal Oil and Gas Company, Operator. |
| | | | | | | | 04-029-00012S5-FEE Oil and Gas Lease dated July 16, 1951 by and between Kern County Land Company, Lessor, and the Drilling Materials Company, Lessee, recorded in Book 1910, Page 212. |
| | | | | | | | AR-084669 Unnumbered Contract #19 |
| | | | | | | | Unnumbered Contract #20 Agreement to Modify Lease effective February 9, 1990 by and between Atlantic Richfield Company and Schaefer Oil Company. |

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995, by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee).

STATE: California
COUNTY: Kern

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-029-080000-141 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | 04-029-000537-FEE Oil and Gas Lease dated May 7, 1965 by and between Kern County Land Company, Lessor, and Standard Oil Company of California, Lessee, as amended. Memorandum recorded in Book 3848, Page 36.<br><br>T39S.R28E. MDB&M Section 2: NE/4 SW/4 SE/4, SW/4 SE/4 SE/4, As to all depths;<br><br>Section 2: SE/4 NE/4 NE/4, SW/4 NE/4 SE/4, NW/4 SE/4 SE/4. Limited in depth from 3,350 feet to 3,800 feet subsurface. | 04-029-000537-FEE Oil and Gas Lease dated May 7, 1965 by and between Kern County Land Company, Lessor, and Standard Oil Company of California, Lessee, as amended. Memorandum recorded in Book 3848, Page 36.<br><br>AR-084669<br>AR-092228<br>Produced Water Disposal System License Agreement dated October 26, 1981 by and between Tenneco West, Inc., Owner, and Chevron U.S.A. Inc., Licensee.<br>AR-102311 |
| 04-029-080000-140 04-029-080000-162 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | T39S.R28E. MDB&M Section 1: SE/4 SW/4 NE/4, E/2 SE/4 NE/4 SW/4 SE/4, SE/4 NW/4 SE/4, NE/4 SW/4 SE/4, S/2 SW/4 SE/4.<br><br>T29S.R27E. MDB&M Section 6: W/2 SW/4 NW/4. | Unnumbered Contract #17 Letter Agreement dated September 30, 1991 by and between Pacific Inland Oil and Gas Company and between Kern County Land Company, Lessor, and ARCO Oil and Gas Company, as may have been amended.<br><br>04-029-000475-FEE Oil and Gas Lease dated January 19, 1962 by and between Kern County Land Company, Lessor, and Standard Oil Company of California, Lessee, as amended. Memorandum recorded in Book 3463, Page 600.<br>AR-084659<br>AR-092228<br>AR-102311<br>Unnumbered Contract #17 |

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995, by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee).

STATE: California
COUNTY: Kern

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-0295-080000-140<br>04-0295-080000-141 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/20/88 | 6183 | 1272 | **T29S-R28E, MDB&M**<br>Section 1: N/2 NW/4 NE/4, N/2 N/2 NW/4,<br><br>Section 2: N/2 NE/4 NE/4,<br><br>As to all depths:<br><br>**T29S-R28E, MDB&M**<br>Section 1: S/2 NW/4 NW/4, SW/4 NW/4,<br><br>Section 2: E/2 SE/4 SE/4, SE/4 NE/4 SE/4,<br>N/2 NE/4 SE/4, SE/4 NE/4,<br>SW/4 NE/4 NE/4,<br><br>Limited in depth from surface to 3,800 feet subsurface: | 04-028-103583-FEE<br>Oil and Gas Lease dated June 18, 1985 by and<br>between Tenneco West Inc., Lessor, and Tenneco<br>Oil Company, Lessee, as amended. Memorandum<br>recorded in Book 5767, Page 252.<br><br>AR-084689<br><br>AR-102305<br>Produced Water Disposal License Agreement<br>dated April 13, 1993 by and between Atlantic<br>Richfield Company, Owner, and Nahama &<br>Wesgant Energy Company, et al, Licensees.<br><br>AR-102311 |

Page 10

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995,
by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee).

STATE: California
COUNTY: Kern

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-029-080000-142 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 08/30/88 | 6183 | 1272 | T29S-R26E, MDBM Section 3: W/2 SE/4 NW/4 SW/4, SE/4 SE/4 NW/4 SW/4, S/2 NW/4 NW/4 SW/4, NW/4 NE/4 NW/4 SW/4, SW/4 NW/4 SW/4, NE/4 SW/4 SW/4, E/2 NW/4 SW/4 SW/4. | 04-029-000063-FEE Lease dated January 13, 1968 by and between Kern County Land Company, Lessor, and Standard Oil Company of California, Lessee, Memorandum recorded in Book 4136, Page 353. AR-084659 |
| 04-029-080000-142 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 08/30/88 | 6183 | 1272 | T29S-R26E, MDBM Section 3: S/2 S/2 NW/4 SW/4, N/2 N/2 NW/4 SW/4. | AR-082852 License Agreement, dated November 7, 1979 by and between Tenneco West, Inc., Owner, and Chevron U.S.A., Inc., Licensee, recorded in Book 5388, Page 1085. AR-102311 Joint Venture Agreement dated April 1, 1993 by and between Atlantic Richfield Company and Eastern Virginia Gas Company Joint Venture, Inc., Texaco Exploration and Production, Inc. and Julius Challenger, Inc. 04-029-103801-FEE Lease dated July 15, 1985 by and between Tenneco West, Inc., Lessor, and Tenneco Oil Company, Lessee, Memorandum recorded in Book 5789, Page 242. AR-084659 AR-102311 |

Page 11

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyances dated effective as of January 1, 1995,
by and between Atlantic Richfield Company (Assignor) and Crimson Resources Management Corp. (Assignee).

STATE:  California
COUNTY: Kern

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-029-080042-062<br>04-029-080042-063 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | **T30S-R28E, MDB&M**<br>Section 13: S/2 NW/4, SW/4 NE/4, NW/4 SE/4, N/2 SW/4, SW/4 SW/4, N/2 SE/4 SW/4;<br><br>Less and except N/2 SW/4 NW/4, SE/4 SW/4 NW/4 from 9260 feet to 9660 feet subsurface;<br><br>Section 14: S/2 NE/4, SE/4;<br><br>Less and except NE/4 SE/4 NE/4, SW/4 SE/4 NE/4, NW/4 NE/4 SE/4 from 9250 feet to 9560 feet subsurface;<br><br>Also less and except NW/4 SW/4 NE/4, NW/4 NW/4 SE/4 NE/4, NE/4 SW/4 NE/4, N/2 SE/4 SW/4 NE/4, SW/4 SW/4 NE/4, and SW/4 SW/4 NE/4 from 5270 feet to 6000 feet subsurface. | **04-029-000046-FEE**<br>Oil and Gas Lease dated August 7, 1936 by and between Kern County Land Company, Lessor, and The Ohio Oil Company, Lessee, as amended, Memorandum recorded in Book 552, Page 485.<br><br>AR-083669<br>AR-083360<br>Canal Unit Agreement dated April 10, 1941, as amended, recorded in Book 1037, Page 443.<br><br>AR-102311<br>**Unnumbered Contract #18**<br>Grant Deed dated July 15, 1988 by and between Tenneco West, Inc., Grantor, and The State of California, Grantee, recorded in Book 6183, Page 1098. |
| 04-029-080042-060<br>04-029-080042-062<br>04-029-080042-063<br>04-029-080042-064 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | **T30S-R26E, MDB&M**<br>Section 11: S/2 S/2 SE/4;<br><br>Section 13: NW/4, NW/4, W/2 NW/4, SE/4 NE/4 NW/4;<br><br>Section 14: N/2 NE/4, E/2 W/2, S/2 NW/4 NW/4, SW/4 NW/4, NE/4 NW/4 NW/4, NW/4 SW/4, NE/4 SW/4 NW/4;<br><br>Less and except S/2 N/2 NW/4, NW/4 SW/4 from the surface to 4772 feet subsurface.<br><br>Section 15: NE/4 SE/4 NE/4, S/2 SE/4 NE/4, N/2 NE/4 SE/4, SE/4 NE/4 SE/4. | **04-029-000053-FEE**<br>Oil and Gas Lease dated 2-8-37 between Kern County Land Company, Lessor, and Shell Oil Company, Lessee, as amended, Memorandum recorded in Book 638, Page 276.<br><br>AR-084669<br>AR-083360<br>AR-102311<br>Unnumbered Contract #18 |

Page 12

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995,
by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee).

STATE: California
COUNTY: Kern

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-029-080042-063 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | T30S-R26E, MDB&M Section 14: S/2 N/2 NW/4, S/2 NW/4, NW/4 SW/4; Limited in depth from the surface to 4772 feet subsurface. | 04-029-14321B-FEE Oil and Gas Lease dated June 29, 1988 by and between Tennco West, Inc., Lessor, and Tennco Oil Company, Lessee, Memorandum recorded in Book 6187, Page 129.

AR-084689
AR-102311
Unnumbered Contract #18 |
| 04-029-080042-058 | Tennco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | T30S-R26E, MDB&M Section 9: E/2 NE/4 NE/4. | 04-029-14321A-FEE Oil and Gas Lease dated September 1, 1989 by and between Atlantic Richfield Company, Lessor, and McFarland Energy, Inc., Lessee, as amended, Memorandum recorded in Book 6342, Page 1880.

AR-084689
Unnumbered Contract #18 |

EXHIBIT "A"

Attached to and made a part of that certain Mineral Deed, Assignment and Conveyance dated effective as of January 1, 1995,
by and between Atlantic Richfield Company (Assignor) and Crimson Resource Management Corp. (Assignee).

STATE:  California
COUNTY: Kern

| ARCO MINERAL FILE NUMBER | GRANTOR | GRANTEE | DEED DATE | BOOK | PAGE | DESCRIPTION OF LANDS | SUBJECT TO: |
|---|---|---|---|---|---|---|---|
| 04-029-080042-062<br>01-029-080042-063 | Tenneco Oil Company | TOC-Pacific Coast, Inc. | 06/30/88 | 6183 | 1272 | T30S-R28E, MDB&M<br>Section 13: N/2 SW/4 NW/4, SE/4 SW/4 NW/4;<br>Section 14: NE/4 SE/4 NE/4, SW/4 SE/4 NE/4,<br>NW/4 NE/4 SE/4;<br><br>Limited in depth from 9250 feet to 9550 feet subsurface.<br><br>Section 14: NW/4 SW/4 NE/4,<br>NW/4 NW/4 SE/4 NE/4,<br>NE/4 NW/4 NE/4,<br>N/2 SE/4 SW/4 NE/4,<br>SW/4 SE/4 SW/4 NE/4,<br>SW/4 SW/4 NE/4;<br><br>Limited in depth from 5370 feet to 6000 feet subsurface. | 04-029-100626-FEE<br>Oil and Gas Lease dated January 6, 1965 by and between Kern County Land Company, Lessor, and Standard Oil Company of California, Lessee, Memorandum recorded in Book 3853, Page 535.<br><br>AR-084669<br>AR-102311<br>Unnumbered Contract #18 |

STATEMENT OF TAX DUE UNDER PROVISIONS OF THE
DOCUMENTARY TRANSFER TAX ACT

AND

REQUEST THAT AMOUNT OF TAX DUE NOT BE MADE A PART OF THE PERMANENT RECORD

TO:    JAMES W. MAPLES, ASSESSOR-
       Kern County          RECORDER

Coding
Stamp

The tax due pursuant to the provisions of the Documentary Transfer Tax Act on the

deed, transfer, or conveyance from _Atlantic Richfield Company_
                                   Name of Grantor(s) or Lessor(s)

To _Crimson Resource Management Corp_
              Name of Grantee(s) or Lessee(s)

of the following briefly described real property: _T-29-S R-27-E_

amounts to $ _55.00_    Computed on full value, or

                        Computed on full value less liens and
                        encumbrances                              [X]

Date: _8-12-96_

                                        _____
                                              Signature

After the permanent record is made, a copy of this document will be attached to the
conveying document and returned to the party entitled thereto.  This document will
be placed on file for auditing purposes.