**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAYSON SERVICE, INC., <br><br> Plaintiff, <br><br> v. <br><br> CRIMSON RESOURCE MANAGEMENT CORP., <br><br> Defendant. | Case No. 1:14-cv-01125-SAB <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIS ACTION FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM <br><br> (ECF Nos. 79, 80, 82) |

**I.**

**INTRODUCTION**

Plaintiff filed this action on June 17, 2014. After the Court granted Defendants' third motion to dismiss, Plaintiff filed a third amended complaint against Defendant Crimson on November 11, 2015. (ECF No. 73.) Defendant filed the instant motion to dismiss on December 23, 2015. (ECF No. 79.) Plaintiff filed an opposition on January 20, 2016. (ECF No. 80.) Defendant filed a reply on January 27, 2016. (ECF No. 82.)

Oral argument on the motion to dismiss was heard on February 3, 2016. Counsel Douglas Mahaffey appeared telephonically for Plaintiff. Counsel Ericka Houck Englert appeared for Defendant Crimson. Having considered the moving, opposition, and reply papers, the declarations and exhibits attached thereto, arguments presented at the February 3, 2016

1

1  hearing, as well as the Court's file, the Court issues the following order.

## II.

## MOTION TO DISMISS LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. A jurisdictional attack under Rule 12(b)(1) may be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack challenges the allegations in the complaint, asserting they are insufficient to invoke federal jurisdiction. Safe Air for Everyone, 373 F.3d at 1039. A factual attack challenges truth of the allegations that would otherwise invoke federal jurisdiction. Id. "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (1989).

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued

litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Starr, 652 F.3d at 1216.

### III.

### DISCUSSION

Defendant moves to dismiss this action contending that subject matter jurisdiction does not exist based upon lack of diversity; and Plaintiff has failed to allege facts to show that Cal Royalty is an alter ego of Defendant Crimson.[1]

**A.   Subject Matter Jurisdiction**

The first question to be asked in federal court jurisprudence is: does this court have jurisdiction to decide the matter.[2] Here, plaintiff asserts jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. (Third Am. Compl. ¶ 1, ECF No 73.) Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. U.S. v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000). As relevant here, district courts have original jurisdiction of all civil actions between citizens of different States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). This requires complete diversity of citizenship and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted).

In this action, the Court previously found that Cal Royal was an indispensable party and

---

[1] While Defendant also brings this motion to dismiss for failure to join an indispensable party, the Court finds that the motion is appropriately addressed as a motion for failure to state a claim under Rule 12(b)(6). The Court has previously determined that Cal Royalty is an indispensable party in this action. (ECF No. 78.) However, in the prior motion neither party addressed how the alter ego allegations would affect the indispensable party analysis or the citizenship of Defendant Crimson. These are the issues the Court finds must be addressed herein.

[2]   Initially, the Court rejects Plaintiff's argument that the Court should exercise its discretion and deny the motion to dismiss due to the piecemeal motions to dismiss that have been filed by Defendant. Every federal court has a special obligation to ensure that it has jurisdiction over an action. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998). The Federal Rules of Civil Procedure provide that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12 (h)(3). Subject matter jurisdiction may be raised at any time that the action is pending, even on appeal. Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002); City of S. Pasadena v. Mineta, 284 F.3d 1154, 1157 (9th Cir. 2002). Defendant has properly raised subject matter jurisdiction during the pendency of this action.

3

therefore, must be included in the case. (Order Granting in Part Defs.' Mot. To Dismiss and Dismissing Cal Royalty, ECF No. 72.) As the Court determined that Cal Royalty, who is the party to the contract at issue in this action,[3] is a citizen of California, diversity of citizenship did not exist and Cal Royalty was dismissed from this action. (Id.) Plaintiff has now filed a third amended complaint against Defendant Crimson alleging alter ego liability.

The parties do not dispute that this Court previously held that Cal Royalty is a citizen of California and hence diversity jurisdiction does not exist since Plaintiff is also a citizen of California. In response to the motion, Plaintiff contends that diversity jurisdiction nevertheless exists because the Court should apply the alter ego theory of liability to impute, not the residence of the indispensable subsidiary, but the residence of the parent, Defendant Crimson. Since Defendant Crimson is a Colorado resident, under this view, complete diversity would exist.

Defendant argues that where a party is bringing an action on the theory that an entity is an alter ego, the citizenship of the entities merge, and therefore, Defendant Crimson would take on the citizenship of Cal Royalty (hereafter "the attribution rule"). Defendant contends that since Cal Royalty is a citizen of California, Defendant is also a citizen of California based on the allegations of alter ego. Under this analysis both Plaintiff and Defendant are citizens of California so diversity of citizenship does not exist and this action must be dismissed.

Plaintiff urges this Court to find that the citizenship of Cal Royal should be disregarded when considering the alter ego theory of liability. Plaintiff argues that because the third amended complaint alleges conduct of Defendant Crimson, the alter ego allegations "remove the fictional basis for the destruction of diversity." (Opp. to Mot. To Dismiss 7, ECF No. 80.) Plaintiff contends that it is seeking relief against Defendant Crimson, and therefore, the citizenship of Cal Royalty is not to be considered.

The issue to be addressed here is whether this Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332 since it was previously found that the California

---

[3] While Plaintiff alleges in the third amended complaint that the contract transferring Defendant Crimson's interest in the Ohio Lease to Cal Royalty is null and void, the Court is not bound to accept as true legal conclusions couched as factual allegations. Twombly, 550 U.S. at 555.

resident, Cal Royal, was an indispensable party to the action. In deciding whether Defendant Crimson should be attributed with the citizenship of its subsidiary, Cal Royalty, the analysis must start by considering those opinions in which courts have addressed whether the citizenship of a subsidiary can be imputed to the parent for purposes of determining diversity of citizenship. See Danjaq, S.A. v. Pathe Communications Corp., 979 F.2d 772, 775 (9th Cir. 1992); Schwartz v. Electronic Data Sys., Inc., 913 F.2d 279 (6th Cir.1990); Freeman v. Northwest Acceptance Corp., 754 F.2d 553 (5th Cir.1985); Burnside v. Sanders Ass'n, Inc., 507 F.Supp. 165, 166 (N.D.Tex.1980), aff'd, 643 F.2d 389 (5th Cir.1981)). The general rule derived from these cases is that "in a suit involving a subsidiary corporation, the court looks to the state of incorporation and principal place of business of the subsidiary, and not its parent." Danjaq, 979 F.2d at 775 (citing 1 James W. Moore et al., Moore's Federal Practice ¶ 0.77[2.–5] (2d ed. 1992); see also Schwartz, 913 F.2d at 283 (every court of appeals to consider the issue has reached the conclusion that "[w]hen formal separation is maintained between a corporate parent and its corporate subsidiary, federal court jurisdiction over the subsidiary is determined by that corporation's citizenship, not the citizenship of the parent); U.S.I. Properties Corp. v. M.D. Constr. Co., 860 F.2d 1 (1st Cir.1988), cert. denied, 490 U.S. 1065 (1989) ("subsidiary and parent corporations are generally considered to be separate entities for diversity jurisdiction purposes"). Danjaq noted that "the only recognized exception to this rule is where the subsidiary is the alter ego of the parent corporation." Danjaq, 979 F.2d at 775. Under these circumstances, courts view the formal separateness between the two corporations as merely a legal fiction. Id. (citations omitted). "Absent a showing that the subsidiary is merely an alter ego of its parent corporation, there is no justification for ignoring the separate corporate structures and looking to the subsidiary's activities to determine the parent's principal place of business." Danjaq, 979 F2d at 775.

There are two views on how the allegation that an entity is an alter ego affects citizenship in diversity cases. The attribution rule argued by Defendants follows the Fifth Circuit which considers whether the conduct at issue is that of the subsidiary and is being attributed to the parent. The Fifth Circuit finds that "when a subsidiary is the alter ego of a

parent, the parent is deemed to be a citizen of (1) the place where it is incorporated, (2) the place where its subsidiary is incorporated, and (3) the place where it has its principal place of business." Panalpina Welttransport GmBh v. Geosource, Inc. ("Panalpina), 764 F.2d 352, 354 (5th Cir. 1985) (citing Freeman v. Northwest Acceptance Corp., 754 F.2d 553 (5th Cir.1985)). The circuit has held that this is consistent with the intent of Congress to constrict the availability of diversity jurisdiction. Panalpina, 764 F.2d at 354. The Fifth Circuit found "the alter ego doctrine may be used to add places of citizenship to the abrogation of diversity jurisdiction but may not be used to extend such jurisdiction. Consistent therewith, if a parent were sued as a result of activities of a subsidiary, the alter ego doctrine would attribute the subsidiary's place of incorporation to the parent even if such resulted in destroying complete diversity." Id. at 354-55.

Plaintiff relies on Pyramid Securities Ltd. v. IB Resolution, Inc., 924 F.2d 1114 (C.A.D.C.,1991), which rejected the Fifth Circuits reasoning finding that the statute suggests no attribution rule and in the reverse context courts have treated the parent and subsidiary as separate entities. Id. at 1120. The court found that the fact that the parent's liability arises from the acts of the subsidiary does not weaken the traditional concern that home-state prejudice might unfairly prejudice the foreign party. Id. Under this view, the entity responsible for the conduct at issue is disregarded and each entity maintains only its own citizenship.

Plaintiff contends that Freeman v. Northwest Acceptance Corp., 754 F.2d 553 (5th Cir.1985) "cements this point by holding that the alter ego no longer has a separate citizenship. (ECF No. 80 at 7-8.) However, Freeman presented an action similar to this, where the plaintiff failed to include a party in order to avoid joinder of a non-diverse party. Freeman, 754 F.2d at 558. The court considered those cases that addressed parent subsidiary relationships and the exercise of in personam jurisdiction over a foreign parent corporation on the basis of the local activities of its subsidiary. Id. at 557-58. The Freeman court found that these cases hold that the entities are one for the purposes of jurisdiction and it would be irrational to hold that the

parent and subsidiary are one for the purposes of in personam jurisdiction, but are separate for the purposes of subject matter jurisdiction. Id. at 558.

Similarly, in Barnett v. Borg-Warner Acceptance Corporation, 488 F.Supp. 786 (E.D. Ark. April 18, 1980), the district court considered an action in which the plaintiff failed to join a subsidiary to avoid destroying diversity of citizenship. Id. at 787. The defendant brought a motion to dismiss the action for failure to join an indispensable party. Id. The Barnett court discussed that a finding that the two entities were one and the same would defeat diversity jurisdiction. Id. at 794. If the two entities are the same, then due to the dual incorporation, they have dual citizenship for the purposes of diversity jurisdiction. Id.

> The language of the statute is clear. A corporation is considered a citizen of any State by which it has been incorporated. Even before the 1958 amendment to [section] 1332 the U.S. Supreme Court in Jacobson v. New York, New Haven and Hartford Railroad Co., 347 U.S. 909, 74 S.Ct. 474, 78 L.Ed. 1067 (1954) affirmed a First Circuit decision dismissing a suit because of lack of diversity when a citizen of Massachusetts sued a railroad incorporated in both Massachusetts and Connecticut in a Massachusetts federal court. The same results were reached in cases involving multi-state incorporation in Seavey v. Boston and Maine Railroad Co., 197 F.2d 485 (1st Cir. 1952) and Di Frischia v. New York Central Railroad Co., 279 F.2d 141 (3rd Cir. 1960).

Barnett, 488 F. Supp. at 794.

In Polanco v. H.B. Fuller Co., 941 F. Supp. 1512 (D. Minn. 1996), the district court considered "the question of whether a suit seeking to hold a corporate parent liable for the acts of its subsidiary implicates jurisdictional concerns." Id. at 1516. The plaintiff brought suit against the manufacturer of product and the manufacturer asserted that it was being sued for the acts of its wholly owned subsidiary. Id. at 1517. The court considered that the Fifth Circuit's rule has been rejected by some courts and addressed the attribution rule by which a parent corporation is being sued solely for the acts of its completely controlled subsidiary. Id. at 1518. The Polanco court found that "the attribution rule best effectuates Congress' intent to limit diversity jurisdiction by enacting 28 U.S.C. § 1332(c)(1), which permits a corporation to have multiple places of citizenship." Id.

1   In <u>Danjaq</u>, the Ninth Circuit also considered that in the reverse context courts have found that the parent and subsidiary are treated as separate entities.  The <u>Danjaq</u> court found that:

> Many courts have addressed . . . whether a parent's citizenship can be imputed to the subsidiary for purposes of determining the subsidiary's principal place of business.  The general rule derived from these cases is that "in a suit involving a subsidiary corporation, the court looks to the state of incorporation and principal place of business of the subsidiary, and not its parent."  The only recognized exception to this rule is where the subsidiary is the alter ego of the parent corporation.  Under these circumstances, courts view the formal separateness between the two corporations as merely a legal fiction. . . Admittedly, the situation in this case is different.  Here we deal with whether a subsidiary's activities may be considered to determine the principal place of business of the parent.  However, Appellant offers no reason why this inquiry should lead to a different result. We therefore hold that the citizenship of a parent is distinct from its subsidiary where, as here, **there is no evidence of an alter ego relationship**.

<u>Danjaq</u>, 979 F.2d at 775 (citations omitted, emphasis added).  While the Ninth Circuit indicated that evidence of an alter ego relationship might affect the citizenship of a corporation and recognized the holding of <u>Pyramid</u>, it specifically declined to reach the issue.  <u>Id.</u> at 776.  The Court finds, and the parties cite, no case indicating how the Ninth Circuit would rule on this issue.

The Ninth Circuit's decision in <u>Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.</u>, 20 F.3d 987 (9th Cir. 1994), is instructive.  In <u>Nike</u>, the court was addressing an action in which a foreign entity assigned its rights under a contract to an American corporation.  Four days later, the American corporation brought suit for breach of contract against a foreign defendant.  <u>Id.</u> at 989.  Although the foreign corporation had assigned the suit to Nike which had citizenship in Oregon, the Court considered the citizenship of the foreign corporation that had assigned its rights under the contract to the American corporation.  <u>Id.</u>  The court found that diversity of citizenship did not exist.

In considering the issue to be decided here, the Court considers the Legislative intent of diversity jurisdiction.  Congress has granted district courts with original jurisdiction in civil cases between citizens of different States in order to provide a neutral forum for what have come to be known as diversity cases.  <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552 (2005).  The amount in controversy requirement was enacted to limit the actions that

could be brought in federal court under diversity jurisdiction. Exxon Mobil Corp., 545 U.S. at 552. The purpose of the diversity requirement "is to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants." Id. "The traditional theory is that diversity jurisdiction was intended to protect out-of-state residents from the bias that they might experience, or at least fear that they might face, in state courts." Abramson v. Marriott Ownership Resorts, Inc., __ F.Supp.3d __, 2016 WL 105889, at *1 (C.D. Cal. Jan. 4, 2016) (quoting Erwin Chemerinsky, Federal Jurisdiction § 5.3.2 (6th ed. 2012)). Further, in considering whether a case is properly in federal court, the jurisdiction of the federal court is to be jealously guarded. In re Mooney, 841 F.2d 1003, 1006 (9th Cir. 1988) overruled on other grounds by Partington v. Gedan, 923 F.2d 686 (9th Cir. 1991).

In determining whether the citizenship of the subsidiary should be attributed to the parent in this instance, the Court agrees with the reasoning of the Fifth Circuit to the extent that it suggests that the Court should consider which entity would be responsible for the conduct alleged to properly take into account the purposes of diversity jurisdiction.

Plaintiff brings this breach of contract action alleging that Defendant Crimson failed to defend the underlying state court action and allowed a third party to invade the surface of the land in breach of the Ohio Lease. However, in the prior motion to dismiss the Court found evidence that the parties to the Ohio Lease were Cal Royalty and Plaintiff. (ECF No. 72 at 7.) Generally, only a party to the lease may be liable for breach. Jones v. AIG Risk Management, Inc., 726 F.Supp.2d 1049, 1054 (N.D. Cal. 2010). Similarly, the implied covenants that derive and exist based upon the contractual relationship are only enforceable against the parties to the contract. Wady v. Provident Life and Accident Ins. Co. of America, 216 F.Supp.2d 1060, 1065 (C.D. Cal. 2002).

"A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice." Double

Bogey, L.P. v. Enea, 794 F.3d 1047, 1052 (9th Cir. 2015). In this action, Plaintiff requesting that the find jurisdiction, not based on the substantive action being brought, but based on its theory of liability.

The conduct at issue here would be that of Cal Royalty. Although Plaintiff alleges that the actions breaching the lease were actually to be attributed to Defendant Crimson, the Court finds this to be no different than the situation in Nike where the plaintiff was attempting to gain entrance to the federal court by alleging another entity was the party to the contract. This is an attempt to confer diversity jurisdiction where no such jurisdiction exists. Allowing a plaintiff to bring a claim for breach of contract against a diverse parent corporation in these circumstances to create subject matter jurisdiction would not effectuate the intent of section 1332.

Further, were the Court to find that jurisdiction existed here, it would first need to adjudicate Defendant Crimson's liability. Only if Defendant Crimson was found to be liable on the theory of alter ego could the Court assert jurisdiction over the breach of contract claim. Conversely, if Defendant Crimson was found not to be liable on an alter ego theory of liability, the Court would not have jurisdiction over the substantive claims raise here. Therefore, the Court rejects the reasoning of Pyramid Securities Ltd. that the entities should retain their separate citizenship regardless of whose conduct is at issue.

Accordingly, the Court finds that in the specific circumstances presented here, the Court should consider the citizenship of the subsidiary in determining if diversity jurisdiction exists. Defendant Crimson is therefore considered a citizen of Colorado and California. As Plaintiff is also a citizen of California, diversity of citizenship does not exist and this action shall be dismissed for lack of subject matter jurisdiction.

**B. Alter Ego Liability**

Alternately, the Court shall consider Defendants' motion to dismiss for failure to state a claim. Other than allegations that Defendant Crimson is the alter ego of Cal Royalty, the allegations in the third amended complaint are generally the same as those included in the second amended complaint. Only those allegations relevant to alter ego liability shall be addressed here.

Defendant contends that Plaintiff only sets forth conclusory allegations that are insufficient to state a plausible claim for alter ego liability. Plaintiff responds that the allegations in the complaint are sufficient to allege alter ego liability.

### 1. Alter Ego Legal Standard

A district court applies state law to evaluate alter ego claims. Hambleton Bros. Lumber Co. v. Balkin enterprises, Inc., 397 F.3d 1217, 1227 (9th Cir. 2005). "To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.' " Harris Rutsky Co. Ins. Services, Inc., 328 F.3d at 1134-35 (citations omitted). This requires the plaintiff to show that the control that the parent exercises over the subsidiary renders the subsidiary the mere instrumentality of the parent. Id. at 1135.

"Where the alter ego doctrine applies, . . . the two corporations are treated as one for purposes of determining liability." M/V Am. Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1490 (9th Cir. 1983). "The effect of applying the alter ego doctrine . . . is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound." Dudley v. Smith, 504 F.2d 979, 982 (5th Cir. 1974) (citation omitted). The alter ego doctrine applies to limited liability companies. Walsh v. Kindred Healthcare, 798 F.Supp.2d 1073, 1082.

Under California law, in deciding whether unity of interest exists for the purposes of finding alter ego liability, courts consider a number of factors including "the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938,

11

954 (N.D. Cal. 2015) (quoting Sandoval v. Ali, 34 F.Supp.3d 1031, 1040 (N.D.Cal.2014)). There "is a general presumption in favor of respecting the corporate entity" and "disregarding the corporate entity is recognized as an extreme remedy," therefore "[c]ourts will pierce the corporate veil only in exceptional circumstances." Calvert v. Huckins, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (citations omitted).

   2.   Plaintiff has Not Set Forth Sufficient Factual Allegations to State a Plausible Alter Ego Claim

Under Twombly and Iqbal "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. This requires factual content for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the plaintiff is entitled to relief. Id. Further, while the court is to accept all "well pleaded factual allegations" in the complaint as true, id. at 679, it is not bound to accept as true labels, conclusions, formulaic recitations of the elements of a cause of action or legal conclusions couched as factual allegations, Twombly, 550 U.S. at 555.

Plaintiff's third amended complaint generally contains conclusory statements and legal conclusions alleging alter ego liability. For example, Plaintiff alleges that Defendant Crimson exercises total management and control over Cal Royalty's business affairs without any consultation with any purported members of Cal Royalty and as a result Cal Royalty is a mere shell or instrumentality of Defendant Crimson. (ECF No. 73 at ¶¶ 8, 9.) Defendant and Cal Royalty have identical management, officers, and share the same office, office equipment and support staff. (Id. at ¶ 10.) Defendant Crimson finances the business operations of Cal Royalty to the extent that Cal Royalty would not have adequate capital or finances to pay its business expenses. (Id. at ¶ 11.) Cal Royalty was used to place Defendant Crimson's liabilities in Cal Royalty while Defendant Crimson maintains all assets. (Id. at ¶ 18.) Defendant Crimson has no separate client files or business and pays all attorney fees incurred by Cal Royalty. (Id. at ¶ 32.)

Cal Royalty has no employees or agents separate from Defendant Crimson and all agents of Defendant Crimson are instructed that they work for Defendant Crimson and are paid by Defendant Crimson, not Cal Royalty.  (Id. at ¶ 43.)  These conclusory statements are not supported by any factual allegations and are not entitled to a presumption of truth.  Iqbal, 556 U.S. at 681.

Plaintiff's allegation that Cal Royalty has no assets other than those which were conveyed by Defendant Crimson (id. at ¶ 14) would indicate that Cal Royalty holds assets separate from Defendant Crimson.  Further, this contradicts Plaintiff's allegation that Cal Royalty has no assets.  (Id. at ¶ 18).  Plaintiff also contends that Cal Royalty's financial accounting of assets, income and liability are recorded and reported in the consolidated financial statements of Defendant Crimson.  (Id. at ¶ 15.)  Merely consolidating the financial statements of the different entities in the same report does not infer that asserts of the entities have been merged or that there was a lack of segregation of corporate records.  Consolidating the activities into the parent's annual report is a common business practice.  Calvert, 875 F.Supp. at 678-79 ("It is allowed by both the Internal Revenue Service and the Securities and Exchange Commission, and it is recommended by generally accepted accounting principles.")

Plaintiff's third amended complaint does not include any factual allegations to support an allegation there is an identical equitable ownership of the entities, disregard of corporate formalities, or identical directors and officers.  Nor does the complaint contain any allegations that corporate formalities were disregarded.  Many of the allegations in the third amended complaint refer to routine corporate business practice rather than a showing that Defendant Crimson exercised such management and control over Cal Royalty that the separate personalities of the two entities no longer exist.

Plaintiff alleges that Gary Buntman is a majority shareholder of Defendant Crimson and controls this litigation.  (ECF No. 73 at ¶ 44.)  Only Gary Buntman has executed verifications for discovery and declarations on behalf of Defendant Crimson and Cal Royalty in this action.  (Id.)  Throughout the underlying lawsuit Gary Buntman made all decisions concerning Defendant Crimson's position with regard to the litigation and was the decision maker for Cal

Royalty. (Id. at ¶ 41.) Even if the Court assumes that Mr. Buntman is a director or officer of both Defendant Crimson and Cal Royalty, these allegations are insufficient for the Court to draw a reasonable inference that the corporation has the same or identical ownership, directors or officers or that Cal Royalty is controlled by Defendant Crimson. Courts routinely hold that having some interlocking directors and officers is not sufficient to justify piercing the corporate veil. Calvert, 875 F.Supp. at 678. Other than the allegation that Mr. Buntman is the majority shareholder of Defendant Crimson, the third amended complaint does not include any allegations as to the ownership, directors, or officers of either entity that are entitled to a presumption of truth.[4]

Plaintiff also alleges that Defendant Crimson and Cal Royalty use the same attorney. (ECF No. 73 at ¶ 32.) All business dealings and payments were between Defendant Crimson and Plaintiff. (ECF No. 73 at ¶ 19.) Defendant Crimson was the lessor of the Ohio lease[5] and received payments due under the terms of the lease. (Id. at ¶ 25, 26.) Defendant Crimson managed and supervised all activity on the property and managed control of access to water rights. (Id. at ¶ 27.) Plaintiff received communications from Defendant Crimson. (Id. at ¶ 31.)

Defendant Crimson's land manager, Ms. Kenney, was authorized by Defendant to serve as a witness in the underlying trial. (Id. at ¶ 35.) During the trial in the underlying case, Ms. Kenny testified that "we manage all aspects of Cal Royalty" and that the principals of Defendant created Cal Royalty. (Id. at ¶ 38.) Defendant Crimson provided all evidence of the chain of title to support Plaintiff's right as lessee in the underlying lawsuit. (Id. at ¶ 34, 35.) At the trial, Ms. Kenney referred to Defendant Crimson as the mineral rights owner, lessor or landlord for the lease. (Id. at ¶ 36.) Ms. Kenney also testified that Cal Royalty was created by

---

[4] Defendant argues that Plaintiff's complaint states facts that it knows is not true. In the third amended complaint, Plaintiff alleges that Defendant Crimson is a purported share holder/sole member of Cal Royalty. (Id. at ¶ 2.) However in the prior motion to dismiss on the ground that Cal Royalty was a California resident, evidence was presented that "The operating agreement for Cal Royalty shows that the members are Cardinal Resource Management Corporation and a California limited partnership. ( ECF No. 51-1 at 3-5.). The Court is not required to accept as true conclusory allegations that are contradicted by the record. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

[5] While Plaintiff contends that the contract transferring Defendant Crimson's interest in the Ohio Lease to Cal Royalty is null and void, the Court is not bound to accept as true legal conclusions couched as factual allegations. Twombly, 550 U.S. at 555.

the principals of Defendant Crimson. (Id. at ¶ 38.)

The Court finds that considering the factual allegations in the third amended complaint as a whole and those factors to be considered in deciding whether unity of interest exists for the purposes of finding alter ego liability, Plaintiff has failed to include sufficient factual allegations for the Court to infer that there is such a unity of interest and ownership that the separate personalities of the entities do not really exist.

To allege alter ego liability, "the plaintiff must make allegations of fact from which it appears that recognition of the corporate entity would sanction a fraud or promote injustice." Nucal Foods, Inc. v. Quality Egg LLC, 887 F.Supp.2d 977, 993 (E.D. Cal. 2012). Although Plaintiff alleges that there would be an inequitable result if the alleged acts are treated as those of the entity alone, this is insufficient to establish alter ego liability where Plaintiff has failed to allege facts to show that a unity of interest exists.

### C. Leave to Amend

Amendment of pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" Amerisource Bergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." Id.

In this instance, the Court has found in two separate orders that the allegations in the complaint were insufficient to state a plausible claim for alter ego liability and provided Plaintiff with the legal standard that applied to the claim. (ECF Nos. 35, 72.) After the initial order issued informing Plaintiff that the allegations in the second amended complaint were insufficient to state a claim for alter ego liability, Plaintiff did not seek leave to file an amended complaint, but argued in opposition to the third motion to dismiss that alter ego was sufficiently alleged in the second amended complaint. Plaintiff has since filed a third amended complaint in this action without including sufficient factual allegations to state a claim. Therefore, the Court finds that granting further leave to amend would be futile. See Allen v. City of Beverly Hills,

911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint").

## IV.
## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Defendant's motion to dismiss this action for lack of jurisdiction and failure to state a claim is GRANTED. The Clerk's Office is directed to close this matter.

IT IS SO ORDERED.

Dated: **February 5, 2016**

UNITED STATES MAGISTRATE JUDGE